## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. DANIEL C. SHELTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 24-1338-CFC |
| | : | |
| DONALD PATTON, NAVEED BAQIR, | : | |
| YUN FEI LOU, and ALETHEA SMITH- | : | |
| TUCKER, all individually and in their | : | |
| official capacities; and BOARD OF | : | |
| EDUCATION OF THE CHRISTINA | : | |
| SCHOOL DISTRICT, | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFFS' CONSOLIDATED ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' FIVE MOTIONS TO DISMISS

THE NEUBERGER FIRM, P.A.
STEPHEN J. NEUBERGER, ESQ. (#4440)
THOMAS S. NEUBERGER, ESQ. (#243)
17 Harlech Drive, P.O. Box 4481
Wilmington, DE 19807
(302) 655-0582
SJN@NeubergerLaw.com
TSN@NeubergerLaw.com

Dated: June 23, 2025      Attorneys for Plaintiff Dr. Daniel C. Shelton

## **TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.    Plaintiff Dr. Shelton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            a.    Professional Recognition . . . . . . . . . . . . . . . . . . . . . 2

            b.    Work History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.    Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Two Employment Contracts. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    2020-2025 - the Initial Five Year Contract. . . . . . . . . . . . . . . 5

            a.    Written Notice, Fair Hearing and Other "Good
                and Just Cause" Termination Protections. . . . . . . . . . 5

            b.    Confidential Evaluation Requirements. . . . . . . . . . . . . 6

            c.    Other Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.    2025-2026 - the One Year Contract Extension. . . . . . . . . . . . 7

            a.    Facts Pled in the Complaint . . . . . . . . . . . . . . . . . . . . 7

                (1).    Contract Formation. . . . . . . . . . . . . . . . . . . . . . . . . 7

                (2).    Defendants' Numerous Admissions of
                      This Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                      (a).    Legislative Adoption and Ratification. . . . 7

i

(b). Written Admission by the Board Attorney . . . . . . . . . . . . . . . . . . . . . . . . 8

(c). Public Admission By Defendant Lou. . . . . 8

b. Judicially Noticed Facts . . . . . . . . . . . . . . . . . . . . . . . . 8

(1). Defendants' Own Publicly Posted Policies About their Job Duties and Preparation For and Conduct of Board Meetings. . . . . . . . . . . . . 9

(2). The Board's Agenda for its 12/12/23 Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

(3). The Board's Administrative Contract Renewals Document Included with its 12/12/23 Agenda. . . . . . . . . . . . . . . . . . . . . . . . . 10

(4). The Board's Minutes of its 12/12/23 Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

(5). The Board's Agenda at its 1/17/24 Meeting Reflects Approval of the 12/12/23 Minutes . . . . 11

(6). The Board's Minutes of its 1/17/24 Meeting Confirm This Approval. . . . . . . . . . . . . . . . . . . 11

C. Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1. Unilateral Termination of the One Year Contract Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

a. The Delaware Department of Justice Already Concluded This Action Was Illegal and Done "For An Improper Purpose" . . . . . . . . . . . . . . . . . . . . 12

2. The Five Year Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ii

a.    Failure to Pay His Agreed Upon Salary . . . . . . . . . . . . 12

b.    Canceling His Mandatory Annual "Confidential" Evaluation in "Closed" Session and Instead Taking a Public Vote of "No Confidence" in Public Session . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    (1).    The Delaware Department of Justice Concluded This Action Was Illegal and Done "For An Improper Purpose" . . . . . . . . . . . . . . 13

    (2).    The Board's Longtime Legal Counsel Also Admitted This Was Illegal and Done "For An Improper Purpose" . . . . . . . . . . . . . . . 14

c.    Administrative Leave, Reprimand, Suspension, Hiring a Replacement & Termination. . . . . . . . . . . . . 14

d.    Additional Breaches . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3.    Contemporaneous Public Attacks on Plaintiff's Integrity, Competence and Morals . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

a.    The Totality of These in Context . . . . . . . . . . . . . . . . . 17

b.    Plaintiff Was Left "Unemployable" With His Reputation Destroyed . . . . . . . . . . . . . . . . . . . . . . . . . . 18

D.    Why This Is Occurring - Evidentiary Admissions Made by the Board's Lead Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.    The Longtime Attorney-Client Relationship . . . . . . . . . . . . . 18

2.    The Uncontested Waiver of Attorney-Client Privilege by Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.    Admissions Made by the Board's Attorney . . . . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

iii

I.  DEFENDANTS' NUMEROUS MATERIAL FAILURES TO
    COMPLY WITH THIS COURT'S LOCAL RULES, ORDERS
    AND PROCEDURES REQUIRES DENIAL OF THEIR
    MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    B.  D.Del. ECF Administrative Procedures Violation
        by Baqir . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C.  D.Del. Local Rule 7.1.3(c)(1)(E) - "Concise Statement
        of Facts" with "Supporting References to the Record"
        Violations by the Board, Patton and Smith-Tucker . . . . . . . . 23

    D.  D.Del. Local Rule 7.1.3(c)(1)(D) - "Summary of
        Argument" Violation by Baqir . . . . . . . . . . . . . . . . . . . . . . . . 25

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    A.  The Basics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        1.  Insider Accounts Strongly Support Plausibility . . . . . . 27

    B.  Other Factual Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

    C.  The Defense Filings Also Concede Discovery is
        Necessary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III. DEFENDANTS DEPRIVED PLAINTIFF OF PROCEDURAL
     DUE PROCESS UNDER THE FOURTEENTH AMENDMENT . . 30

    A.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    B.  Some Defendants Argue the Wrong Legal Test . . . . . . . . . . . 30

    C.  Procedural Due Process Basics . . . . . . . . . . . . . . . . . . . . . . . . 31

    D.  Protected Fourteenth Amendment Interests . . . . . . . . . . . . . . 31

1.    Liberty Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    a.    How Liberty Interests Are Created. . . . . . . . . . 32

    b.    Interest in Reputation - the Stigma-Plus Test. . . 32

        (1).    Part 1 - the Stigma . . . . . . . . . . . . . . . . . . 33

        (2).    Part 2 - the Plus. . . . . . . . . . . . . . . . . . . . 36

            (a).    "Just Cause" or "Mutually Explicit Understandings" Protections Are Not Needed Because this is a Lesser Standard Than Required to Create a Property Interest. . . . . . 37

            (b).    Termination, Constructive Discharge, Suspension Without Pay and Administrative Leave With Pay Each Are Adverse Employment Actions Which Meet the Test . . . . . . . . . . . . . . . . 38

                (i).    Suspension Without Pay & Contract Termination Are Not Contested . . . . . . . . . . 40

                (ii).    The Material Fact Dispute Over What Happened in July 2024 . . . . . . . . . . . . . . 40

            (c).    Devastating Impact on Future Employment Prospects is Established . . . . . . . . . . . . . . . . . . . 43

2.    Property Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    a.    How Property Interests Are Created. . . . . . . . . . 45

(1).  "Just Cause" Contracts . . . . . . . . . . . . . . 46

(2).  Other Ways to Create a Property
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . 46

b.  Multiple Property Interests Exist in Our
Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

(1).  "Just Cause" for Termination
Contracts . . . . . . . . . . . . . . . . . . . . . . . . 47

(2).  Board Vote in Favor of and Adoption
of a Contract Extension . . . . . . . . . . . . . 48

(a).  "Just Cause" Contract . . . . . . . . . . 48

(b).  "Customs, Policies & Practices" . . 50

3.  The Plausibility & Notice Standards of Rule
12(b)(6) and Rule 8 Have Been Satisfied . . . . . . . . . . 51

E.  The Process That is Due . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

1.  Matter of Federal, Not State Law . . . . . . . . . . . . . . . . . 52

2.  The Constitutional Bare Minimums . . . . . . . . . . . . . . 52

a.  Notice & Opportunity to Be Heard <u>Before</u> a
Deprivation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

b.  Unbiased and Disinterested Decisionmaker . . . . 54

3.  The 3 Part <u>Mathews</u> Test . . . . . . . . . . . . . . . . . . . . . . . . 56

a.  Factor #1 - the Private Interest . . . . . . . . . . . . . . 57

b.  Factor #2 - Value of Procedures in Preventing
an Erroneous Deprivation . . . . . . . . . . . . . . . . . . 57

           c.     Factor #3 - the Government's Interest . . . . . . . . 58

F.    Trailing Defense Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

    1.    No "Emergency" or "Significant Hazard" Exists to Justify Defendants' Failure to Provide Any Process Whatsoever . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

    2.    An Employee Cannot Appeal a Non-Existent Written Decision Resolving a Termination Hearing the Employer Refused to Hold . . . . . . . . . . . . . . . . . . 62

    3.    § 1983 Damages Fundamentals . . . . . . . . . . . . . . . . . . 64

    4.    The Individual Defendants Are Liable for Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

IV.    DEFENDANTS BREACHED BOTH THE ONE YEAR AND FIVE YEAR CONTRACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

B.    Both Contracts Are With the Board . . . . . . . . . . . . . . . . . . . . 66

C.    The Statute of Frauds Is No Bar to the One Year Contract Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

    1.    The Admitted Agreement Doctrine Bars Defendants From Improperly Now Denying the Existence of a Contract They Already Have Repeatedly Admitted . . . 67

    2.    The "Writing" Requirement is Satisfied . . . . . . . . . . . . 68

        a.     Formal Public Vote by the Board, Corroborated by the Minutes . . . . . . . . . . . . . . . 71

        b.     Writing by the Board's Own Attorney . . . . . . . . 72

        c.     The Five Year Contract Being Extended . . . . . . 73

        d.    Defendant Patton Has Helpfully Produced the Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

        e.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

  D.    The Modification Clause is No Bar . . . . . . . . . . . . . . . . . . . . 74

  E.    Damages Recoverable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

  F.    Terms Breached . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

      1.    The One Year Contract Extension . . . . . . . . . . . . . . . . 76

      2.    The Five Year Contract . . . . . . . . . . . . . . . . . . . . . . . . 76

  G.    Defendant Patton's Lack of Standing and Unclean Hands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

V.    DEFENDANT BAQIR IS NOT IMMUNE ON ANY GROUNDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

  A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

  B.    Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

  C.    Legislative Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

  D.    Quasi-Judicial Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

Alameda Belt Line v. City of Alameda, 5 Cal.Rptr.3d 879 (Cal.App. 2003) . . . . 71

Align Tech., Inc. v. 3Shape A/S,
         2020 WL 1873026 (D.Del. Apr. 15, 2020) . . . . . . . . . . . . . . . . . . . . . . 21-23

Allah v. Al-Hafeez, 226 F.3d 247 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 64

Am. Smelting & Refining Co. v. U.S., 259 U.S. 75 (1922). . . . . . . . . . . . . . . . . . 70

Am.-Hawaiian Steamship Co. v. Home Sav. & Loan Assn.,
         112 Cal.Rptr. 897 (Cal.App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

Ammar v. McDonough, 2025 WL 692084 (D.Del. March 4, 2025) . . . . . . . . . . . 39

Anchor Motor Freight v. Ciabattoni, 716 A.2d 154 (Del. 1998)(en banc) . . . . . . 69

Aurigemma v. New Castle Care LLC,
         2006 WL 2441978 (Del.Super. Aug. 22, 2006) . . . . . . . . . . . . . . . . . . . . . 74

Baraka v. McGreevey, 481 F.3d 187 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . 81

Barber v. City of Lewes, 1997 WL 127951 (Del.Super. Jan. 31, 1997) . . . . . . . . 46

Bd. of Educ. of Smyrna Sch. Dist. v. DiNunzio,
         602 A.2d 85 (Del.Super. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

Bd. of Regents of State Colleges v. Roth,
         408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32,37,43-44,47,50

Bennett v. City of Kingman, 543 F.Supp.3d 794 (D.Ariz. 2021) . . . . . . . . . . . . . 8

Bishop v. Wood, 426 U.S. 341 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47,50-51

Blanding v. Pa. State Police, 12 F.3d 1303 (3d Cir. 1993) . . . . . . . . . . . . . . . . . 46

Bradley v. Pittsburgh Bd. of Educ.,
    913 F.2d 1064 (3d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 31,46,53,56,64

Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256 (3d Cir. 2006) . . . . . . . . . . . . 28

Bullen v. Chaffinch, 336 F.Supp.2d 342 (D.Del. 2004) . . . . . . . . . . . . . . . . . . . 64

Carey v. Piphus, 435 U.S. 247 (1978) . . . . . . . . . . . . . . . . . . . . . . . . .  31,64-65

Carlson v. Green, 446 U.S. 14 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) . . . . . . . . . . . . . . . 65

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985)  . . . . . . . .  52-53,57-61

CMR D.N. Corp. v. City of Phila., 703 F.3d 612 (3d Cir. 2013)  . . . . . . . . . . . . 31

Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998) . . . . . . . . . . . . . . . . . . . . . . 31

Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.,
    235 F.Supp.3d 1132 (E.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Connelly v. Lane Constr. Corp., 809 F.3d 780 (3d Cir. 2016) . . . . . . . . . . . . . . 27

Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC,
    302 A.3d 430 (Del.Ch. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2008). . . . . . . . . . . . .  39,61

Dillman v. Chaffinch, 313 F.Supp.2d 415 (D.Del. 2004) . . . . . . . . . . . . . . . . . . 44

Doe v. State, 76 A.3d 774 (Del. 2013) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . 66

Edwards v. Cal. Univ. of Pa., 156 F.3d 488 (3d Cir. 1988). . . . . . . . . . . . . . 60-61

Ersek v. Twp. of Springfield, 102 F.3d 79 (3d Cir. 1996). . . . . . . . . . . . . . . . . . 44

Foraker v. Voshell, 2022 WL 2452396 (Del.Super. July 1, 2022) . . . . . . . . . . . 75

Garrett v. Wexford Health, 938 F.3d 69 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . . 51

Goddess Approved Prods., LLC v. Wolox,
    2022 WL 4535620 (D.Del. Sept. 28, 2022). . . . . . . . . . . . . . . . . . . . . . . . . 74

Goldman v. Shahmoon, 208 A.2d 492 (Del.Ch. 1965) . . . . . . . . . . . . . . . . . . . . 66

Goydos v. Rutgers, State Univ., 2021 WL 5041248 (D.N.J. Oct. 29, 2021) . . . . 60

Great W. Mining & Mineral Co. v. Fox Rothschild LLP,
    615 F.3d 159 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Hecksher v. Fairwinds Baptist Church, Inc.,
    115 A.3d 1187 (Del. 2015)(en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Hendry v. Hendry, 1998 WL 294009 (Del.Ch. June 3, 1998). . . . . . . . . . . . . . . 68

Hessler, Inc. v. Farrell, 226 A.2d 708 (Del. 1967) . . . . . . . . . . . . . . . . . . . . . . . 66

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) . . . . . . . . . 31,33-35,37

Hitchens v. Yonker, 943 F.Supp. 408 (D.Del. 1996). . . . . . . . . . . . . . . . . . . 47,50

Hunter v. Page Cnty., Iowa, 653 F.Supp.3d 600 (S.D. Iowa 2023). . . . . . . . . . . . 8

Hursey Porter & Assoc. v. Bounds,
    1994 WL 762670 (Del.Super. Dec. 2, 1994). . . . . . . . . . . . . . . . . . . . . 67-68

In re Davita Inc. S'holder Derivative Litig.,
    2019 WL 1855445 (D.Del. Apr. 25, 2019) . . . . . . . . . . . . . . . . . . . 20-21,27

In re Montgomery Cnty., 215 F.3d 367 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . 80

Insight Psychology & Addiction, Inc. v. City of Costa Mesa,
    724 F.Supp.3d 1067 (C.D.Cal. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Intermec IP Corp. v. TransCore, LP,
    2023 WL 5661585 (Del.Super. Aug. 23, 2023) . . . . . . . . . . . . . . . . . . . . . 75

Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC,
    2009 WL 1111179 (Del.Ch. Apr. 27, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 76

J.A. Moore Const. Co. v. Sussex Assocs. Ltd. P'ship,
    688 F.Supp. 982 (D.Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74-75

J.C. Trading Ltd. v. Wal-Mart Stores, Inc.,
    947 F.Supp.2d 449 (D.Del. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Jerrytone v. Musto, 167 Fed.Appx. 295 (3d Cir. 2006). . . . . . . . . . . . . . . . . 60,62

Johnson v. City of Shelby, Miss., 574 U.S. 10 (2014). . . . . . . . . . . . . . . . . . . . 26

Johnson v. Kacimi, 2024 WL 3292572 (Del.C.P. May 22, 2024). . . . . . . . . . . . 68

Jutrowski v. Twp. of Riverdale, 904 F.3d 280 (3d Cir. 2018). . . . . . . . . . . . . . . 26

Kairo-Scibek v. Wyoming Valley W. Sch. Dist.,
    880 F.Supp.2d 549 (M.D.Pa. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60,62

Kanaga v. Gannett Co., 687 A.2d 173 (Del. 1996) . . . . . . . . . . . . . . . . . . . . . . 36

Karr v. Castle, 768 F.Supp. 1087 (D.Del. 1991) . . . . . . . . . . . . . . . . . . . . . 44-45

Kerry v. Din, 576 U.S. 86 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32,43

King v. City of N.Y., 581 F.Supp.3d 559 (S.D.N.Y. 2022). . . . . . . . . . . . . . . . . . 8

Kirschling v. Lake Forest Sch. Dist.,
    687 F.Supp. 927 (D.Del. 1988) . . . . . . . . . . . . . . . . . . . . . 46,48-50,66,69-73

Klein v. Sussman, 2024 WL 339339 (Del.Ch. Jan. 30, 2024). . . . . . . . . . . . . 69-70

Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999). . . . . . . . . . . . . . . . . . . . . . 65

Lefoldt v. Horne, L.L.P., 938 F.3d 549 (5th Cir. 2019). . . . . . . . . . . . . . . . . . . . 71

Loan Servs. Inc. v. NEWITY LLC,
    2023 WL 6316749 (D.Del. Sept. 28, 2023). . . . . . . . . . . . . . . . . . . . . . . 27,29

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982). . . . . . . . . . . . . . . . . . . . . 46

Mancini v. Northampton Cnty., 836 F.3d 308 (3d Cir. 2016). . . . . . . . . . . . . . . 45

Mathews v. Eldridge, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . 31,53,56-57,60-61

McBride v. McLean Cnty., 397 F.Supp.3d 1198 (C.D.Ill. 2019) . . . . . . . . . . . . . 8

McKenzie v. Navy Fed. Credit Union,
    2024 WL 5154500 (D.Del. Dec. 18, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 28

McKnight v. Se. Pa. Transp. Auth., 583 F.2d 1229 (3d Cir. 1978). . . . . . . . . . . . 35

Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299 (1986). . . . . . . . . . . . . . . 64

Mercedes-Benz Financial Services USA, LLC v. City of N.Y.,
    – F.Supp.3d –, 2025 WL 774912 (S.D.N.Y. March 11, 2025) . . . . . . . 53,56

Midwest Realty v. City of West Jordan, 541 P.2d 1109 (Utah 1975). . . . . . . . . . 71

Mitchell v. Brimer, 1987 WL 5319 (Del.Ch. Jan. 12, 1987). . . . . . . . . . . . . . . . 68

Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978). . . . . . . . . . 65

Muldrow v. City of St. Louis, Mo., 601 U.S. 346 (2024) . . . . . . . . . . . . . . . . . . 39

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) . . . . . . . . . 52

Pack v. Sussex Poultry Co., 1983 WL 17982 (Del.Ch. Sept. 13, 1983) . . . . . . . . 66

Paul v. Davis, 424 U.S. 693 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33,37

Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.,
    297 A.2d 28 (Del. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Perry v. Sindermann, 408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 46-47,50

Pharmacy Corp. of Am./Askari Consol. Litig.,
    2021 WL 4033238 (D.Del. Sept. 3, 2021). . . . . . . . . . . . . . . . . . . . 21,24-25

xiii

Phillips v. Cnty. of Allegheny, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . 27

PJT Holdings, LLC v. Costanzo,
    – A.3d –, 2025 WL 1417531 (Del.Ch. May 15, 2025) . . . . . . . . . . . . . . . . 75

Richardson v. Felix, 856 F.2d 505 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 46

Robb v. City of Phila., 733 F.2d 286 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . 44

Rowe v. Rowe, 2002 WL 1271679 (Del.Ch. May 28, 2002) . . . . . . . . . . . . . . . . 68

Russell v. Richardson, 905 F.3d 239 (3d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . 81

Russo v. Bryn Mawr Trust Co.,
    2024 WL 3738643 (3d Cir. Aug. 9, 2024). . . . . . . . . . . . . . . . . . . . . . 39-40

Schuchardt v. President of the U.S., 839 F.3d 336 (3d Cir. 2016) . . . . . . . . . 27-28

Sherman v. State Dep't of Pub. Safety, 190 A.3d 148 (Del. 2018)(en banc). . . . . 66

Shilling v. Shilling, 332 A.3d 453 (Del. 2024) . . . . . . . . . . . . . . . . . . . . . . . 70,72

Smart Meter Tech., Inc. v. Duke Energy Corp.,
    2017 WL 2954916 (D.Del. July 11, 2017) . . . . . . . . . . . . . . . . . . . . . . 21,25

Smith v. Del. First Fed. Credit Union, 395 F.Supp.2d 127 (D.Del. 2005) . . . . . . 27

Smith v. Wade, 461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,65

Southern States Middletown, Inc. v. Durham,
    1986 WL 9921 (Del.Ch. Aug. 6, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

Springer v. Henry, 435 F.3d 268 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 20

Stana v. Sch. Dist. of City of Pittsburgh, 775 F.2d 122 (3d Cir. 1985). . . . . . . . . 47

Stanford v. State Merit Employee Relations Bd.,
    44 A.3d 923, 2012 WL 1549811 (Del. 2012) . . . . . . . . . . . . . . . . . . . . . . . 46

Steele v. Cicchi, 855 F.3d 494 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 30,32

Stone v. Bank of Com., 174 U.S. 412 (1899) . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Sturgess v. Negley, 761 F.Supp. 1089 (D.Del. 1991) . . . . . . . . . . . . . . . . . . . . 46

Suess v. United States, 535 F.3d 1348 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . 69

Sullivan v. Mayor of Town of Elsmere,
    23 A.3d 128 (Del. 2011) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Suniaga v. Downingtown Area Sch. Dist.,
    – F.Supp.3d –, 2025 WL 409656 (E.D.Pa. Feb. 5, 2025) . . . . . . . . . 38,40,61

Tatum v. Fairstead Affordable LLC,
    2023 WL 8868060 (Del.Ch. Dec. 22, 2023) . . . . . . . . . . . . . . . . . . . . . 72-73

Thompson v. Dep't of Servs. for Child., Youth & their Families,
    2019 WL 4222647 (D.Del. Sept. 5, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . 44

Town of Cheswold v. Vann, 947 A.2d 1123, 2007 WL 1201716 (Del. 2007) . . . 54

Trotter v. Akinbayo, 2023 WL 22133 (D.Del. Jan. 3, 2023) . . . . . . . . . . . . . . . 21

Tundo v. Cnty. of Passaic, 923 F.3d 283 (3d Cir. 2019) . . . . . . . . . . . . . . . . . . 46

Ueltzhoffer v. Fox Fire Dev. Co.,
    1991 WL 271584 (Del.Ch. Dec. 19, 1991) . . . . . . . . . . . . . . . . . . . . . . . . 68

USH Ventures v. Global Telesystems Group, Inc.,
    796 A.2d 7 (Del.Super. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Vance v. Irwin, 619 A.2d 1163 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604 (3d Cir. 2018) . . . . . . . . . . . . . . 21

Wilson v. PTT, LLC, 351 F.Supp.3d 1325 (W.D.Wash. 2018) . . . . . . . . . . . . . . 9

Wisconsin v. Constantineau, 400 U.S. 433 (1971) . . . . . . . . . . . . . . . . . . . . . . 33

<u>Withrow v. Larkin</u>, 421 U.S. 35 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

<u>Wolf v. Crosby</u>, 377 A.2d 22 (Del.Ch. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

<u>Yarbrough v. Camphor</u>, 645 So.2d 867 (Miss. 1994) . . . . . . . . . . . . . . . . . . . . . . 71

<u>Zinermon v. Burch</u>, 494 U.S. 113 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## **Constitutions, Statutes and Rules**

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

Del. Const., Pmbl. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Del. Const., Art. I, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Del. Const., Art. I, § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Del. Const., Art. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

42 U.S.C. § 1988(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

6 Del.C. § 2714(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

14 Del.C. § 121(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 Del.C. § 5102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Fed.R.Civ.P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fed.R.Civ.P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

Fed.R.Civ.P. 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed.R.Civ.P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,48

Fed.R.Civ.P. 56(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,41,72,77

Fed.R.Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,29

Fed.R.Evid. 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Evid. 201(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed.R.Evid. 201(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.Del. Local Rule 7.1.3(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.Del. Local Rule 7.1.3(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.Del. Local Rule 7.1.3(c)(1)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.Del. Local Rule 7.1.3(c)(1)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

Administrative Procedures Governing Filing and Service
    by Electronic Means, Subsection (F) (D.Del. Jan. 2023) . . . . . . . . . . . 1,22

In re: Revision to Electronic Case Filing Policies and
    Procedures (D.Del. Aug. 16, 2022) (Order) . . . . . . . . . . . . . . . . . . . . . 1,22

## **Other Authorities**

1 E. Coke, The Second Part of the Institutes of the Laws
    of England (1797 ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32,43

3 A. Corbin, Corbin on Contracts § 562 (1960) . . . . . . . . . . . . . . . . . . . . . 47,50

Magna Carta, Chapter XXIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31-32

## NATURE AND STAGE OF THE PROCEEDINGS

The 22-page, 162-paragraph, 5,555-word Complaint was filed on December 9, 2024 (D.I. 1), and timely service was achieved on December 16, 2024. (D.I. 12 at ¶ 1). Four Defendants each timely filed separate motions to dismiss and supporting briefs (D.I. 13-21), by the April 21, 2025 deadline. (See D.I. 12 at ¶ 2). The fifth Defendant filed his untimely motion and brief after the cut-off time set under our District's E-file Administrative Procedures and the Court's August 16, 2022 Order. (See D.I. 22, 25-26). Pursuant to this Court's Stipulated Order (D.I. 27), this is Plaintiff's Consolidated Answering Brief.

## SUMMARY OF THE ARGUMENT

1. The failure of several Defendants to materially comply with this Court's briefing rules requires denial of these non-compliant defense motions.

2. Because Defendants deprived Plaintiff of independent liberty and also property interests while failing to provide him with any process whatsoever - neither pre nor post deprivation - their actions are a "per se" violation of Fourteenth Amendment procedural due process.

3. Defendants breached both Plaintiff's one year contract extension and his original five year contract.

4. Even if his untimely brief is considered, Defendant Baqir is not entitled to legislative, quasi-judicial or qualified immunity.

1

## STATEMENT OF FACTS

### A.    The Parties.

### 1.    Plaintiff Dr. Shelton.

Plaintiff Dr. Daniel C. Shelton is a highly decorated, 52 year old veteran Delaware public school administrator with an impeccable employment record over his 26 years in Delaware education.  He has no workplace disciplinary history and instead has repeatedly received the highest statewide and national educational awards for his outstanding job performance. (¶¶ 6-20, 1).[1]  He has worked and excelled at all levels of the Delaware educational system, including as: a teacher, an Assistant Principal, and then Principal at numerous schools, all in Christina School District; followed by five years as Superintendent at Capital before returning back to Christina as Superintendent. (¶¶ 12-17).  He earned his doctorate in Educational Leadership and Public Policy, Masters of Education in Curriculum and Instruction, and Bachelors of Science in Health, Physical Education, with a minor in Computer Science, all from the University of Delaware.  (¶¶ 11, 13).

### a.    Professional Recognition.

Dr. Shelton's professional, educational and administrative excellence has been widely recognized, both locally and nationally.  For example, in April 2022,

---

[1]  All "¶" citations herein are to the Complaint found at D.I. 1.

2

his peers in the Delaware Association of School Administrators, the state-level affiliate of the American Association of School Administrators, voted him Delaware's Superintendent of the Year for the 2022-2023 period.  The award is based on Dr. Shelton's leadership for learning, communication, professionalism and community involvement.  In the words of one fellow Delaware Superintendent and member of the national governing Board, Dr. Shelton has "shown passion and commitment to the students, staff and families of his district and has made deep and lasting contributions to education here in Delaware." (¶ 7).

Years earlier, in 2012 he was selected by his peers as the "National Distinguished Principal" by the National Association of Elementary School Principals.  Two years later, in 2014, he was awarded the highest honor given by the Delaware Association of School Leaders, the Paul Carlson Award.  (¶ 9).

From 2020-2021, he served as president of the Chief School Officers Association of Delaware, and has held positions on numerous other councils, committees and boards throughout Delaware. (¶¶ 8, 10, 18).

### b.    Work History.

After beginning as a Technology teacher, Dr. Shelton rose through the ranks and served first as an Assistant Principal, and then later as Principal at three different Elementary and Middle schools in Christina School District where his successes were widely acknowledged.  (¶¶ 13-14).

In 2015, he was selected for a particularly challenging position, to serve as Superintendent at Capital School District in Dover, a district with a "long history of racial tensions and poor performance," which had "eroded the trust of the community." In his five years there, Dr. Shelton saw "significant gains" not just in test scores but also in community trust and appreciation, culminating in his successfully navigating that district through the educational crisis when COVID landed during early 2020. (¶¶ 15-16).

In 2020, Dr. Shelton was recruited to apply for the Superintendent position back at Christina School District, which was having difficulties coping with pandemic challenges. He was hired and immediately engaged with teachers, employees and parents to navigate children through that difficult time, with documented success. (¶¶ 17-20, 35).

### 2. Defendants.

Defendant Board of Education of the Christina School District (the "Board") is a reorganized school board that does business as the Christina School District (the "District"). By Delaware statute and five decades of District of Delaware case law, it is the recognized final decisionmaker and policymaker for all employment, personnel and contractual decisions involving the Superintendent of the District. (¶¶ 21-28, 98-99).

Defendant Donald Patton is the elected Board President. He was previously

4

employed by the District in a career that "was not distinguished" but which lasted until "certain incidents [ ] occurred [which] provide various motives for him to dislike and retaliate against" Dr. Shelton.  (¶¶ 29-30). He is African-American. (¶ 90). Defendants Naveed Baqir, Yun Fei Lou and Althea Smith-Tucker also are Board members. (¶¶ 31-33).

### B.    The Two Employment Contracts.

### 1.    2020-2025 - the Initial Five Year Contract.

Dr. Shelton was "unanimous[ly]" hired by Board vote for a five year term running from July 1, 2020 through June 30, 2025.  (¶ 34).  Certain terms are memorialized in a written four page contract.  (Ex. A).[2]

#### a.    Written Notice, Fair Hearing and Other "Good and Just Cause" Termination Protections.

The contract expressly states that it cannot be terminated:

- "except for good and just cause;"

- unless the Board "provide[s] the opportunity for a fair hearing" before the Board or a designated Hearing Officer;

- unless that "fair hearing" is preceded by the Board providing him with "a written statement of the reasons for termination;"

- if the Board does not hold the hearing itself, the Hearing Officer who

---

[2]  "Ex. A" refers to the Exhibit attached to the Complaint at D.I. 1-1,while "Tab" cites herein refer to items attached to this brief which are subject to the judicial notice provisions of Fed.R.Evid. 201.

does must provide a "report and recommendation" to the Board; and

- the Board's final decision must be given to Dr. Shelton "in writing."

(¶¶ 34-38; Ex. A at ¶ 9).

### b. Confidential Evaluation Requirements.

As to evaluations of his work performance, it specifically requires:

- application of "the evaluation procedures required under Delaware law;"

- semi-annual evaluation of Plaintiff's performance;

- all evaluations are to be "conducted in closed session" and treated as "confidential;" and

- if the Board chooses to change the evaluation procedures to "new and different performance expectations," Plaintiff "shall be provided a reasonable period of time to demonstrate such expected performance before being evaluated."

(Ex. A at ¶ 6(b)). The above noted "evaluation procedures required under Delaware law" include, *inter alia*, the following bare minimum statutory mandates for evaluating "administrators" such as Plaintiff:

- "at least 1 performance appraisal evaluation annually;"

- which "must include an overall rating;" and

- which "must identify what constitutes satisfactory and unsatisfactory performance on the overall evaluation and each component."

14 Del.C. § 121(b)(3).

### c. Other Requirements.

6

Other contract provisions also require that:

- it "will automatically result in a one year extension of the existing agreement" if the Board fails "to notify" Dr. Shelton "in writing by certified mail" that it is not being renewed;

- pay of $199,000 per year, with 2% annual increases, as well as other increases;

- reimbursement of membership fees, charges and dues for membership in philanthropic community organizations; and

- various rules and regulations of the State and District are expressly incorporated.

(¶ 37; Ex. A at ¶¶ 8, 2-4).

### 2.    2025-2026 - the One Year Contract Extension.

#### a.    Facts Pled in the Complaint.

##### (1).    Contract Formation.

On December 12, 2023, "the Board approved a one year extension of Plaintiff's contract through June 30, 2026," with salary in the amount of $219,898. (¶ 39).  "Plaintiff agreed to and accepted this extension."  (¶ 40).

##### (2).    Defendants' Numerous Admissions of This Contract.

###### (a).    Legislative Adoption and Ratification.

At the next Board meeting, "the Board approved the minutes of their prior Board meeting which included the extension of Plaintiff's contract."  (¶ 41).

### (b).   Written Admission by the Board Attorney.

"The Board's longtime attorney admitted in writing on March 13, 2024 that this 'extension' of Plaintiff's contract 'was approved December 12, 2023.'" (¶ 42).

### (c).   Public Admission By Defendant Lou.

"On March 12, 2024, Defendant Lou publicly admitted that the Board had approved a one year extension of Plaintiff's contract." (¶ 43).

### b.   Judicially Noticed Facts.

Under Fed.R.Evid. 201(c)(2),  the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Accordingly, Plaintiff requests that the Court take judicial notice of the facts that follow, since they are "not subject to reasonable dispute because," id. at (b), and they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," id. at (b)(2), here the Board's own publicly posted Board Minutes, Agenda and Policies.[3]

---

[3]  It is proper to take judicial notice of such public records. See, e.g. Insight Psychology & Addiction, Inc. v. City of Costa Mesa, 724 F.Supp.3d 1067, 1078-79 (C.D.Cal. 2024) (city council enactments and minutes); King v. City of N.Y., 581 F.Supp.3d 559, 568 (S.D.N.Y. 2022) (city council minutes); Bennett v. City of Kingman, 543 F.Supp.3d 794, 801 n.2 (D.Ariz. 2021)(same); Hunter v. Page Cnty., Iowa, 653 F.Supp.3d 600, 608 n.3 (S.D. Iowa 2023)(county board of supervisors minutes); Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F.Supp.3d 1132, 1152 (E.D. Cal. 2017) (same); McBride v. McLean Cnty., 397 F.Supp.3d 1198, 1206 (C.D.Ill. 2019) (county board meeting minutes,

### (1).   Defendants' Own Publicly Posted Policies About their Job Duties and Preparation For and Conduct of Board Meetings.

Christina School District Policy #1.18, entitled "Responsibilities of Members of the Board," makes clear that the thereafter listed "duties and responsibilities are essential" and "the Board must be fully cognizant of their specific responsibilities to th[e] Board and to the citizens of the District."  (Tab A at 1).  It explains that the Board President, Defendant Patton, is responsible for:

- "prepar[ing] the Board Meeting agenda;" and

- "[s]chedul[ing] the annual Superintendent evaluation and review."

(Id.).  All Board members, including all individual Defendants, also are responsible for and must:

- "Review the agenda and study materials distributed prior to meetings and be prepared to participate in discussion and decision making for each agenda item;" and

- "Follow all policies adopted by the Board."

(Id. at 2).[4]

_____

agenda, enactments and related budget worksheets); Wilson v. PTT, LLC, 351 F.Supp.3d 1325, 1340 (W.D.Wash. 2018) (state commission minutes and power point presentations).

   [4]  Elected board members having actually reviewed the agenda items and other written materials before casting their votes on them is, presumably, the bare minimum necessary to comply with the Board's Policy #0000 entitled "Mission Statement and Beliefs" as part of its "Foundations and Basic Commitments" to the

District Policy #1.07, entitled "Board Meetings," makes clear that the "Board Meeting Agenda" for each Board Meeting is required to include "Approval of Minutes" of prior meetings.  (Tab C at 2-3).

### (2).    The Board's Agenda for its 12/12/23 Meeting.

Pursuant to the Board's policies above, Defendant Patton's agenda stated that he "recommended that the Christina Board of Education approve the Administrator Contract Renewals as presented," (Tab D at 14), which were contained in another presented document included with the Agenda, discussed immediately below.[5]

### (3).    The Board's Administrative Contract Renewals Document Included with its 12/12/23 Agenda.

That referenced document is separately attached at Tab E.  It details the names and positions of 93 individual administrators, holding positions across 31 District schools and District headquarters.  It includes the Chief Financial Officer, the Superintendent, the Deputy Superintendent, the Human Resources Director,

---

voters of the District, which requires that the Board "aspire to a trajectory of high expectation to which we hold ourselves."  (Tab B at 1).

[5] The current version of the Agenda still posted online continues and states that Defendant Patton himself made the motion to approve, which was ultimately voted on and approved by all four individual Defendants, the document itself stating "APPROVED_BOE." (Id.).  That vote also is reflected in the official Minutes of the Board meeting, discussed below.

and various principals, assistant principals, managers and other supervisors.  It

specifically identifies "Shelton, Dan" in the position of "Superintendent," with a

contract that expires on "6/30/25" being extended until "6/30/26."  (Tab E at 5).

(4).    The Board's Minutes of its 12/12/23 Meeting.

The Board Minutes for the 12/12/23 Meeting are attached at Tab F.   They

state that Defendant Patton filed a motion to approve these same contract

renewals, it was seconded by Defendant Smith-Tucker, who were joined in voting

"Yes" by Defendants Baqir and Lou.  It states, "Final Resolution: Motion Carries."

(Tab F at 7).

(5).    The Board's Agenda at its 1/17/24 Meeting<br>Reflects Approval of the 12/12/23 Minutes.

The Board's Agenda for its 1/17/24 Meeting reflects the approval of the

Minutes from the 12/12/23 Board Meeting.  (Tab G at 3).

(6).    The Board's Minutes of its 1/17/24 Meeting<br>Confirm This Approval.

The Minutes of the 1/17/24 Meeting also reflect that the 12/12/23 Meeting

Minutes were approved by the Board at its 1/17/24 Meeting. (Tab H at 2).

### C.    Breach.

Defendants "materially breached both of Plaintiff's employment contracts,"

in "numerous ways" on "numerous occasions," all "by repeated 4-3 Board votes,"

with all four individual Defendants always voting in favor of the breaching action.

11

(¶¶ 44-46).

### 1. Unilateral Termination of the One Year Contract Extension.

On March 12, 2024, the Board unilaterally cancelled Plaintiff's one year contract extension by a 4-3 vote, with all four individual Defendants flip-flopping and now voting to terminate it. (¶¶ 50, 86). As already noted above, this was months after Plaintiff had accepted the contract extension. (¶ 40).

"[N]o written notice of the reasons was given to Plaintiff; no 'fair hearing' was held before doing so; and no 'good and just cause' existed to justify this material breach of contract." (¶ 51; see ¶ 157),

#### a. The Delaware Department of Justice Already Concluded This Action Was Illegal and Done "For An Improper Purpose."

On June 26, 2024, after investigation, the Delaware Attorney General's Office issued a finding and concluded that the lack of any notice whatsoever here violated the Freedom of Information Act. "[W]e must conclude that a violation of FOIA occurred regarding the notice of the contract rescission." (Tab I at 6 and 7). The DOJ also concluded that this was done "for an improper purpose." (Id. at 7).

### 2. The Five Year Contract.

#### a. Failure to Pay His Agreed Upon Salary.

On March 12, 2024, the Board voted 4-3 to withhold a portion of Plaintiff's

contracted salary.  (¶¶ 47-48).  As a result, Plaintiff "lost three days of his

negotiated wages."  (¶ 47).  The Board characterized this as his being "suspended

and reprimanded without pay effective for three days from April 1, to April 3,

2024."  (¶¶ 47, 86).  However, no provision of his contract or District Policy

provides for this type of suspension.  (Compare Ex. A).

Defendant Patton admitted that there had been no discussion with Plaintiff

of the reasons for this suspension, no notice in writing and no fair hearing where

Plaintiff would be able to respond.  (¶ 49).

> **b.    Canceling His Mandatory Annual "Confidential" Evaluation in "Closed" Session and Instead Taking a Public Vote of "No Confidence" in Public Session.**

On May 24, 2024, the Board was scheduled to give Plaintiff the confidential

written evaluation required by: (1) his contract (¶ 53; Ex. A at ¶ 6(b)); (2) District

Policy (see Tab A at 1 - Board Policy #1.18 at III.A.6.); and (3) Delaware statutory

law.  But the Board removed that agenda item and instead, in public session, voted

"no confidence" in Plaintiff.  (¶¶ 52, 86).  This came "as a total surprise and with

no prior warning," and there was no notice in writing or otherwise, no hearing

held and just cause given whatsoever.  (¶¶ 52, 54).

> **(1).   The Delaware Department of Justice Concluded This Action Was Illegal and Done "For An Improper Purpose."**

The Delaware Department of Justice later ruled that the Board's actions here

were illegal and violated Delaware law.  (¶ 56).  In the DOJ's words, "we agree that the lack of notice for this vote of no confidence in the superintendent constitutes a second violation" of FOIA.  (Tab I at 3, 7).  The DOJ also concluded that this was done "for an improper purpose."  (Id. at 7).

### (2). The Board's Longtime Legal Counsel Also Admitted This Was Illegal and Done "For An Improper Purpose."

The Board's own longtime legal counsel also conceded, in writing, that the Board's actions here were illegal.  (¶ 56).  The DOJ also noted in its written opinion that based upon written submissions by the Board's same longtime attorney, "[t]he Board concedes" that it had called an illegal procedural session that was "not noticed" in order to discuss the 'no confidence' vote, all "for an improper purpose."  (Tab I at 2).

### c. Administrative Leave, Reprimand, Suspension, Hiring a Replacement & Termination.

On July 9, 2024, by the same 4-3 vote, the Board "suspended," "reprimanded" and placed Plaintiff "on administrative leave." (¶¶ 57, 86).

"Thereafter he was denied access to his offices and all systems of the District and he was denied supervision of any of its activities or personnel and not allowed to perform any of his prior job duties and responsibilities identified above. His email was turned off, and his office keys were demanded."  (¶ 57).

14

On August 13, 2024, by another 4-3 vote, the Board hired a new Superintendent and gave him a one year contract to replace Plaintiff.  "As a result, Plaintiff was out of a job."  (¶¶ 59-60, 86).  He was "fired" and "terminated."  (¶¶ 1-2).

Again, no written notice of the reasons for these actions was given to Plaintiff; no "fair hearing" was ever held before doing so; and no "good and just cause" existed to justify any of this.  (¶¶ 58, 61, 2, 118-19, 121, 125-26).

### d.    Additional Breaches.

As noted above, the Complaint explained that the contracts were breached in "numerous ways" (¶ 44), on "numerous occasions" (¶ 45).  Given we operate on a notice pleading standard, the above are "example[s]" only (¶ 47), not a comprehensive list. However, given the sheer number of unsubstantiated, often contradictory, factual claims in the five defense briefs with no supporting record cites, and given Defendants' efforts to improperly inject 46 pages of exhibits into our factual record in violation of Fed.R.Civ.P. 12(d) and turn the present motions into ones governed by Fed.R.Civ.P. 56, out of an abundance of caution Plaintiff has attached a Rule 56(d) affidavit (Tab K), noting some of the additional contract breaches, including, for example:

- Defendants failed to send Plaintiff the required non-renewal letter, which means that on December 30, 2024, Plaintiff received an automatic one year extension of his Superintendent contract for the

July 1, 2025 - June 30, 2026 time period, but Defendants have just hired a different person to fill the position of Superintendent for this same time frame;

• Defendants' failure to conduct evaluations as required above for years other than just 2024; and

• Defendants' failure to reimburse Plaintiff for his membership fees in philanthropic community organizations.

(Tab K at ¶¶ 11-40).

### 3.   Contemporaneous Public Attacks on Plaintiff's Integrity, Competence and Morals.

Contemporaneous with the actions already recounted above, Defendants launched a devastating public campaign, attacking Dr. Shelton's integrity, morals and very competence as an educator. (¶¶ 84-96). Defendants "made numerous false, misleading and defamatory written and oral statements" about Plaintiff, "by name" (¶¶ 87-88), suggesting "that he is guilty of some type of grievous and immoral wrongdoing." (¶ 86). "The gist of these statements is that Plaintiff is a racist, a liar, immoral and an inept and incompetent educational administrator who engaged in workplace wrongdoing so severe that it justified two mid-contract firings." (¶ 89). By way of "example" only, the Complaint recounts how Defendant Patton went on the television show of a well-known former Wilmington politician, political activist, educational consultant and much beloved community organizer where Defendant Patton publically and falsely accused Dr. Shelton of

16

being a "racist," and (somehow) singling out Defendant Patton (Dr. Shelton's

boss) "because I am black."  (¶ 90).[6]

### a.    The Totality of These in Context.

As outlined above, a brief time line summary of adverse employment

actions includes:

- March 12th - the Board publically suspends Dr. Shelton, withholds his pay and unilaterally cancels his already agreed upon contract;

- May 24th - the Board publically votes "no confidence" in Dr. Shelton's abilities, leadership and overall job performance;

- July 9th - the Board publically and permanently suspends, reprimands, places on leave and terminates Dr. Shelton's employment; and

- August 13th - the Board publically hires a new superintendent to replace him.

Viewing these many actions in context together with the contemporaneous

publicity campaign attacking his good name and reputation, (¶¶ 86, 95), they "in

their totality convey the message that Plaintiff engaged in grievous educational

and or other wrongdoing at work" and that he is "an inept and incompetent

educational administrator."  (¶¶ 95-96).[7]  Defendants' public attacks and their

---

[6]  Dr. Shelton is not black.  (¶ 6).

[7]  For avoidance of any doubt, all of the many slanderous attacks on Dr. Shelton and his integrity, morality and competence are completely and

many adverse employment actions "have been widely followed by taxpayers and legislators as well as extensively covered by the local news media."  (¶ 1).

### b.    Plaintiff Was Left "Unemployable" With His Reputation Destroyed.

As a result of all of Defendants' actions, "Plaintiff is unemployable" because his good name and reputation have been "destroyed."  This recent Superintendent of the Year and Principal of the Year before that (see ¶¶ 7-9), cannot even get a job interview because his personal and professional "reputation has been destroyed in: (1) the local, regional and national educational communities; and (2) the public at large."  (¶¶ 84-86, 92-97).

### D.    Why This Is Occurring - Evidentiary Admissions Made by the Board's Lead Counsel.

### 1.    The Longtime Attorney-Client Relationship.

For more than four decades, the Board and District have been represented by the law firm Morris James LLP.  For many of those years, including all relevant to our present case, their longtime lead legal counsel has been the "distinguished" James H. McMackin, III, Esquire, an attorney "widely known for his wisdom, ethics and zealous advocacy on behalf of his clients."  (¶¶ 62-63, 135).

### 2.    The Uncontested Waiver of Attorney-Client Privilege by Defendants.

---

categorically false.  (¶ 91).

"For reasons unknown, the Board waived attorney-client privilege" as to various matters, including the employment situation and circumstances surrounding Dr. Shelton and "allowed the news media subsequently and independently to publish numerous written warnings from the Board's own attorney that its treatment of the dedicated Dr. Shelton was blatantly unconstitutional, illegal and would result in an award of ... punitive damages" under 42 U.S.C. § 1983. (¶ 1, see ¶¶ 64-66, 76-77).

### 3. Admissions Made by the Board's Attorney.

Attorney McMackin advised the Board and all four individual Defendants, in writing, that:

- they "were engaging in a 'witch hunt' towards" Dr. Shelton, (¶¶ 69, 2);

- "there was a 'mountain' of evidence that the[y] ... were not impartial towards" him, (¶ 70; see ¶ 135);

- "Defendants had displayed a 'public record of animus' towards" him, (¶¶ 71, 2; see ¶ 135);

- "[g]iven public statements and actions, one or more board members ... will have an 'impossible' hill to climb if they claim to be impartial," (¶¶ 72, 2; see ¶ 135, 2);

- "this lack of impartiality would result in a constitutional 'due process' violation," which will "give rise to personal liability" of the Board members, (¶¶ 73-74);

- "he would not and could not be a party to the Board's wholesale illegal behavior towards Plaintiff and otherwise;" (¶ 76);

19

- "the Board's 'wholesale disregard of the law' was greatly troubling and illegal," (¶ 77);

- their misconduct met the standard required for "punitive damages" under § 1983, (¶ 1);[8] and

- "I am not sure what the Board's goal is, but it is not adherence to the law." (¶ 78).

Other factual charges in the Complaint also bear out this bias of the individual Defendants.  (¶¶ 132-42),

Ultimately, "[i]n accord with the finest traditions of the Delaware Bar," attorney McMackin and Morris James resigned from representing the Board rather than participate in such illegal behavior.  (¶ 79).

## ARGUMENT

I.    **DEFENDANTS' NUMEROUS MATERIAL FAILURES TO COMPLY WITH THIS COURT'S LOCAL RULES, ORDERS AND PROCEDURES REQUIRES DENIAL OF THEIR MOTIONS.**

A.    **Standard of Review.**

"It is the moving party's burden to clearly and cogently state its reasons for dismissal," In re Davita Inc. S'holder Derivative Litig., 2019 WL 1855445, *8 (D.Del. Apr. 25, 2019), and our District's Local Rules, Orders and Procedures are

---

[8]  Which requires recklessness, intentionality or maliciousness. See, e.g. Smith v. Wade, 461 U.S. 30, 51, 56 (1983); Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006).

intended to facilitate this process without "inconvenien[ce] to the court." Id. at *7. Yet review of the five overlapping, non-compliant and sometimes contradictory defense briefs unnecessarily prolongs and complicates the matters that must be addressed before they are thoroughly reviewed and ultimately resolved by this Court in its eventual decision.

"It is beyond question that the District Court has the authority to strike filings that fail to comply with its local rules." Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 614 (3d Cir. 2018). This Court has regularly exercised such authority by, for example:

- striking as non-compliant briefing that lacks the Statement of Facts required by our Local Rules, and then denying the related motion as unsupported, see Pharmacy Corp. of Am./Askari Consol. Litig., 2021 WL 4033238, *1 (D.Del. Sept. 3, 2021);

- treating purported "facts" asserted without the required supporting record cites as mere attorney argument, see Smart Meter Tech., Inc. v. Duke Energy Corp., 2017 WL 2954916, *3 n.1 and *4 n.4 (D.Del. July 11, 2017);

- similarly treating alleged "facts" not placed in the required Statement of Facts section as mere attorney argument and finding such flagrant disregard of the Local Rules to be "wholly inappropriate," see Trotter v. Akinbayo, 2023 WL 22133, *7 n.79 (D.Del. Jan. 3, 2023);

- declining to address arguments not raised in the required argument section, see In re Davita, 2019 WL 1855445, *7-8, 10; and

- rejecting as "inexplicably ... untimely, and [which] can be overruled on that basis alone," substantive merits filing not e-filed until after the close of business day filing deadline, see Align Tech., Inc. v. 3Shape

21

A/S, 2020 WL 1873026, *1 (D.Del. Apr. 15, 2020).

**B.    D.Del. ECF Administrative Procedures Violation by Baqir.**

Subsection (F) of the <u>Administrative Procedures Governing Filing and Service by Electronic Means</u>, states in relevant part -

> Aside from initial pleadings, all electronic transmissions of documents (including, but not limited to, motions, briefs, appendices, and discovery responses) must be completed by 5:00 p.m. Eastern Time, in order to be considered timely filed and served that day.[9]

Per the Stipulated Order of February 3, 2025 (<u>see</u> D.I. 12 and "SO ORDERED" unnumbered docket entry immediately following), Answers or Motions herein were due April 21, 2025.  (D.I. 12 at ¶ 2).  But more than four months after service was achieved (<u>id.</u> at ¶ 1), Defendant Baqir failed to timely file his Motion or Opening Brief by the deadline.  (<u>See</u> D.I. 22).  Per the Notice of Electronic Filing e-mail, Defendant Baqir instead filed his motion and brief at 5:41 p.m. (<u>See</u> Tab J attached).  By operation of Subsection F of the <u>Administrative Procedures</u> and this Court's August 16, 2022 Order, Defendant Baqir's motion and brief are not "considered timely filed and served" because he missed the filing

---

[9]  <u>Administrative Procedures Governing Filing and Service by Electronic Means</u>, Subsection (F) (D.Del. Jan. 2023), www.ded.uscourts.gov/sites/ded/files/ CMECF-DEAdminProc-%202023%20January.pdf.  It is the formal implementation of this Court's August 16, 2022 Order. <u>See</u> <u>In re: Revision to Electronic Case Filing Policies and Procedures</u> (D.Del. Aug. 16, 2022) (Order), www.ded.uscourts.gov/sites/ded/files/news/Revision%20to%20ECF%20Filing%20Deadline%208-16-22.pdf.

deadline and they count as having been filed on April 22, 2025.  Having missed

without any explanation the deadline for filing a motion to dismiss, Defendant

Baqir's motion and brief should be disregarded as "inexplicably...untimely," Align

Tech., 2020 WL 1873026, *1, and the case move into discovery against him.

Although e-filing technical issues can unavoidably arise,[10] this is not the

case as to Defendant Baqir.  Certainly more than four months of lead time since

service was admittedly achieved is more than sufficient time, even for a Defendant

who has fled the country for Pakistan in light of his many legal troubles.[11]

### C. D.Del. Local Rule 7.1.3(c)(1)(E) - "Concise Statement of Facts" with "Supporting References to the Record" Violations by the Board, Patton and Smith-Tucker.

Local Rule 7.1.3(c) addresses the required contents of briefs. It is

mandatory.  See id. at 7.1.3.(c)(1)("shall contain the following").  Local Rule

7.1.3(c)(1)(E) addresses the "concise statement of facts" which must contain

"supporting references to the record, presenting the background of the questions at

---

[10]  As has already occurred in our case but which were properly and promptly disclosed. (See D.I. 16, 21).

[11]  See, e.g. Sarah Mueller, "Grand jury probe targets Delaware private school connected to Christina school board member," https://whyy.org/articles/ delaware-christina-school-board-grand-jury-probe/ (Aug. 7, 2024); Sarah Mueller, "Delaware school board member challenges residency of fellow board member living in Pakistan," https://whyy.org/articles/delaware-christina-school-board -member-residency/ (Apr. 25, 2025).

issue." The purpose of this rule is to "force[] counsel to develop a coherent statement of relevant facts" and to "provide[] the Court with the source material necessary to consider the arguments a party raises." <u>Pharmacy Corp.</u>, 2021 WL 4033238, *1.

The ultimate theory behind motion to dismiss practice is that assuming certain factual allegations are true, such facts nevertheless fail to state a legal claim. Local Rule 7.1.3(c)(1)(E) requires the parties to assist the Court by identifying those facts. But the system does not work if the parties simply ignore the facts properly pled and leave it to the Court to do their job for them and figure it out on its own.

Several Defendants simply ignore the detailed facts pled in the 22-page, 162-paragraph, 5,555-word Complaint. For example:

- the Board Defendant's Statement of Facts (D.I. 20 at 2) consists solely of a 7 line, single paragraph that cites only: (1) Exhibit A (the five year contract); and (2) an outside the record affidavit from the District's CFO. Not a single paragraph from the factually detailed Complaint is mentioned, cited or even vaguely alluded to.

- Defendant Patton's short Statement of Facts (D.I. 14 at 2-3) is primarily non-factual attorney argument which claims the one year contract extension was contrary to Delaware law and somehow was improperly foisted upon a Board that was asleep at the switch.[12]

_____

[12] (<u>Compare</u> Facts at **B.2.b.(1).** - detailing how the Board's own rules require individual Board members like Defendants be "fully cognizant of their responsibilities" and have conscientiously read and reviewed all written materials

24

> Three of the four paragraphs have either no record citations to the
> Complaint whatsoever or cite to the Complaint but simply to claim
> the cited facts contained therein are factually incorrect and in error.

This is improper.  Both of these are the functional equivalent of the statements of

facts rejected by Judge Andrews in <u>Pharmacy Corp.</u>, 2021 WL 4033238, *1, and

by Judge Robinson in <u>Smart Meter</u>, 2017 WL 2954916, *3 n.1 and *4 n.4.

Although the defense captions them as statements of facts, their substance fails to

even arguably meet the requirements of what this section must contain and so

should be rejected as materially non-compliant with our Local Rules.  Absent

proper identification of the facts in their briefs, the defense motions fail.

Continuing, Defendant Smith-Tucker's Statement of Facts erroneously

makes the factual assertion that the Board "inadvertently" extended Plaintiff's

contract, and that this was "premature."  (D.I. 18 at 4).  But the cited paragraphs of

the Complaint state no such thing and do not even arguably support this non-

record factual claim.  Indeed this is the opposite of what was pled by Plaintiff.

(<u>See</u> Facts at **B.2.** above).

**D.**    **D.Del. Local Rule 7.1.3(c)(1)(D) - "Summary of Argument"
         Violation by Baqir.**

Local Rule 7.1.3(c)(1)(D) addresses the "summary of argument" which

---

beforehand to ensure they can cast informed votes at Board meetings on behalf of
the constituents who elected them for this very purpose).

must "set[] forth in separately numbered paragraphs the legal propositions upon which the party relies."

Despite this clear requirement, the Summary of Argument section of Defendant Baqir's late-filed brief makes numerous <u>factual</u> - not legal - claims that also have no basis in, or cites to, the record. (<u>See</u> D.I. 22 at 5-6). It repeatedly states "Plaintiff admits" and "Plaintiff also does not allege" certain key factual items related to procedural due process analysis (<u>id.</u>), that are found nowhere in the Complaint. The Complaint cannot even arguably be read to demonstrate these things. Notably, this Defendant's own Statement of Facts does not itself repeat any of these same factual assertions contained in his Summary of Argument.

## II.    STANDARD OF REVIEW.

### A.    The Basics.

The focus at the motion to dismiss stage is on the facts alleged providing fair notice to the defense, not magic words in articulating the legal theory. <u>See, e.g.</u> <u>Johnson v. City of Shelby, Miss.</u>, 574 U.S. 10, 11 (2014)(per curiam) (explaining that the "short and plain statement" required by Fed.R.Civ.P. 8(a)(2) focuses on the facts alleged, and holding a complaint cannot be dismissed "for imperfect statement of the legal theory supporting the claim asserted"); <u>accord</u> <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 293 n.14 (3d Cir. 2018).

"[T]he purpose of a motion to dismiss is to test the sufficiency of a complaint, <u>not to resolve disputed facts</u> or decide the merits of the case." <u>Loan Servs. Inc. v. NEWITY LLC</u>, 2023 WL 6316749, *4 (D.Del. Sept. 28, 2023) (emphasis added); <u>accord</u> <u>DaVita</u>, 2019 WL 1855445, *4; <u>Smith v. Del. First Fed. Credit Union</u>, 395 F.Supp.2d 127, 129 (D.Del. 2005). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Connelly v. Lane Constr. Corp.</u>, 809 F.3d 780, 786 (3d Cir. 2016). Importantly, "the plausibility standard does not impose a heightened pleading requirement, and ... [Fed.R.Civ.P.] 8(a) continues to require only a 'showing' that the pleader is entitled to relief." <u>Schuchardt v. President of the U.S.</u>, 839 F.3d 336, 347 (3d Cir. 2016).[13] "Even after <u>Twombly</u> and <u>Iqbal</u>, a complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." <u>Connelly</u>, 809 F.3d at 790. The Court "must still ... assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." <u>Id.</u>

### 1.    Insider Accounts Strongly Support Plausibility.

---

[13]    <u>Accord</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (the Supreme Court in <u>Twombly</u> "emphasized throughout its opinion that it was neither demanding a heightened pleading standard of specifics nor imposing a probability requirement.").

The Third Circuit has explained that the existence of a "detailed insider account" in a complaint, although not legally required, "strongly supported [ ] plausibility" when such an insider account exists.  Schuchardt, 839 F.3d at 348. As addressed at section **D.3.** of the Facts above, here we have the detailed account of the ultimate insider - the Board's own longtime legal counsel - the most experienced attorney in the State of Delaware on the law surrounding public school boards and the districts they govern, who repeatedly:

- advised Defendants that their actions towards Plaintiff were illegal and violated numerous procedural due process requirements;

- warned them that their actions had factually gone so far beyond what the law allows that they would be subject to "personal liability" for their "wholesale disregard of the law" and met the recklessness or maliciousness standard for "punitive damages;" and

- admitted, in writing, that Defendants had given Plaintiff a valid one year contract extension.

## B.    Other Factual Materials.

In addition to the complaint and its exhibits, "we may consider ... matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (cleaned up); accord McKenzie v. Navy Fed. Credit Union, 2024 WL 5154500, *2 (D.Del. Dec. 18, 2024).  Accordingly, the Board's own minutes, agenda and policies already

28

discussed above are properly considered part of the factual record because they are matters of public record and meet the judicial notice standard of Fed.R.Evid. 201.

### C.    The Defense Filings Also Concede Discovery is Necessary.

Rule 12(b)(6) operates on the facts pled in the Complaint.  Review of the totality of the defense briefs reveals a common factual theme - a claim that the facts pled in Plaintiff's Complaint are factually wrong.  But that is not the purpose of a Rule 12(b)(6) motion to dismiss.  Again, "the purpose of a motion to dismiss is to test the sufficiency of a complaint, <u>not to resolve disputed facts</u>...."  <u>Loan Servs.</u>, 2023 WL 6316749, *4.

In addition to disputing and ignoring the facts as pled, Defendants also cannot agree amongst themselves as to what the alleged 'true' facts even are.  Two brief, material examples follow:

1.  Defendant Baqir asserts that Plaintiff requested and the Board granted him the post-deprivation hearing always required by procedural due process. (D.I. 22 at 6).  But Defendant Smith-Tucker contradictorily claims Plaintiff never requested such a hearing.  (D.I. 18 at 17).  Yet Defendant Patton appears to claim Plaintiff requested such a hearing but was too late in doing so and, presumably, was denied.  (D.I. 14 at 3).  Which is it?

2.  Defendants Baqir, Smith-Tucker and Lou also claim that no written document exists which would ever allow the Court to know the terms that were

being discussed and voted upon when the Board voted and approved the one year

contract extension in public session.  (See D.I. 22 at 7, 11; D.I. 18 at 12-13; D.I.

21 at 4, 12, 13).  But Defendant Patton attached an unsigned standard form State

of Delaware contract with Plaintiff's name on it that he says contains the terms but

which he says were later "revoked." (D.I. 14 at 2; D.I. 13-1 at 6).

Ignoring for the moment that all of these factually contradict the Complaint,

the very nature of these Defendants' internally contradictory claims made by

parties in the same defense foxhole demonstrates that discovery is necessary to

sort them out.  The defense motions should be denied on this ground alone.

## III.    DEFENDANTS DEPRIVED PLAINTIFF OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

### A.    Standard of Review.

See Argument **II.** above.

### B.    Some Defendants Argue the Wrong Legal Test.

It has long been recognized that the protections of substantive due process

are much narrower than those of procedural due process.  See, e.g. Steele v.

Cicchi, 855 F.3d 494, 507 (3d Cir. 2017) ("The liberty rights protected by

procedural due process are broader than those protected by substantive due

process").  Recognizing this, Defendants again attempt to muddy the waters by

repeatedly arguing that their actions did not violate substantive due process.  (See,

e.g. D.I. 20 at 7-11; D.I. 14 at 10-11; D.I. 21 at 16-17).  But Plaintiff did not bring

a substantive due process claim but instead brought a procedural due process case.

These are two distinct types of Fourteenth Amendment claims, with completely

different legal tests. Compare Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847-48

(1998) (shocks the conscience test) with Mathews v. Eldridge, 424 U.S. 319, 335

(1976) (the three part balancing test).  The Complaint clearly states "[t]his is a

Fourteenth Amendment procedural due process" case.  (See, e.g. ¶ 1).

### C.  Procedural Due Process Basics.

The right to procedural due process is one of the few "absolute"

constitutional rights,[14] because "the law recognizes the importance to organized

society that those rights be scrupulously observed."  Carey, 435 U.S. at 266.

Procedural due process legal analysis has two steps.  First, whether there is a

liberty, property or life interest.  Second, the process that is due.  Hill v. Borough

of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).

### D.  Protected Fourteenth Amendment Interests.

The U.S. Supreme Court has explained that the original meaning of due

process, going back to the "law of the land" clause in Chapter XXIX of the Magna

---

[14]  Carey v. Piphus, 435 U.S. 247, 266 (1978); Bradley v. Pittsburgh Bd. of
Educ., 913 F.2d 1064, 1077 (3d Cir. 1990); CMR D.N. Corp. v. City of Phila., 703
F.3d 612, 627 (3d Cir. 2013).

Carta in 1215, includes a person being "put from his livelihood without answer."

Kerry v. Din, 576 U.S. 86, 91 (2015) (quoting 1 E. Coke, The Second Part of the

Institutes of the Laws of England 47 (1797 ed.)); see also 1 Coke, Institutes at 45-

46 ("no man shall be disseised ... of his ... livelihood, or of his liberties ... unlesse

it be by the ... law of the land (that is, to speak it once for all) by the due course,

and process of law").[15]  In more modern language, "[i]t is a purpose of the ancient

institution of property to protect those claims upon which people rely in their daily

lives, reliance that must not be arbitrarily undermined. It is a purpose of the

constitutional right to a hearing to provide an opportunity for a person to vindicate

those claims."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577

(1972).

### 1. Liberty Interests.

#### a. How Liberty Interests Are Created.

"The liberty rights protected by procedural due process ... may arise from

the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or ...

from an expectation or interest created by state laws or policies."  Steele, 855 F.3d

at 507 (cleaned up).

#### b. Interest in Reputation - the Stigma-Plus Test.

---

[15]  Because the "long s" is no longer in use, spelling has been updated to aid readability. See prologue.blogs.archives.gov/2021/12/14/the-long-s/

Originating in a series of Supreme Court decisions from the 1970's, the stigma plus test is now well-established in our case law.  See, e.g. Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971) ("certainly where the State attaches 'a badge of infamy' to the citizen, due process comes into play...Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."); Paul v. Davis, 424 U.S. 693, 710-12 (1976) (surveying and synthesizing prior decisions and holding that public injury to one's reputation when joined together with a Fourteenth Amendment interest, implicates due process protections).

"[T]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show some stigma to his reputation *plus* deprivation of some additional right or interest."  Hill, 455 F.3d at 236.  The stigmatizing statement must: (1) be made publicly; and (2) be false.  Id.

### (1).    Part 1 - the Stigma.

The public attacks by Defendants on Plaintiff's good name, integrity, morality and very competence as an educator already are recounted in detail above.  (Facts at **C.3.**, **C.3.a.** and **C.2.b.** above).  They were leveled orally and in writing.  (¶ 87).  Both individually and collectively, these many stigmatizing attacks suggest that Plaintiff:

- "engaged in grievous educational and[/]or other wrongdoing at work," (¶ 95);

- is "an inept and incompetent educational administrator," (¶ 96);

- "is guilty of some type of grievous and immoral wrongdoing" (¶ 86); and

- "is a racist, a liar, immoral and an inept and incompetent educational administrator who engaged in workplace wrongdoing so severe that it justified two mid-contract firings."  (¶ 89).

These constitute "a badge of infamy" and injure Plaintiff's reputation in numerous ways.  (See ¶¶ 84-86, 92-96).

These public attacks were leveled in numerous venues, including by going on a public television show hosted by a well-known community activist (¶ 90), and also in crowded public Board meetings (¶¶ 52, 47, 57, 45, 59, 49, 52, 86).  All were "extensively covered by the local news media." (¶¶ 1, 66).  The Third Circuit has conclusively held that such stigmatizing attacks "at Borough Council meetings and in newspaper articles" satisfies the stigma standard.  Hill, 455 F.3d at 236-37.

Additionally, the attacks on Plaintiff's professional competence and good name in the many public Board meetings - including but not limited to the 'no confidence' vote and the suspension - were contrary to the requirements of Plaintiff's employment contract and Delaware statutory law which required strict confidentiality in non-public, "closed session" when it came to evaluating Plaintiff's job performance. (See Facts at **B.1.b.** and **C.2.b.** above).  The Third

Circuit has rejected, "as a matter of law," the claim that such false attacks on the competence of a public employee can be immunized by wrongdoing public officials like Defendants who belatedly claim merely to have been exercising free speech rights "about another public servant's performance of his public job." Hill, 455 F.3d at 236 n.16.

The Board's own former attorney, in his many communications and private legal advice to our Defendants, referred to these many "public statements and actions" as the "public record of animus" towards Plaintiff that Defendants had created. (Facts at **D.3.** above).

All of these statements and other attacks also were unequivocally false (¶¶ 91, 87, 96, 93; compare ¶¶ 7-10), have gravely damaged Plaintiff's previously sterling reputation and left unemployable this recent Delaware Superintendent of the Year.  (¶¶ 84-86).

Additionally, there are no federalism concerns weighing against protecting Plaintiff's reputation from such stigma in our case.  The Third Circuit has long held that inclusion of reputation protections in a state's constitution is significant reassurance that the "liberty" interest to be protected in a federal procedural due process case does not "unduly unsettle" principles of federalism in the event that a state has chosen not to protect their citizens' reputation interests under their own state law.  McKnight v. Se. Pa. Transp. Auth., 583 F.2d 1229, 1239 (3d Cir. 1978).

But in our case, Plaintiff's interest in protecting his reputation is a long recognized interest of constitutional dimension in Delaware, expressly protected by several provisions of the Delaware Constitution. See Del.Const., Pmbl. ("all people have by nature the rights of ... acquiring and protecting reputation" and "these rights are essential to their welfare"); id. at Art. I, § 9 ("every individual for an injury done to the individual's reputation...shall have remedy by the due course of law...."); id. at Art. I, § 5 ("any citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."); Kanaga v. Gannett Co., 687 A.2d 173, 177 (Del. 1996) (noting Delaware's "strong state constitutional basis for remedies to recompense damage to one's reputation.").  Not only is there no federalism bar but this state constitutional protection actually heightens the importance of protecting Plaintiff's Fourteenth Amendment reputational liberty interest here because it is consistent with underlying state policy.  Defendant Lou's claim that such state constitutional law protections are "irrelevant" is clear legal error under governing Third Circuit precedent and also, again, mixes up substantive with procedural due process analysis. (D.I. 21 at 17).

    For these reasons, the "stigma" test is satisfied.

### (2).    Part 2 - the Plus.

    As the Supreme Court has explained, the roots of the "plus" analysis for liberty interests arise from whether "a right or status previously recognized by

36

state law was distinctly altered or extinguished." <u>Paul</u>, 424 U.S. at 711. By

"officially removing the interest from the recognition and protection previously

afforded," due process protections are implicated. <u>Id.</u> In the employment context,

this often involves looking to whether the challenged government action

"foreclosed [the employee's] freedom to take advantage of other employment

opportunities." <u>Roth</u>, 408 U.S. at 573.

      **(a).**   **"Just Cause" or "Mutually Explicit Understandings" Protections Are Not Needed Because this is a Lesser Standard Than Required to Create a Property Interest.**

In a flawed argument that renders superfluous the plain language of the

Fourteenth Amendment, Defendant Lou also claims there can never be a

deprivation of a "liberty" interest unless an independent deprivation of a

"property" interest is proven - in other words, that the existence of a liberty

interest depends upon the existence of a property interest. (D.I. 21 at 18).

However, the Third Circuit has specifically considered and emphatically rejected

the claim that the "plus" required for a liberty interest in reputation here can only

be satisfied if the plaintiff can independently prove the violation of a property

interest. <u>See</u> <u>Hill</u>, 455 F.3d at 237-39. As addressed in the separate property

interest discussion in Argument subsection **III.D.2.a.** below, this is the "mutually

explicit understandings" standard, often met by a "just cause" protection in a contract or statute.  Accordingly, this means that the "plus" required for a liberty interest to exist in the employment context need only meet a lesser standard than the "just cause" or "mutually explicit understandings" protection required for a property interest.

> **(b).    Termination, Constructive Discharge, Suspension Without Pay and Administrative Leave With Pay Each Are Adverse Employment Actions Which Meet the Test.**

As Judge McHugh recently concluded, the "plus requirement is satisfied through termination, constructive discharge, suspension or demotion." Suniaga v. Downingtown Area Sch. Dist., – F.Supp.3d –, 2025 WL 409656, *9 (E.D.Pa. Feb. 5, 2025) (internal punctuation omitted).  In Suniaga, the Eastern District was faced with a situation where the employee had been repeatedly suspended without pay, id. at *1, 3, 8, and also repeatedly placed on administrative leave with pay. Id. at *1, 2, 5, 7, 9.  Although the court in Suniaga ultimately concluded there was no predicate false statement which was fatal to the "stigma" requirement, id. at *9-10, review of the court's detailed analysis of both property and liberty interests demonstrates that both the suspensions and the administrative leaves each met the "plus" standard. Id. at *6-11.

The Eastern District's Suniaga analysis also is consistent with Third Circuit

38

precedent. In <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2008), our Circuit held that a public employee had established the "plus" necessary for a liberty interest, <u>id.</u> at 234, when, factually, his public employer suspended him <u>with pay</u> and also barred him from the workplace, actions that were later the subject of local newspaper coverage. <u>Id.</u> at 228. Although the Court specifically grounded its legal holding in the fact that an independent property interest had already been established under state law as addressed earlier in that same opinion, <u>Dee</u> nevertheless stands for the proposition that the suspension with pay herein can satisfy the liberty interest standard.

This also is in accord with the Supreme Court's most recent comprehensive analysis which rejects unduly crabbed views of what meets the adverse action standard in the employment context. Although not a due process case, in <u>Muldrow v. City of St. Louis, Mo.</u>, 601 U.S. 346 (2024), the Supreme Court rejected an adverse action test requiring "significant," "serious" or "substantial" employment harm, rejected a requirement that "economic" harm be established and instead held that actionable adverse employment action is established by the "some harm respecting an identifiable term or condition of employment" standard in that Title VII case. <u>Id.</u> at 354-55; <u>accord</u> <u>Ammar v. McDonough</u>, 2025 WL 692084, *6 n.7 (D.Del. March 4, 2025). In a recent unreported decision, the Third Circuit concluded this includes suspensions with pay. <u>See</u> <u>Russo v. Bryn Mawr</u>

39

Trust Co., 2024 WL 3738643, *4 and n.3 (3d Cir. Aug. 9, 2024) ("We assume

without deciding that Russo's suspension with pay constituted a materially adverse

employment action" in light of Muldrow, which had overruled prior Third Circuit

case law enforcing a stricter standard).

> **(i).  Suspension Without Pay &**
> **Contract Termination Are Not**
> **Contested.**

The defense does not contest that under his five year contract, Plaintiff was

suspended without pay for three days (Facts at **C.2.a.** above),[16] and that his one

year contract extension was terminated entirely.  (Facts at **C.1.** above).  Each of

these undisputedly meets this standard and establishes the "plus" in the liberty

interest context.  See Suniaga, 2025 WL 409656, *9.

> **(ii).  The Material Fact Dispute Over**
> **What Happened in July 2024.**

Continuing, the Complaint clearly states that in July 2024, the Board

"suspended," "reprimanded" and placed Plaintiff on "administrative leave." (¶ 57).

The Complaint also described this as "permanently suspended, reprimand[ed] him

---

[16]  Defendant Smith-Tucker appears to expressly concede the likelihood that
the case should move forward on this basis, even under the stricter existence of a
property interest in employment standards. (See D.I. 18 at 17).

and place[d] on leave." (¶ 86). Plaintiff was barred from his offices,[17] barred from accessing any District computer system, his e-mail was turned off and his office keys were demanded to prevent his return. (¶ 57). Defendants then "hired a replacement Superintendent and gave him a one year term of office," leaving Plaintiff "out of a job." (¶¶ 59-60).

But Defendants merely factually contest this and say it is incorrect. They ignore the facts pled in the Complaint and again instead contradict them by submitting an affidavit from the District CFO stating that Plaintiff is merely on "administrative leave" and is being paid for the moment. They claim Plaintiff's situation is merely routine, that there is nothing to see here and we should just move along and stop making a big deal out of it.

First, this affidavit from the CFO should be disregarded since it is outside the record, directly contradicts the facts in the Complaint, omits many others and violates the standard of review under Rule 12(b)(6).

But second, if it is considered, the appropriate Rule 56(d) declaration is

---

[17] As noted in the Rule 56(d) declaration, Defendants have seized and continue to hold Plaintiff's many educational degrees, and the official Proclamations by the Delaware General Assembly praising "his remarkable leadership" and "extraordinary contributions," "recognizing his vital role as an administrator and as an advocate for the students and faculty of the Christina School District" and finding "[h]is positive and worthy impact is beyond measure." (Tab K at ¶¶ 37, 35-39).

attached at Tab K, explaining why discovery is necessary to demonstrate that the CFO's affidavit makes false factual assertions in several instances, and is misleading and incomplete in others, and also notes how discovery from someone actually familiar with the District's longtime Human Resources policies and past practices might have been more appropriate to addressing our facts.

For example, discovery will reveal that a meeting took place on or about July 12, 2024, between Defendant Patton the Board President, Defendant Board member Smith-Tucker, Plaintiff, the then-Deputy Superintendent Deirdra Joyner and the longtime District Human Resources Director Paul Walmsley.[18]  At that meeting, H.R. Director Walmsley repeatedly explained to Defendants that: (1) despite terming it "administrative leave," the substance of the specific employment actions Defendants were imposing on Plaintiff were not what the term "administrative leave" has ever been in the District; and (2) what Defendants were doing to Plaintiff was not standard District Human Resources practice at all. Administrative leave does not involve barring someone from the campus like a criminal, taking away their keys, turning off their e-mails, stripping them of their job duties and quickly hiring a permanent replacement.  Instead, administrative

---

[18]  Defendant Patton and the rest of the Defendant Board members thought so much of H.R. Director Walmsley's performance that they had recently renewed and extended his employment contract by another year.  (See Tab E at 5).

leave is a brief, temporary status an employee is placed in until notice can be given and an administrative evidentiary hearing thereafter can be held before a neutral hearing officer where evidence can be presented and reviewed, and arguments made. Despite Defendant's use of the label "administrative leave," this is not, in substance, an accurate description of what was done to Plaintiff. (<u>See</u> Tab K at ¶¶ 24-32).

Instead, as Plaintiff's Complaint properly states, this was a permanent suspension (¶¶ 57, 86), reprimand (¶¶ 57, 86) and functional termination (¶¶ 57, 59-60, 86), all as Defendants launched a high profile public media campaign, blasting Plaintiff's integrity, morality and professional competence as an educator, which has rendered him unemployable. (Facts at **C.3.** above).

Plaintiff's livelihood has been destroyed. Due process exists precisely for situations such as this. <u>See, e.g.</u> <u>Kerry</u>, 576 U.S. at 91; 1 Coke, <u>Institutes</u> 45-47; <u>Roth</u>, 408 U.S. at 577.

### (c). Devastating Impact on Future Employment Prospects is Established.

This Court has long held that the legal analysis here centers on the impact on the public employee's ability to obtain future employment. In a lengthy discussion, this Court explained that -

The bulk of the case law indicates that a government employer infringes an

individual's liberty interest when the employer <u>so stigmatizes the individual</u> <u>as to impair that individual's ability to obtain alternative employment</u>.

<u>Karr v. Castle</u>, 768 F.Supp. 1087, 1097 (D.Del. 1991) (emphasis added). In <u>Karr</u>, this Court held that "[i]nvoluntary separation based upon dereliction of duty may be sufficiently derogatory to substantially impair [an employee's] ability to obtain future employment and thus implicate a liberty interest." <u>Id.</u> Key is the range of the employment opportunities foreclosed. If the challenged action merely "forecloses an individual from working at one isolated and specific" worksite, there is no violation. <u>Id.</u> at 1098. But "[a]s the range of employment or professional opportunities foreclosed increases, however, it becomes more likely that a liberty interest will be implicated." <u>Id.</u> This is in recognition of the fact that "to be deprived not only of present government employment but of future opportunity for it is certainly no small injury." <u>Id.</u> (quoting <u>Roth</u>, 408 U.S. at 574) (cleaned up); <u>see also</u> <u>Ersek v. Twp. of Springfield</u>, 102 F.3d 79, 84 (3d Cir. 1996) (evidence of harm to "future employment" prospects meets the requirement for stigma-plus); <u>Dillman v. Chaffinch</u>, 313 F.Supp.2d 415, 422 (D.Del. 2004) (the stigma must be accompanied by "deprivation of present or future employment") (quoting <u>Robb v. City of Phila.</u>, 733 F.2d 286, 294 (3d Cir. 1984)); <u>accord</u> <u>Thompson v. Dep't of Servs. for Child., Youth & their Families</u>, 2019 WL 4222647, *5 (D.Del. Sept. 5, 2019). "[W]hether a liberty interest is implicated

44

depends in part upon the definition of the scope of employment opportunities from which the individual is foreclosed."  Karr, 768 F.Supp. at 1098.

In our case, the stigma and badge of infamy Defendants' many actions and words have attached to Plaintiff's previously sterling reputation as an educator is widespread and clear.  As the Complaint succinctly and factually states -

> Plaintiff is unemployable.  After applications, he cannot even obtain an initial interview as an administrator or educator either in Delaware, Pennsylvania or Maryland.

(¶ 85).  All of this for a highly decorated, recent Superintendent of the Year (¶ 7), "National Distinguished Principal" before that (¶ 9) and winner of the "highest honor given in the Delaware Association of School Leaders." (Id.). This man cannot even get an initial interview.  So in addition to losing his existing job, his future employment prospects have been demonstrably destroyed.  This meets the test.  See, e.g. Karr, 768 F.Supp. at 1097-98.

For all of these multiple, independent reasons, the "plus" test is satisfied.

### 2. Property Interests.

### a. How Property Interests Are Created.

"For a discharged government employee to succeed on a violation of procedural due process claim, the employee must first prove that she possessed a constitutionally protected property right in her continued employment."  Mancini v. Northampton Cnty., 836 F.3d 308, 315 (3d Cir. 2016). "A person's interest in a

benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit."  Perry v. Sindermann, 408 U.S. 593, 601 (1972).

### (1).    "Just Cause" Contracts.

Despite five separate opening briefs having been filed, no where in any of them does any Defendant cite to, acknowledge or even attempt to address the widespread, undisputed case law that a "just cause" provision in an employment contract creates a property interest.  This has been recognized by, *inter alia*, the: U.S. Supreme Court, see Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982); Third Circuit, see, e.g. Bradley, 913 F.2d at 1078; Richardson v. Felix, 856 F.2d 505, 509 (3d Cir. 1988); Blanding v. Pa. State Police, 12 F.3d 1303, 1306 n.2 (3d Cir. 1993); Tundo v. Cnty. of Passaic, 923 F.3d 283, 287 (3d Cir. 2019); District of Delaware, see, e.g. Sturgess v. Negley, 761 F.Supp. 1089, 1095 (D.Del. 1991); Kirschling v. Lake Forest Sch. Dist., 687 F.Supp. 927, 933-34 (D.Del. 1988); Delaware Supreme Court, see Stanford v. State Merit Employee Relations Bd., 44 A.3d 923, 2012 WL 1549811, *4 (Del. 2012); and Delaware Superior Court.  See Barber v. City of Lewes, 1997 WL 127951, *8 (Del.Super. Jan. 31, 1997).

### (2).    Other Ways to Create a Property Interest.

Mutually explicit understanding also may arise from less formal sources,

such as:

- "written or unwritten ... local government policies," <u>Stana v. Sch. Dist. of City of Pittsburgh</u>, 775 F.2d 122, 126 (3d Cir. 1985);

- "customs, policies and practices of a local government unit," <u>Hitchens v. Yonker</u>, 943 F.Supp. 408, 411 (D.Del. 1996);

- "a clearly implied promise," <u>Roth</u>, 408 U.S. at 577;

- "an implied contract," <u>Bishop v. Wood</u>, 426 U.S. 341, 344 (1976); or

- "by ordinance." <u>Id.</u>

In such situations, the courts look to "the promisor's words and conduct in the light of the surrounding circumstances." <u>Perry</u>, 408 U.S. at 602 (quoting 3 <u>A. Corbin on Contracts</u> § 562 (1960)).

### b.    Multiple Property Interests Exist in Our Case.

### (1).    "Just Cause" for Termination Contracts.

As addressed in the Facts above, both contracts at issue in our case have "just cause" from termination protections, but were nevertheless terminated without "just cause."  For this reason alone at the Rule 12(b)(6) stage, under the extensive case law set forth in sub-Argument **III.D.2.a.(1).** above, a property interest has been plausibly alleged under both the five year and one year contracts, so the many defense motions must be denied.  Ignoring this case law does not make it go away.  Fact disputes about suspension versus administrative leave

versus termination versus constructive discharge should await the further fact development that discovery provides.

### (2).    Board Vote in Favor of and Adoption of a Contract Extension.

### (a).    "Just Cause" Contract.

Continuing, for almost four decades, it also has been the law of our District that a job offer of a contract for a high level school administrator position that is voted on and approved by a Delaware public school board, orally accepted by the soon-to-be public employee, and which contains "just cause" as well as notice and hearing protections, creates a property interest, even when: (1) the Board later flip-flops, changes its mind and unilaterally votes to terminate and withdraw the job offer; (2) the formal written contract was never actually signed; and (3) not all of the key terms of the contract were even contained in the unexecuted written contract.  See Kirschling v. Lake Forest Sch. Dist., 687 F.Supp. 927, 929-35 (D.Del. 1988).  Although decided under the stricter motion for summary judgment standards of Rule 56 following full discovery, rather than the lesser notice pleading standards of Rule 12(b)(6), Judge Schwartz in Kirschling analyzed the contract validity and statute of frauds challenges under Delaware law, as well as due process property interest and other § 1983 challenges under federal law - most of which are identical to those raised by the defense in our present case - and

48

rejected them all.  Id. at 930-35.

Review of the Kirschling decision resolves all challenges raised by the defense.  There, this Court rejected a similar statute of frauds defense despite the lack of a formal signed written contract, because: (1) the minutes of the Board meeting reflected the Board's approval of the job offer; (2) the Superintendent had sent a letter to the applicant "informing him of the offer;" and (3) the employee had orally accepted the offer.  Id. at 930-32.  In our present case, as addressed in greater detail in the state contract law argument in Argument **IV.C.** below, the defendants' statute of fraud defense fails as a matter of Delaware contract law because:

- the Board's own attorney admitted, in writing, that the contract exists (¶ 41), triggering the "admitted agreement" exception to the statute of frauds;

- Defendant Lou similarly admitted that the contract exists (¶ 43), also triggering the same "admitted agreement" exception;

- there is more than sufficient evidence of a writing containing the offer and material contract terms, as reflected by: (a) the e-mail from the Board's own attorney (see ¶ 41); (b) the Board's own meeting minutes and other documents reflecting the Board's vote (Facts at **B.2.b.(2)-(6)** above); (c) the existing five year contract which was simply being extended by a single year, (Ex. A); and (d) the unsigned two page contract Defendant Patton attached to his brief, (D.I. 13-1 at p.6); and

- Plaintiff accepted the offer.  (¶ 40).

In Kirschling, the terms of the "contract provided for termination only for just cause and for termination notice and hearings." Id. at 929. In our case, the contract provided substantively identical terms, including "just cause" protections, and detailed notice and hearing rights. (Facts at **B.1.a.** above). As already explained above, such "just cause" protections create a property interest. So again, a property interest here exists.

### (b). "Customs, Policies & Practices"

Relatedly, the Supreme Court has explained that we need to look to "the promisor's words and conduct in the light of the surrounding circumstances." Perry, 408 U.S. at 602 (quoting Corbin § 562). Here, for similar reasons, factually the Board formally noticed a vote on the extension of Plaintiff's contract, formally voted to approve it in public session, then later held an additional vote to approve the minutes of the prior Board meeting where they had approved the extension, an extension that both the Board's own attorney and one Defendant Board member later admitted was valid and had been approved. At the least this plausibly alleges "customs, policies and practices of a local government unit," Hitchens, 943 F.Supp. at 411, sufficient to establish the necessary mutually explicit understanding, regardless of whether we after-the-fact call it "a clearly implied promise," Roth, 408 U.S. at 577, or "an implied contract." Bishop, 426 U.S. at

344.

### 3. The Plausibility & Notice Standards of Rule 12(b)(6) and Rule 8 Have Been Satisfied.

In light of all of the above, it is clear that the Complaint plausibly alleges the deprivation of both liberty and property interests under both contracts at issue in our case and there is no question that Defendants are on notice of the legal claims against them.  In presenting such plausible claims that satisfy Rule 12(b)(6), Plaintiff also has met his "minimal burdens," and made "a showing sufficient to justify moving past the pleading stage" because his pleadings "possess enough heft" to demonstrate an entitlement to legal relief.  Garrett v. Wexford Health, 938 F.3d 69, 92-93 (3d Cir. 2019).  The scope and reach of the Fourteenth Amendment liberty and property interests - including resolving the materials fact disputes detailed in Argument **III.D.1.b.(2).(b)(ii).** above concerning the nature and meaning of standard District practices surrounding suspensions, administrative leave, termination and the like - can be explored during discovery.[19]

### E. The Process That is Due

---

[19]  Defendant Smith-Tucker's request that this Court make conclusive factual findings and bifurcate legal claims moving forward for the rest of the case on such a preliminary factual record at the 12(b)(6) stage is premature and procedurally improper under the structure of the Federal Rules of Civil Procedure. (D.I. 18 at 17-18).

### 1.    Matter of Federal, Not State Law.

Once the determination is made that a liberty or property interest exists,
federal law takes over to determine what process is due before a person can be
deprived of that interest.  In the Supreme Court's words, "minimum procedural
requirements are a matter of federal law, they are not diminished by the fact that
the State may have specified its own procedures that it may deem adequate for
determining the preconditions to adverse official action."  Cleveland Bd. of Educ.
v. Loudermill, 470 U.S. 532, 541 (1985)(cleaned up).

### 2.    The Constitutional Bare Minimums.

#### a.    Notice & Opportunity to Be Heard Before a
         Deprivation.

"An essential principle of due process is that a deprivation of life, liberty, or
property 'be preceded by notice and opportunity for hearing appropriate to the
nature of the case.'" Id. at 542 (quoting Mullane v. Central Hanover Bank & Trust
Co., 339 U.S. 306, 313 (1950)). "We have described 'the root requirement' of the
Due Process Clause as being 'that an individual be given an opportunity for a
hearing before he is deprived of any significant property interest.'" Id. "This
principle requires 'some kind of a hearing' prior to the discharge of an employee
who has a constitutionally protected property interest in his employment."  Id.
Even forty years ago in 1985, the Supreme Court noted that "this rule has been

settled for some time now."  <u>Id.</u>

As woven throughout the Facts above, the Complaint specifically and repeatedly explains that Defendants provided no notice or opportunity to be heard whatsoever before terminating Plaintiff's contracts, suspending him and the other adverse actions identified above.  (¶¶ 2, 45, 49, 51, 54, 58, 61, 118-19, 121, 125-26).  In response to direct questioning by another (non-Defendant) Board member, Defendant Patton actually himself admitted this. (¶ 49).

Accordingly, ours is not a case where we are fighting about the nature of the notice or adequacy of the hearing provided.  Instead, there was no notice whatsoever, nor was there a hearing of any kind, neither pre nor post deprivation. As another sister District Court recently explained, when no process whatsoever has been provided, this is an absolute, "per se" Fourteenth Amendment procedural due process violation.  <u>See</u> <u>Mercedes-Benz Financial Services USA, LLC v. City of N.Y.</u>, – F.Supp.3d –, 2025 WL 774912, *8 (S.D.N.Y. March 11, 2025) (when presented with such a "per se" violation, there is no need to apply the three part test of <u>Mathews v. Eldridge</u> to analyze whether the provided process was constitutionally sufficient, since none was provided).  The Third Circuit has long held the same.  <u>See</u> <u>Bradley</u>, 913 F.2d at 1078 ("Bradley received no hearing, either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process.").  Accordingly, because no process

53

whatsoever was given to Plaintiff, liability is established.

### b.  Unbiased and Disinterested Decisionmaker.

A "fair trial in a fair tribunal is a basic requirement of due process" that "applies to administrative agencies which adjudicate as well as to courts." Withrow v. Larkin, 421 U.S. 35, 46 (1975).  In a series decisions, the Delaware Supreme Court has analyzed in detail the federal due process requirement of an unbiased, disinterested decisionmaker, as well as the due process necessity of avoiding both actual bias and the appearance of bias by such decisionmakers in taking employment actions affecting high level administrators such as Plaintiff. See Sullivan v. Mayor of Town of Elsmere, 23 A.3d 128 (Del. 2011) (en banc); Town of Cheswold v. Vann, 947 A.2d 1123, 2007 WL 1201716 (Del. 2007). After surveying governing federal precedent, that Court held that  -

> The prevailing perspective is that bias of one member of a multi-member adjudicatory tribunal taints the entire tribunal's decision and deprives the party subject to the tribunal's judgment of due process.  This is true whether or not that biased member's vote is necessary to the judgment.

Sullivan, 23 A.3d at 136.  The Delaware Supreme Court held that the participation of a single member of such a decisionmaking body, even when that member's vote is not necessary to the ultimate challenged outcome, violates due process because "it is impossible to erase any influence that [person's] bias or appearance of bias may have had on the rest of the panel."  Id.

The Complaint pleads in detail the violation of this fundamental due process right. It explains how Defendants' uncontested waiver of attorney-client privilege revealed that even their own longtime, experienced attorney and zealous advocate nevertheless concluded that they were unconstitutionally and irredeemably biased against Plaintiff. (Facts at **D.3.** above). In Defendants' attorney's own words:

- Defendants "were engaging in a 'witch hunt' towards" Dr. Shelton, (¶¶ 69, 2);

- "there was a 'mountain' of evidence that the[y] ... were not impartial towards" him, (¶ 70; <u>see</u> ¶ 135);

- "Defendants had displayed a 'public record of animus' towards" him, (¶¶ 71, 2; <u>see</u> ¶ 135);

- "[g]iven public statements and actions, one or more board members ... will have an 'impossible' hill to climb if they claim to be impartial," (¶¶ 72, 2; <u>see</u> ¶ 135, 2); and

- "this lack of impartiality would result in a constitutional 'due process' violation," which will "give rise to personal liability" of the Board members. (¶¶ 73-74).

Defendants' own longtime attorney is the ultimate "insider" under the Standard of Review. (<u>See</u> Argument **II.A.1.** above). His factual and legal conclusions that there is a "mountain" of evidence including a "public record of animus" that Defendants were engaged in a "witch hunt" towards Plaintiff, such that it was "impossible" for them to be "impartial" towards him and his admission the extent of their bias violated "due process" to such a degree that punitive

damages would be assessed, is entitled to special weight and meets Plaintiff's plausibility burden at the Rule 12(b)(6) stage here.[20]

Notably, despite this issue being expressly and separately pled in Count II of the Complaint, four of the five Defendants do not address or even mention it in any way in their briefs.[21]  None of the five Defendants in any of their five briefs contest their own attorney's conclusions that their biased "statements and actions" during their "witch hunt" against Plaintiff were so extreme that they violated Plaintiff's due process rights.  Accordingly, this is another "per se" due process violation.  See Mercedes-Benz, 2025 WL 774912, *8; Bradley, 913 F.2d at 1078. Liability is again established and the case should be sent into discovery.

### 3.    The 3 Part Mathews Test.

Out of an abundance of caution, in the event the Court believes it must nevertheless address it, Plaintiff will do so.  "To determine what procedural protections the Constitution requires in a particular case, we weigh several

---

[20]  Under basic agency principles, these statements by Defendants' own attorney-agent, during the period of the attorney-client relationship, are admissions of the client-principals.  See, e.g. Vance v. Irwin, 619 A.2d 1163, 1165 (Del. 1993) ("The principle that a client is bound by the acts of his lawyer-agent in the course of litigation also extends to pre-litigation matters under agency principles."); see generally Stone v. Bank of Com., 174 U.S. 412, 421-22 (1899).

[21]  Defendant Smith-Tucker briefly elides over it in passing, never actually engaging in any meaningful way.  (See D.I. 18 at 20-21).

factors." <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990).  These factors are -

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id.</u> (quoting <u>Mathews</u>, 424 U.S. at 335).

### a.    Factor #1 - the Private Interest.

The "significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." <u>Loudermill</u>, 470 U.S. at 543.  "While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." <u>Id.</u>  The facts above reveal that Plaintiff has unquestionably been "burdened by the questionable circumstances" surrounding his former employment and so his interests in his employment as well as in protecting his good name and thus ability to provide for his family in the future is a heavy weight in the balancing.

Additionally, as discussed in Argument **III.D.1.b.(1).** above, Plaintiff's private interest in his reputation is one of constitutional dimension in Delaware, and there are no federalism concerns in recognizing and protecting it here.

### b.    Factor #2 - Value of Procedures in Preventing an

**Erroneous Deprivation.**

"Second, some opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes.  Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect."   Id. (internal citation omitted).  Here, it also weighs heavily in Plaintiff's favor how giving him notice and a hearing before a disinterested decisionmaker would have concluded there was no grounds whatsoever to suspend and fire this dedicated (and highly decorated) educator.

### c.    Factor #3 - the Government's Interest.

There is no government interest whatsoever here in terminating or suspending Plaintiff or bashing his good name without the extensive contractual protections that were a key part of the bargained for exchange contained within each of Plaintiff's contracts.  The Board has no legally cognizable interest here in violating the requirements of its own contract of adhesion drafted by the Board itself, and terminating Plaintiff without "good and just cause," without providing him with "a written statement of the reasons for termination" followed by a "fair hearing" before unbiased, disinterested decisionmakers.  For similar reasons, the Board also has no legally cognizable interest in publically destroying Plaintiff's

good name as a dedicated, hard-working and honorable public employee when its actions in doing so violate the confidential evaluation requirements of that same contract, as well as Delaware statutory law.

Additionally, as already noted above, Defendants can have no legally cognizable interest in attaching a false badge of infamy to Plaintiff's good name, and denying him any opportunity whatsoever to protect it, because such actions destroy reputational interests expressly protected under multiple provisions of the Delaware Constitution, the very document all individual Defendants swore to uphold.  See 29 Del.C. § 5102; Del.Const., Art. XIV.

For these reasons, "affording [Dr. Shelton] an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the [Board] shares [Dr. Shelton's] interest in avoiding disruption and erroneous decisions; and until the matter is settled, the [Board] would continue to receive the benefit of [Dr. Shelton's] labors. It is preferable to keep a qualified [Superintendent] on than to train a new one." Loudermill, 470 U.S. at 544.  The Board has nothing whatsoever to weigh in the balancing against Plaintiff's interests here.

### F.    Trailing Defense Claims.

#### 1.    No "Emergency" or "Significant Hazard" Exists to Justify Defendants' Failure to Provide Any Process Whatsoever.

Several Defendants (D.I. 20 at 8; D.I. 18 at 15-17) try to shoehorn our case into the Supreme Court's "significant hazard" or "emergency" situation language in Loudermill, 470 U.S. at 544 and 545 n.10.  There, the Court explained that under the government interest prong of the three part Mathews balancing test, the government's interests in safety in an emergency situation could be adequately protected by suspending the employee with pay if the emergency situation did not allow time for providing pre-deprivation due process.  Id.

But for at least three reasons, such a square peg does not fit in this round hole.  First, factually, the defense effort here fails because no such emergency situation factual predicate exists in the Complaint (or otherwise).  Ours simply is not a case requiring immediate paid suspension without due process, such as when: a school had just learned from "credible sources" that a teacher was making inappropriate sexual advances to female students while allowing other students to use illegal drugs in the classroom, see Jerrytone v. Musto, 167 Fed.Appx. 295, 298, 301 (3d Cir. 2006); a teacher had been arrested and charged with multiple felonies for physically beating her students in the classroom, see Kairo-Scibek v. Wyoming Valley W. Sch. Dist., 880 F.Supp.2d 549, 562 (M.D.Pa. 2012); or an employee was caught placing a camera in a women's bathroom. See Goydos v. Rutgers, State Univ., 2021 WL 5041248, *10 (D.N.J. Oct. 29, 2021).

Second, the defense errs in relying on Edwards v. Cal. Univ. of Pa., 156

60

F.3d 488, 492 (3d Cir. 1988), for the proposition that a "temporary removal from class duties" of a teacher while they continue to receive pay can <u>never</u> violate due process.  In <u>Dee v. Borough of Dunmore</u>, 549 F.3d 225 (3d Cir. 2008), the Third Circuit rejected such a reading, explaining "we also eschew any notion that Dee lacks a constitutionally protected property interest because he was suspended <u>with pay</u> as opposed to without."  <u>Id.</u> at 231 n.10.  The Eastern District also recently rejected such an expansive reading of <u>Edwards</u>, holding it is limited by <u>Dee</u>.  <u>See</u> <u>Suniaga</u>, 2025 WL 409656, *7 and <u>id.</u> at n.27.[22]

Finally, the Third Circuit repeatedly in <u>Dee</u>, 549 F.3d at 231 n.10 and 230 n.5, and also the Eastern District in <u>Suniaga</u>, 2025 WL 409656, *7, both recognized that whether an employee is suspended with pay is simply one factor that should be considered as part of the broader overall balancing of the relevant interests in the three part <u>Mathews</u> test as to how much process is due, not whether a protected Fourteenth Amendment liberty or property interest exists in the first place.  As explained above, this is legally consistent with the textual discussion in <u>Loudermill</u> out of which this 'suspension with pay during an emergency' language arose.  <u>See</u> 470 U.S. at 544 and 545 n.10. Other decisions have reached the same conclusion that this comes in under the <u>Mathews</u> balancing, not as part of

---

[22]  Additionally, as a logical matter, there is a material difference between a temporary suspension and a permanent one.

determining whether a liberty or property interest exists.  <u>See, e.g.</u> <u>Jerrytone</u>, 167

Fed.Appx. at 301; <u>Kairo-Scibe</u>, 880 F.Supp.2d at 558-60.

> **2.    An Employee Cannot Appeal a Non-Existent Written Decision Resolving a Termination Hearing the Employer Refused to Hold.**

Defendants also rely on <u>Bd. of Educ. of Smyrna Sch. Dist. v. DiNunzio</u>, 602

A.2d 85 (Del.Super. 1990), to claim that Plaintiff failed to invoke his contractual

appeal rights to the State Board of Education which, they claim, is fatal to his due

process case. (<u>See</u> D.I. 14 at 7-8; D.I. 18 at 20). This also is legal error.

In <u>DiNunzio</u>, as required by the standard form employment contract for

superintendents, the Smyrna School District provided extensive due process

protections to the fired Superintendent after announcing his firing.  They

appointed an impartial hearing examiner who, after notice, held formal termination

hearings that lasted for 10 days.  There, the impartial decisionmaker heard sworn

testimony from multiple witnesses, read and reviewed over 40 submitted

evidentiary exhibits, and reviewed and considered competing legal briefs

submitted by each opposing legal counsel.  The hearing officer eventually

rendered an extensive written decision, which then was then, separately and

subsequently, adopted by the school board.  <u>Id.</u> at 87-92.  Our present Defendants

fault Plaintiff for not then taking the next step thereafter, as was taken by

superintendent DiNunzio, which was appealing that adopted written decision to

the State Board of Education per his contract.

The most significant factual and logical problem with this defense claim is that, as already noted repeatedly above, our present Defendants failed to provide any process whatsoever to Plaintiff.  Defendants did not:

- hold any termination or suspension hearings;

- appoint an impartial hearing examiner;

- hear a single minute of witnesses testimony;

- allow any exhibits to be submitted or examined by any non-existent witness;

- allow, receive or review written legal briefs by legal counsel for Plaintiff; or

- render any kind of a written legal decision to explain their actions.

The only thing our Defendants did do was receive written legal advice from their own wise, longtime and now former attorney, who advised them that everything they were doing was blatantly illegal, violated Plaintiff's clearly established procedural due process rights and would result in an award of crushing punitive damages against each of them individually if they proceeded contrary to his sound legal counsel.  (Facts at **D.3.** above).

But Plaintiff cannot be faulted for not appealing to a state level board a non-existent written decision that Defendants refused to write or render, following a hearing Defendants refused to hold.  As the Complaint makes clear, Defendants

refused to provide Plaintiff with any process whatsoever.  Defense claims to the contrary fail.

### 3.    § 1983 Damages Fundamentals.

Defendants' additional scattershot claims demonstrate a fundamental misunderstanding of how § 1983 works.  For example, citing the seminal decision in <u>Carey v. Piphus</u>, 435 U.S. 247 (1978), which addressed the ins and outs of damages under the Civil Rights Act of 1871, the defense claims only economic damages are recoverable.  (D.I. 20 at 8-9; <u>see</u> D.I. 14 at 9-10).  Respectfully, this claim demonstrates only failure of these Defendants to actually read <u>Carey</u>, which itself was a procedural due process decision.

Briefly, <u>Carey</u> holds the full panoply of tort damages are recoverable under § 1983.  This specifically includes: nominal damages;[23] full compensatory damages,[24] which in addition to economic damages also includes mental and emotional distress, injury to reputation, and humiliation;[25] as well as punitive

---

[23] <u>Carey</u>, 435 U.S. at 266; <u>see also</u> <u>Bradley</u>, 913 F.2d at 1077-78; <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 251 (3d Cir. 2000).

[24] <u>Carey</u>, 435 U.S. at 264; <u>see also</u> <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 171 n.5 (3d Cir. 2010).

[25] <u>See, e.g.</u> <u>Carey</u>, 435 U.S. at 264; <u>Memphis Comm. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986); <u>Allah</u>, 226 F.3d at 250; <u>Great W. Mining</u>, 615 F.3d at 171 n.5; <u>Bullen v. Chaffinch</u>, 336 F.Supp.2d 342, 356 (D.Del. 2004).

damages,[26] including in cases where solely nominal damages were awarded;[27] and full fees and costs under the Civil Rights Attorneys Fees Act.[28]  The only type of damages <u>Carey</u> rejects are presumed ones,[29] which Plaintiff never requested. Everything else is recoverable and defense claims to the contrary fail.

### 4. The Individual Defendants Are Liable for Punitive Damages.

Plaintiff agrees with the Board that punitive damages are not available against a municipality, <u>see</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 260-61 (1981), which is why the other Defendants are sued in their individual capacities, <u>see generally</u> <u>Smith</u>, 461 U.S. at 35-36; <u>Kolstad</u>, 527 U.S. at 535-36, as their own former counsel warned them would happen if they continued on their "witch hunt."  (Facts at **D.3.** above).[30]

---

[26]  <u>See, e.g.</u> <u>Smith</u>, 461 U.S. at 35; <u>Kolstad v. Am. Dental Ass'n</u>, 527 U.S. 526, 535-36 (1999).

[27]  <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 22 n.9 (1980); <u>accord</u> <u>Smith</u>, 461 U.S. at 55 n.21.

[28]  42 U.S.C. § 1988(b).

[29]  <u>Carey</u>, 435 U.S. at 262-64.

[30]  Notably, the Board did not move on any grounds under <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658 (1978), so all such arguments are waived.

## IV.    DEFENDANTS BREACHED BOTH THE ONE YEAR AND FIVE YEAR CONTRACTS.

### A.    Standard of Review.

<u>See</u> Argument **II.** above.

### B.    Both Contracts Are With the Board.

While the actions of the individual Defendants are relevant under long settled principles of Delaware's agency[31] and entity[32] law, Plaintiff agrees that both of his employment contracts are with the Board Defendant employer, as the Complaint expressly states. (<u>See</u> ¶¶ 148, 156).

### C.    The Statute of Frauds Is No Bar to the One Year Contract Extension.

As already noted in Argument **III.D.2.b.(2).(a).** above in the discussion of Judge Schwartz's thorough decision in <u>Kirschling v. Lake Forest Sch. Dist.</u>, 687 F.Supp. 927 (D.Del. 1988), the defense claim is without merit that the statute of frauds is not satisfied.

---

[31]    <u>See, e.g.</u> <u>Sherman v. State Dep't of Pub. Safety</u>, 190 A.3d 148, 154-89 (Del. 2018)(en banc); <u>Hecksher v. Fairwinds Baptist Church, Inc.</u>, 115 A.3d 1187, 1199-1209 (Del. 2015)(en banc); <u>Doe v. State</u>, 76 A.3d 774, 776-77 (Del. 2013) (en banc).

[32]    <u>See generally</u> <u>Hessler, Inc. v. Farrell</u>,  226 A.2d 708, 711-12 (Del. 1967); <u>Goldman v. Shahmoon</u>, 208 A.2d 492, 494 (Del.Ch. 1965);  <u>Pack v. Sussex Poultry Co.</u>, 1983 WL 17982, *3 (Del.Ch. Sept. 13, 1983).  The Complaint also addresses the Board's statutory authority in detail.  (¶¶ 21-28).

1.    **The Admitted Agreement Doctrine Bars Defendants From Improperly Now Denying the Existence of a Contract They Already Have Repeatedly Admitted.**

Defendants' own longtime attorney expressly admitted, in writing, that the Board gave Plaintiff a one year contract extension and Defendant Lou also admitted the same.  (Facts at **B.2.a.(2).(b).-(c).**). Nevertheless, Defendants now claim that no such contract exists.

The admitted existence doctrine arose out of grave concerns long expressed by Delaware courts about fraudulent attempts by parties to deny the existence of contracts of which they had earlier admitted.  In the earliest Delaware decision, Wolf v. Crosby, 377 A.2d 22 (Del.Ch. 1977), Chancellor Marvel expressed grave concerns with the "obvious ethical problems" this raises, id. at 26, refused to allow a party "to commit perjury" by using a statute intended to protect that same party from "perjured evidence," id., noted the inherent "inequities" of allowing such blatant misconduct, id., and ultimately held the statute of frauds is no bar where a party, or its counsel, has admitted the existence of the contract of which they later complain. Id. at 27.

This is "sometimes called a waiver of the statute of frauds," Southern States Middletown, Inc. v. Durham, 1986 WL 9921, *1 (Del.Ch. Aug. 6, 1986), or the "'admitted agreement' doctrine." Hursey Porter & Assoc. v. Bounds, 1994 WL

762670, *9 (Del.Super. Dec. 2, 1994).  Regardless of terminology, it is widely recognized in Delaware.[33]  It applies even when a "defendant's answer denies" the existence of the admission.  Id.  As then Vice Chancellor, later Justice, Jacobs explained, it also applies even when the admission was made by an agent of the principal, such as their "lawfully authorized agent," Mitchell, 1987 WL 5319, *3, including a "power of attorney."  Id. at *1.

Here, the Board's own longtime attorney and an individual Board member Defendant both expressly admitted that this contract exists.  The admitted agreement doctrine bars these improper, and belated, defense denials of what was already admitted.  The statute of frauds does not apply.[34]

### 2.    The "Writing" Requirement is Satisfied.

The statute of frauds requires a "writing, or some memorandum, or notes thereof."  6 Del.C. § 2714(a).

The question becomes "whether the writings are adequate to indicate that a

---

[33]  See, e.g. Johnson v. Kacimi, 2024 WL 3292572, *2 (Del.C.P. May 22, 2024); Rowe v. Rowe, 2002 WL 1271679, *4 (Del.Ch. May 28, 2002); Hendry v. Hendry, 1998 WL 294009, *1 n.2 (Del.Ch. June 3, 1998); Hursey Porter, 1994 WL 762670, *9; Ueltzhoffer v. Fox Fire Dev. Co., 1991 WL 271584, *9 (Del.Ch. Dec. 19, 1991); Mitchell v. Brimer, 1987 WL 5319, *3 (Del.Ch. Jan. 12, 1987).

[34]  These same admissions also reveal why, previously, Defendants felt the need to hold a high profile public vote to try to cancel a contract they then thought was binding. (Facts at **C.1.** above).

contract has been offered." Kirschling, 687 F.Supp. at 931.  In Kirschling, another case where a public school board formally voted on granting a contract to a high level administrator but never executed a formal written contract, the Court explained the "required writing may consist of several documents."  Id. see also Suess v. United States, 535 F.3d 1348, 1359 (Fed. Cir. 2008) (a government "contract need not be memorialized in a single document; rather, a contract may arise as a result of the confluence of multiple documents so long as there is a clear indication of intent to contract, and the other requirements for concluding that a contract was formed are met")(cleaned up).

Additionally, the writing, memorandum or notes relied upon "need not be made with the intent to create a sufficient writing under the statute" of frauds. Kirschling, 687 F.Supp. at 931.  This is still the law today.  See, e.g. Klein v. Sussman, 2024 WL 339339, *7 (Del.Ch. Jan. 30, 2024) ("The fact that the parties to an oral agreement manifest an intention to prepare and adopt a written memorial will not prevent contract formation if the evidence reveals manifestations of assent that are in themselves sufficient to conclude a contract."); Anchor Motor Freight v. Ciabattoni, 716 A.2d 154, 156 (Del. 1998)(en banc)("The fact that the parties intend to execute a formal agreement, however, is not dispositive. The question is whether the parties positively agree that there will be no binding contract until a formal contract is executed.  The intent of the parties is generally a question of

fact.") (internal footnote omitted); Am. Smelting & Refining Co. v. U.S., 259 U.S. 75, 78  (1922) ("Of course the expressed contemplation of a more formal document did not prevent the letters from having the effect that otherwise they would have had.")(Holmes, J., for the Court).

As noted above, in Kirschling, this Court long ago recognized that minutes from a public school board meeting which reflect official board action voting on an employment contract and a letter sent by the board's agent to the employee more than satisfy this requirement, even when a formal written employment contract was still expected to be executed later. 687 F.Supp. at 930-32.

Again, this is because contract formation in Delaware depends upon whether there has been an objective "overt manifestation of assent" to form a contract. Shilling v. Shilling, 332 A.3d 453, 465 (Del. 2024); accord Klein, 2024 WL 339339, *7. It depends upon objective "words and actions," not "subjective intent." Shilling, 332 A.3d at 465; accord Klein, 2024 WL 339339, *7.  If, objectively, the words and actions of the parties demonstrate a contract exists, it does. In Shilling, the Delaware Supreme Court reversed the lower court and recognized that even failure to sign legal papers required to be signed as part of a formal court settlement stipulation did not bar contract formation because the e-mail correspondence demonstrated an agreement had been reached. 332 A.3d at 466.

### a. Formal Public Vote by the Board, Corroborated by the Minutes.

As in Kirschling, our case also involves a formal public vote by the duly elected Board (Facts at **B.2.a.(1).** and **B.2.a.(2)(b)-(c).** above), reflected in numerous written iterations of the minutes later approved by the Board over numerous later sessions.  (Facts at **B.2.a.(2)(a).** and **B.2.b.(2).-(6).** above).  These writings provide clear written evidence of the Board's overt manifestations of assent and satisfy the statute of frauds or, at minimum, plausibly allege it. Numerous courts have held such minutes will satisfy the writing requirements. See Lefoldt v. Horne, L.L.P., 938 F.3d 549, 550 (5th Cir. 2019)(lack of corroboration in minutes of a public hospital board fatal to employment claim); Yarbrough v. Camphor, 645 So.2d 867, 870 (Miss. 1994)(minutes of school board establish employment contract); Midwest Realty v. City of West Jordan, 541 P.2d 1109, 1111 (Utah 1975) (minutes of city council meeting).

Again, the individual Defendants, acting through the Board Defendant as an elected governing body, took a formal public vote and approved numerous employment contracts, including Plaintiff's.  Kirschling is not the only court to recognize the self-evident fact that there are contractual ramifications of certain types of legislative actions.  See Alameda Belt Line v. City of Alameda, 5 Cal. Rptr.3d 879, 883 (Cal.App. 2003) ("If one party to the contract is a municipality ...

an ordinance may also be construed as a memorandum."); Am.-Hawaiian Steamship Co. v. Home Sav. & Loan Assn., 112 Cal.Rptr. 897, 901 (Cal.App. 1974) ("Ordinance No. 3 must be interpreted as a contract, not merely as a legislative enactment. Municipal entities are often required to enact ordinances to enable the making of contracts, but the contracts are no less contractual in nature because they are likewise ordinances.").

### b.    Writing by the Board's Own Attorney.

In Kirschling, there also was a letter from a district official to the administrator admitting the existence of the contract. 687 F.Supp. at 931, 929.  In our case, there also is a "writing" from the Board's attorney admitting that the "'extension' of Plaintiff's contract 'was approved December 12, 2023."  (Facts at **B.2.a.(2)(b).**). Although the Complaint does not specify the exact nature of the "writing," (¶ 42),[35] the Rule 56(d) affidavit specifies it was an e-mail sent and signed by the Board's longtime attorney to Plaintiff, copied to Defendant Patton, in the context of discussing Plaintiff's employment status. (Tab K at ¶¶ 46-52).  In the words of the Delaware Supreme Court, "it cannot be seriously disputed" that an e-mail can satisfy the writing requirement. See Shilling, 332 A.3d at 462; see also Tatum v. Fairstead Affordable LLC,  2023 WL 8868060, *4 (Del.Ch. Dec. 22,

---

[35]  Given the procedural posture, Plaintiff receives the inferences here.  (See Argument **II.A.** above).

2023)(e-mail is sufficient writing under New York law)

### c.       The Five Year Contract Being Extended.

As noted in the Facts at **B.1.** above, we also have the earlier written five

year contract which contained all other material terms.

### d.       Defendant Patton Has Helpfully Produced the Contract.

Finally, Defendant Patton has proffered to the Court what he explains is the

one year unsigned written contract extension itself (see D.I. 13-1 at p.6), which is

the same factual situation which occurred in Kirschling and which was found to be

sufficient evidence of a writing, even though it was unsigned. 687 F.Supp. at

931-32.

### e.       Conclusion.

For these reasons, even if we did not already have the admitted agreement

doctrine, more than sufficient writings exist.  We have: (1) the written e-mail by

the Board's own attorney stating that a contract exists; (2) the many written Board

minutes and agenda documents reflecting the agreement; (3) the prior five year

contract which was simply being extended by a single year, changing only that one

term; and (4) Defendant Patton's own proffer to the Court in briefing, attaching

what he asserts is the actual written contract itself.  The statute is satisfied.[36]

### D.    The Modification Clause is No Bar.

Defense claims also fail that the five year contract could not be extended by the one year contract extension because of a no modification clause.  The Delaware Supreme Court long ago considered and thoroughly rejected such claims, explaining -

> We think, therefore, that a written agreement between contracting parties, despite its terms, is not necessarily only to be amended by formal written agreement. We agree with Stanchifield that a written agreement does not necessarily govern all conduct between contracting parties until it is renounced in so many words. The reason for this is that the parties have a right to renounce or amend the agreement in any way they see fit and by any mode of expression they see fit. They may, by their conduct, substitute a new oral contract without a formal abrogation of the written agreement ... The prohibition against amendment except by written change may be waived or modified in the same way in which any other provision of a written agreement may be waived or modified, including a change in the provisions of the written agreement by [t]he course of conduct of the parties.

Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc., 297 A.2d 28, 33 (Del. 1972).  This Court has repeatedly recognized the same,[37] as have our state courts.[38]

---

[36]  Plaintiff agrees that the writing requirement applies to a contract of exactly one year entered into before day 1 of that same contract. See Aurigemma v. New Castle Care LLC, 2006 WL 2441978, *2 (Del.Super. Aug. 22, 2006).  But again, the writing requirement is satisfied in our case.

[37]  See, e.g. Goddess Approved Prods., LLC v. Wolox, 2022 WL 4535620, *2 (D.Del. Sept. 28, 2022); J.C. Trading Ltd. v. Wal-Mart Stores, Inc., 947 F.Supp.2d 449, 454 (D.Del. 2013); J.A. Moore Const. Co. v. Sussex Assocs. Ltd.

E.    **Damages Recoverable.**

The defense next claims that Plaintiff's contract Counts should be dismissed

because he has not pled sufficient specifics of concrete economic damages. First,

factually, this is incorrect. (<u>See</u> Facts at **C.2.a.**, **C.2.d.**, **C.2.c.** and **C.1.** above).

But, second, even assuming *arguendo* it were factually true, it is legally wrong as

a matter of Delaware contract law.

"A breach of contract gives rise to a right of action. That is because any

unexcused failure to perform a contract is a legal wrong. An action will therefore

lie for the breach although it causes no injury." <u>Cygnus Opportunity Fund, LLC v.</u>

<u>Washington Prime Grp., LLC</u>, 302 A.3d 430, 454 (Del.Ch. 2023)(cleaned up and

internal citations omitted). In such a situation, "a court can vindicate a breach of

contract through an award of nominal damages. Alleging specific monetary harm

is not a requirement." <u>Id.</u> (internal citation omitted). Accordingly, even if we

were at the summary judgment stage, rather than the notice pleading stage,

Delaware law is clear that nominal damages are recoverable even if, after

discovery, a party has failed to meet his burden of proving economic damages in

---

<u>P'ship</u>, 688 F.Supp. 982, 988 (D.Del. 1988).

[38]  <u>See, e.g.</u> <u>PJT Holdings, LLC v. Costanzo</u>, – A.3d –, 2025 WL 1417531,
*23 and n. 163 (Del.Ch. May 15, 2025); <u>Intermec IP Corp. v. TransCore, LP</u>, 2023
WL 5661585, *13 and n.130 (Del.Super. Aug. 23, 2023); <u>Foraker v. Voshell</u>, 2022
WL 2452396, *11 n.156 (Del.Super. July 1, 2022).

breach of contract cases.  See, e.g. Ivize of Milwaukee, LLC v. Compex Litig. Support, LLC, 2009 WL 1111179, *12 (Del.Ch. Apr. 27, 2009); USH Ventures v. Global Telesystems Group, Inc., 796 A.2d 7, 23 (Del.Super. 2000).  An award of nominal damages serves to recognize a "technical injury" to the party's contract rights, Ivize, 2009 WL 1111179, *12; USH Ventures, 796 A.2d at 23, "for the purpose of declaring an infraction of the Plaintiff's rights and the commission of a wrong."  Ivize, 2009 WL 1111179, *12.

### F.    Terms Breached.

Continuing, defense claims also fail that Plaintiff has failed to plead a breach of any identified terms of the contracts.

### 1.    The One Year Contract Extension.

Plaintiff had a valid one year contract extension (Facts at **B.2.**), to employ him from "6/30/25" until "6/30/26"  (Tab E at 5), as Defendant's own attorney and one Defendant both admit.  (Facts at **B.2.a.(2)(b)-(c).**).  The Board unilaterally cancelled the contract (Facts at **C.1.**), which ensured Plaintiff is not employed from "6/30/25" until "6/30/26."  This is a breach of the most material term of the contract.

### 2.    The Five Year Contract.

The numerous requirements of Plaintiff's five year contract are detailed in

the Facts above at section **B.1.** "[N]umerous" (¶¶ 44, 45) "example[s]" of

breaches (¶ 47), were expressly pled and are recounted in detail in the Facts at

section **C.2.a.-d.** above. These include:

- failing to pay him his agreed upon salary;

- failing to give him his mandatory, confidential evaluations;

- terminating his employment; and

- other examples.[39]

These same breaches already were legally argued and defense claims

rebutted in Argument **III.D.1.b.(2).(b).(i).-(ii).** above. That discussion need not be

repeated here.

Additionally, should the defense eventually claim that their failure to give

the required evaluations are not material breaches of the contract, such an

argument should be rejected for at least three reasons. First, because the

evaluations are expressly required by the contract, such a materiality argument by

its very nature concedes the existence of a breach of that contract which legally

requires under Delaware law, at minimum, an award of nominal damages. Second,

---

[39] The District CFO's misleading, outside the factual record affidavit also failed to mention many of the other contract requirements that Defendants have violated. As explained in the attached Rule 56(d) declaration, Defendants' failure to conduct evaluations as required above for years other than just 2024; and Defendants' failure to reimburse Plaintiff for his membership fees in philanthropic community organizations are additional breaches. (Tab K at ¶¶ 11-40).

Delaware statutory law requires such evaluations and the requirements of a

Delaware employment statute cannot be so blithely ignored.  Finally, just because

a failure to perform a confidential evaluation may be an immaterial breach under

the facts of an abstract future case does not mean it was not a material breach

under the concrete facts of our present case, where the failure to give the required

evaluations was joined with Defendants launching a full scale public attack on

Plaintiff's competence as an educator, charges that his mandatory yearly (at least)

evaluations would have been exceptionally helpful at rebutting.  Such breaches are

material in our case.

### G.    Defendant Patton's Lack of Standing and Unclean Hands.

Defendant Patton appears to assert certain unique FOIA claims not raised by

any other Defendant attacking contract validity.  (D.I. 14 at 2, 5).  Such claims fail

for multiple reasons.  First, given he concedes he is not a party to any of these

contracts (D.I. 14 at 6-7), he lacks standing to attack their validity in raising an

argument the Board Defendant declined to make.

Second, he has unclean hands in doing so.  Given the number of times the

Delaware Attorney General has concluded that Defendant Patton violated the

requirements of FOIA in this case (Facts at **C.1.a.** and **C.2.b.(1).** above), there is a

certain irony in his now seeking to rely upon FOIA to invalidate a contract he: (a)

actually recommended the Board approve; (b) personally voted to approve; and (c) repeatedly reaffirmed his prior vote by repeatedly voting to confirm the accuracy of the minutes documenting his prior approval. (Facts at **B.2.b.(2).-(6).** above). As explained in the Facts, under the Board's own policies Defendant Patton is the person responsible for carefully preparing the Agenda and related paperwork for the Board and for following these same policies. (Facts at **B.2.b.(1).** above). Exercising this authority, he (and the three other individual Defendants) voted on, approved and adopted (for the Board Defendant) contract extensions for numerous employees specifically identified in a detailed list (Facts at **B.2.b.(3).** above) which he promised his constituents he had carefully reviewed. (Facts at **B.2.b.(1).**). He cannot now belatedly challenge the validity of his own actions to try to defeat the legal claims of employees who relied in good faith upon these same actions in accepting the offers of employment Defendant Patton extended them.

Finally, Plaintiff's contract meets the standard contained within the Attorney General's Opinion this Defendant relies upon because the plain text of the agenda paperwork expressly stated that the Board was going to be voting on a one year contract extension for Plaintiff, and other specifically identified individuals, setting forth all relevant terms.  (See Facts at **B.2.b.(2).-(3).** above).

The public was aware because the publically posted agenda paperwork expressly stated it.  Even this new defense standard is satisfied.

All defense claims fail under both employment contracts.

## V.    DEFENDANT BAQIR IS NOT IMMUNE ON ANY GROUNDS.

If the Court accepts Defendant Baqir's untimely brief, the additional claims he raises therein fail nevertheless.

### A.    Standard of Review.

See Argument **II.** above.

### B.    Qualified Immunity.

In his summary of argument, Defendant Baqir asserts entitlement to qualified immunity.  (D.I. 22 at 6).  But by failing to make any such argument elsewhere in his brief, this claim is waived.

### C.    Legislative Immunity.

His claims of legislative immunity also fail.  (D.I. 22 at 11-13).  A "decision to terminate [Plaintiff] fails the substantively-legislative test" required for legislative immunity.  In re Montgomery Cnty., 215 F.3d 367, 376 (3d Cir. 2000). This is because "[f]iring a particular employee is a personnel decision that does not involve general policy making."  Id. at 377.  "Regardless of the procedure, the act [i]s not legislative in substance."  Id.  Ours is not a case where Defendant

eliminated a position or range of positions for budgetary reasons, actions held to be indisputably legislative in nature.  See Baraka v. McGreevey, 481 F.3d 187, 195-201 (3d Cir. 2007).  Instead, Defendants fired Plaintiff from the Superintendent position and replaced him with someone else.  Such a personnel action is merely administrative in nature and does not receive legislative immunity.

D.    **Quasi-Judicial Immunity.**

This claim also is waived since he fails to make even a prima facie argument of why he meets the quasi-judicial immunity test.  See Russell v. Richardson, 905 F.3d 239, 247-48 (3d Cir. 2018).  There is nothing quasi-judicial about the actions of firing an employee who works for you.  Nor is there anything quasi-judicial about the "wholesale disregard of the law" and engaging in a "witch hunt" to destroy that same employee's life, as the Board's own attorney concluded was occurring.  (See Facts at **D.3.** above).  When one's express "goal is ... not adherence to the law," (id.), one is not even arguably acting judicially or quasi-judicially.

## **CONCLUSION**

The defense motions should be denied in all respects.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**THOMAS S. NEUBERGER, ESQ. (#243)**
17 Harlech Drive, P.O. Box 4481
Wilmington, DE 19807
(302) 655-0582
SJN@NeubergerLaw.com
TSN@NeubergerLaw.com

Dated: June 23, 2025        Attorneys for Plaintiff Dr. Daniel C. Shelton

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chief Judge Connolly's Standing Order dated November 10, 2022, I certify, based on the word-counting function of my word processing system (Word Perfect 2020), that this brief complies with that Standing Order, as modified by this Court's April 25, 2025 briefing Order, in that the brief is prepared in a 14-point, proportional format (Times New Roman) and contains 18,469 words or fewer, to wit, no more than  18,176  words.


/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ.**