## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DR. DANIEL C. SHELTON,                  :
                                        :
    Plaintiff,                          :  C. A. NO.: 1:24-cv-01338-CFC
                                        :
    v.                                  :
                                        :  TRIAL BY JURY OF TWELVE
DONALD PATTON, NAVEED BAQIR,            :  DEMANDED
YUN FEI LOU, and ALETHEA SMITH-         :
TUCKER, all individually and in their   :
official capacities; and BOARD OF       :
EDUCATION OF THE CHRISTINA              :
SCHOOL DISTRICT,                        :
                                        :
    Defendant.

## DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT

**FRANKLIN & PROKOPIK, P.C.**

**WILLIAM A. CRAWFORD, ESQ. (#5600)**
800 Creek View Road, Suite 300
Newark, DE 19711
302-594-9780
WCrawford@fandpnet.com

Attorney for Defendant Donald Patton

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

**MARC SPOSATO, ESQ.  (#5663)**
300 Delaware Avenue, Suite 900
Wilmington, DE 19801
302-658-6538
MSposato@moodklaw.com

Attorney for Defendant Yun Fei Lou

**MARSHALL DENNEHEY, P.C.**

**SARAH B. COLE, ESQ. (#4685)**
1 Righter Parkway, Suite 301
Wilmington, DE 19803
302-552-4364
SBCole@mdwcg.com

Attorney for Defendant Board of Education of the Christina School District

**WHITEFORD, TAYLOR & PRESTON LLC**

**DANIEL A. GRIFFITH, ESQ. (#4209)**
600 North King Street, Suite 300
Wilmington, DE 19801
302-357-3254
DGriffith@whitefordlaw.com

Attorney for Defendant Naveed Baqir

**WHITE AND WILLIAMS LLP**

**CHRISTIAN J. SINGEWALD, ESQ. (#3542)**
**DARYLL M. HAWTHORNE-BERNARDO (#6520)**
600 North King Street, Suite 800
Wilmington, DE 19801
302-467-4510
SingewaldC@whiteandwilliams.com
HawthorneD@whiteandwilliams.com
Attorneys for Defendant Alethea Smith-Tucker

Dated**:** September 8, 2025

2

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    ALL DEFENDANTS WERE MATERIALLY COMPLIANT WITH THE COURT'S BRIEFING RULES; HOWEVER, EVEN IF THEY WERE NOT, THAT DOES NOT SUPPORT STRIKING OR DENIAL OF THEIR RESPECTIVE MOTIONS. ...................................2

    A.    Standard of Review ...................................................2

    B.    Defendants The Board, Patton, and Smith-Tucker Were Substantially Compliant With D. Del. Local Rule 7.1.3(c)(1)(E) ........5

    C.    Defendant Baqir Substantively Complied With D. Del. ECF Administrative Procedures. ...............................................7

    D.    Defendant Baqir's Alleged D. Del. Local Rule 7.1.3(c)(1)(D) Violation Regarding "Summary of Argument." ..................................8

II.   STANDARD OF REVIEW ...................................................9

    A.    Federal Rule of Civil Procedure 12(b)(6) .............................9

        i.    The "Detailed Insider Account" of the School Board's Former Attorney Cannot Be Used to Support Plausibility of Plaintiff's Claims. ...........................................10

    B.    Defendants' Motions To Dismiss Should Not Be Converted to FRCP 56 Motions for Summary Judgment. .........................12

    C.    Plaintiff's Answering Brief Exhibits and Requests for Judicial Notice Are an Attempt To Improperly Amend His Complaint. .........13

    D.    Defendants Do Not Concede Discovery Is Necessary and Plaintiff's 56(d) Affidavit is Improper ................................17

III.  PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED. ...................................................18

    A.    Plaintiff's Breach of Contract Claims Against All Individual Defendants Must Be Dismissed. ...................................18

    B.    Plaintiff Fails to Plead a Breach of the Original Contract. .................20

    C.    The Alleged Extended Contract is Invalid. ...........................22

i

   i. The Statute of Frauds Does Bar the So-Called "One Year Contract Extension." ...............................................................22

     a. The Contract Document Produced by Defendant Patton Is Not an Extension of the Original Contract.................................................................................23

   ii. The "Admitted Agreement" Exception Does Not Apply. ........24

   iii. Plaintiff's "Course of Conduct" Argument Is Inapplicable.................................................................................26

  D. Damages .............................................................................30

IV. PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIMS SHOULD BE DISMISSED................................30

 A. Plaintiff Did Not Properly Plead Deprivation of a Liberty Interest and Such Arguments in His Answering Brief Must Be Disregarded. .............................................................................30

   i. Even if Plaintiff had properly plead deprivation of a liberty interest, he still fails to satisfy the Stigma-Plus Test..............................................................................................32

     a. Plaintiff fails to plead stigma..........................................33

     b. Plaintiff fails to prove deprivation of some additional right or interest.................................................34

 B. Defendants Did Not Deprive Plaintiff of Any Property Interests.......36

 C. Damages ............................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Align Tech., Inc. v. 3Shape A/S*,
    2020 WL 1873026 (D. Del. Apr. 15, 2020) ...................................................3, 7, 8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...................................................................................10, 11

*Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*,
    684 F. Supp. 2d 541 (D. Del. 2010)......................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................10

*Biogen Inc. v. Sandoz Inc.*,
    2025 U.S. Dist. LEXIS 83708 (D. Del. May 1, 2025) ..........................................4

*Brockstedt v. Sussex Cnty. Council*,
    771 F. Supp. 2d 348 (D. Del. 2011).................................................................5, 6

*Carber v. Manor Care of Wilm. de, LLC*,
    2024 U.S. Dist. LEXIS 176107 (D. Del. Sep. 27, 2024)...................4, 13, 21, 30

*Carey v. Piphus*,
    435 U.S. 247 (1978).......................................................................................37, 38

*Clifton v. Nationwide Gen. Ins. Co.*,
    2025 U.S. Dist. LEXIS 145455 (D. Del. July 29, 2025) ......................................4

*Collins & Aikman Corp. v. Stockman*,
    2009 U.S. Dist. LEXIS 43472 (D. Del. May 20, 2009) ......................................14

*D & D Greek Rest. v. Great Greek Franchising*,
    2021 U.S. Dist. LEXIS 194156 (C.D. Cal. May 19, 2021)................................16

*Dee v. Borough of Dunmore*,
    549 F.3d 225 (3d Cir. 2008) ...............................................................................35

*Dickens v. Taylor*,
2011 U.S. Dist. LEXIS 14228 (D. Del. Feb. 14, 2011)....................................3, 8

*Foraker v. Voshell*,
2022 Del. Super. LEXIS 282 (Del. Super. July 1, 2022) ..................................29

*Goddess Approved Prods., LLC v. Wolox*,
2022 U.S. Dist. LEXIS 175807 (D. Del. Sept. 28, 2022)...........................27, 28

*Golovan v. Univ. of Del.*,
73 F. Supp. 3d 442 (D. Del. 2014).....................................................................32

*Grubbs v. Univ. of Del. Police Dep't*,
174 F. Supp. 3d 839 (D. Del. 2016).....................................................................9

*Hill v. Borough of Kutztown*,
455 F.3d 225 (3d Cir. 2006) .......................................................................32, 33

*Intermec IP Corp. v. Transcore, LP*,
2023 Del. Super. LEXIS 758 (Del. Super. 2023) ..............................................29

*In re Davita Inc. S'holder Derivative Litig.*,
2019 WL 1855445 (D. Del. Apr. 25, 2019).........................................................3

*J.A. Moore Constr. Co. v. Sussex Associates Ltd. Partnership*,
688 F.Supp. 982 (D. Del. 1988)........................................................................28

*J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*,
947 F.Supp.2d 449 (D. Del. 2013).....................................................................28

*Johnson v. Kacimi*,
2024 Del. C.P. LEXIS 13 (May 22, 2024) ..................................................25, 29

*Kirschling v. Lake Forest Sch. Dist.*,
687 F. Supp. 927 (D. Del. 1988)...................................................................22, 23

*Metzgar v. State Dep't of Nat. Ress. & Envtl. Control*,
2019 U.S. Dist. LEXIS 113399 (D. Del. July 9, 2019) .....................................34

*Morgan v. Scott*,
83 F. Supp. 3d 616 (D. Del. 2015)....................................................................12

*Morrissey v. Luzerne Cnty. Cmty. Coll.*,
117 Fed. Appx. 809 (3d Cir. 2004) .......................................................................15

*Muldrow v. City of St. Louis, Mo.*,
601 U.S. 346 (2024) ...............................................................................................35

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014) ...................................................................16

*Pennsylvania ex rel. v. Zimmerman v. Pepsico*,
836 F.2d 173 (3d Cir. 1988) ..............................................................4, 13, 21, 31

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ..........................................................................12, 13

*Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc.*,
297 A.2d 28 (Del. 1972) .........................................................................................27

*Pharmacy Corp. of Am./Askari Consol. Litig.*,
2021 WL 4033238 (D. Del. Sep. 3, 2021) ..........................................................2, 6

*PJT Holdings, LLC v. Costanzo*,
2025 Del. Ch. LEXIS 116 (Del. Ch. 2025) ...........................................................28

*Puma SE v. Forever 21, Inc.*,
2017 U.S. Dist. LEXIS 211140, 2017 WL 4771004 (C.D. Cal.
June 29, 2017) .........................................................................................................16

*Ricoh Co. v. Oki Data Corp.*,
2010 U.S. Dist. LEXIS 104264 (D. Del. Sep. 30, 2010) ......................................15

*Rousset v. AT&T Inc.*,
2015 U.S. Dist. LEXIS 172113 (W.D. Tex. Dec. 28, 2015) ................................12

*Russo v. Bryn Mawr Trust Co.*,
024 U.S. App. LEXIS 20055 (3d Cir. Aug. 9, 2024) ......................................35, 36

*Schuchardt v. Obama*,
2015 U.S. Dist. LEXIS 132962 (W.D. Pa. Sep. 30, 2015) ...................................12

*Schuchardt v. President of the United States*,
839 F.3d 336 (3d Cir. 2016) .............................................................................11, 12

*Smart Meter Tech., Inc. v. Duke Energy Corp.*,
  2017 WL 2954916 ............................................................................2, 6

*Suniaga v. Downingtown Area Sch. Dist.*,
  765 F. Supp. 3d 413 (E.D. Pa. Feb. 5, 2025) .......................................35

*Traub v. Stardust389, Inc.*,
  2024 U.S. Dist. LEXIS 61847 (D. Del. Apr. 3, 2024) ........................20

*Trotter v. Akinbayo*
  2023 WL 22133 (D. Del. Jan. 3, 2023) ................................................3

*Varian Med. Sys. v. Elekta AB*,
  2016 U.S. Dist. LEXIS 91226 (D. Del. July 12, 2016) ......................15

*Werner v. Werner*,
  267 F.3d 288 (3d Cir. 2001) ...............................................13, 14, 15

*Wolf v. Crosby*,
  377 A.2d 22 (Del. Ch. 1977) ..............................................................25

**STATUTES**

42 U.S.C. § 1983 ......................................................................................37, 38

**OTHER AUTHORITIES**

D. Del. Local Rule 7.1.3 .................................................................4,5, 7, 8

Fourteenth Amendment ....................................................1, 12, 30, 32, 36

Federal Rule of Civil Procedure 12(b)(6) ........................9, 10, 12, 17, 18

Federal Rule of Civil Procedure 52 ..........................................................6

Federal Rule of Civil Procedure 56 ...............................12, 14, 15, 17, 18

Federal Rule of Civil Procedure 59 ..........................................................6

Federal Rule of Evidence 201 ..........................................................13, 15

Defendants, the Board of Education of the Christina School District (the "Board") and Donald Patton, Naveed Baqir, Yun Fei Lou, and Alethea Smith-Tucker (the "Individual Defendants") (collectively with the Board, the "Defendants") submit this consolidated Reply Brief in support of their various motions to dismiss (D.I. 13, 15, 17, 19, 25), in compliance with the parties' Stipulation to Extend Time (D.I. 30) and the Court's Order (D.I. 31).

## ARGUMENT

Plaintiff's Answering Brief begins with a recitation of, *inter alia*, his employment record, professional accolades, and other accomplishments. (D.I. 28, at 2-4). While this information is impressive, none of it is relevant to whether Dr. Shelton was deprived of liberty, property interests, or his Fourteenth Amendment procedural due process rights. Additionally, Plaintiff briefly identifies the Defendants and their positions on the Christina School Board; however, for reasons unknown, he makes the irrelevant observation that Defendant Donald Patton is "African-American" and casts aspersions on his career. (D.I. 28, at 4-5). Neither Defendant Patton's race nor his career are the subject of this lawsuit. This is only one example of Plaintiff attempting to improperly cast a shadow on various Defendants. Other examples include Plaintiff referencing the unrelated "legal troubles" of one Defendant and accusing that same Defendant of having "fled" the United States for another country. (D.I. 28, at 23). Again, none of this is relevant.

What is relevant— despite Plaintiff's long-winded attempt to obscure the true issues at the heart of Defendants' motions to dismiss— is that Plaintiff has failed to state a claim against any of the Defendants and concedes a number of Defendants' arguments.

## I.   ALL DEFENDANTS WERE MATERIALLY COMPLIANT WITH THE COURT'S BRIEFING RULES; HOWEVER, EVEN IF THEY WERE NOT, THAT DOES NOT SUPPORT STRIKING OR DENIAL OF THEIR RESPECTIVE MOTIONS.

### A.   Standard of Review

Plaintiff claims that Defendants' briefs should be stricken for non-compliance and cites to five District of Delaware cases for the assertion that the Court "has regularly exercised [its]" "authority to strike filings that fail to comply with its local rules." (D.I. 28, at 21). However, occurrences of the District Court using its discretion to strike filings does not mean the Court has "regularly exercised" that discretion. Furthermore, the cases cited by Plaintiff are readily distinguishable from the instant action as follows:

- The brief at issue in *Pharmacy Corp. of Am./Askari Consol. Litig.*, 2021 WL 4033238, *1 (D. Del. Sept. 3, 2021) was Plaintiffs' Motion to Amend Judgment and/or for New Trial, did not include a Statement of Facts at all, and incorporated by reference hundreds of pages in lieu of a Statement of Facts.

- The opinion Plaintiff cites to in *Smart Meter Tech., Inc. v. Duke Energy Corp.*, 2017 WL 2954916, *3 n.1 and *4 n.4 (D. Del. July 11, 2017) specifically refers to "facts" about "the nature of 'the invention' [at issue]

as attorney argument." It is not a blanket condemnation of all facts without a record citation as "mere attorney argument."

- Plaintiff misrepresents the issue in *Trotter v. Akinbayo*, stating that the Court "similarly treat[ed] alleged 'facts' not placed in the required Statement of Facts section as mere attorney argument and f[ound] such flagrant disregard of the Local Rules to be 'wholly inappropriate[.]'" (D.I. 28, at 21) (citing *Trotter,* 2023 WL 22133, \*7 n.79 (D. Del. Jan. 3, 2023)). In context, the Court was specifically condemning the fact that Defendants "filed a brief that combine[d] fact and argument in a single section entitled 'Background and Procedural History.'" *Trotter*, 2023 WL 22133, \*7 n.79. Additionally, the opinion does not assert that any statements are "attorney argument," let alone the footnote cited by Plaintiff. *See generally Trotter*, 2023 WL 22133.

- While the Court in *In re Davita Inc. S'holder Derivative Litig*., did "declin[e] to address arguments not raised in the required argument section" of a brief, the Court <u>did not</u> strike or dismiss the pleading entirely. 2019 WL 1855445, \*7-8, 10 (D. Del. Apr. 25, 2019); D.I. 28, at 21.

- Plaintiff again cherry picks support from *Align Tech., Inc. v. 3Shape A/S,* 2020 WL 1873026, \*1 (D. Del. Apr. 15, 2020). (D.I. 28, at 21-22). The defendant in *Align Tech* did fail to timely file objections to a magistrate judge's order, *not a motion to dismiss or brief*, with the Court; however, that filing was made <u>*5 hours and 40 minutes*</u> past the (then) 6:00pm filing deadline, violated the font size requirement and page limitation, and did not include a sufficient written certification related to raising new legal/factual arguments. 2020 WL 1873026, \*1, 2020 U.S. Dist. LEXIS 66275, \*3-6. Regardless, and contrary to Plaintiff's assertions (D.I. 28, at 21-22), "the Court [*did*] briefly address the merits of 3Shape's Objections." 2020 WL 1873026, 2020 U.S. Dist. LEXIS 66275, \*6-13.

Here, the Defendants' submissions were materially compliant with the Court's rules. Even if they were not, "[c]ourts are reluctant to penalize a party represented by counsel with dismissal for mistakes made by his or her attorney." *Dickens v. Taylor*, 2011 U.S. Dist. LEXIS 14228, at \*4 (D. Del. Feb. 14, 2011).

Notably, _Plaintiff has not expressly moved the Court to strike any portion of the Defendants' filings_. (_See generally_ D.I. 28). Furthermore, any issues highlighted by Plaintiff are nowhere near as egregious as those identified in the cases above.

Regardless, the District Court has addressed the merits of briefs which did not comply with the Courts rules, particularly where "[b]oth sides have submitted briefs that fail[] to comply with Local Rule 7.1.3." _See, e.g., Clifton v. Nationwide Gen. Ins. Co._, 2025 U.S. Dist. LEXIS 145455, at *1 n.2 (D. Del. July 29, 2025) (citing _Biogen Inc. v. Sandoz Inc_., 2025 U.S. Dist. LEXIS 83708 (D. Del. May 1, 2025). To that point, Plaintiff's own Answering Brief is not compliant with the Court's rules or applicable case law. As Plaintiff repeats throughout his brief, Del. LR 7.1.3 requires an Opening or Answering Brief to include "[a] concise statement of facts, with supporting references to the records, presenting the background of the questions at issue." Additionally, "it is well settled that a pleading cannot be amended through arguments in a brief." _See, e.g., Carber v. Manor Care of Wilm. de, LLC_, 2024 U.S. Dist. LEXIS 176107, at *10 (D. Del. Sep. 27, 2024); _Pennsylvania ex rel. v. Zimmerman v. Pepsico_, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted). Plaintiff does not simply limit his Statement of Facts to the record, but instead creates his own record by improperly amending his Complaint with

additional documents. (*See* D.I. 28-1-11 (Exhibit Tabs A-K)). This issue is discussed in further detail below in <u>Section II.C</u>.

Under the circumstances, Defendants respectfully request that this honorable Court not strike their respective motions and/or briefs and address them on their merits. Notably, none of Plaintiff's arguments regarding any alleged technical briefing violations are directed to or involve Defendant Lou. (*See generally* D.I. 28, at pp. 20-26).

**B.    Defendants The Board, Patton, and Smith-Tucker Were Substantially Compliant With D. Del. Local Rule 7.1.3(c)(1)(E).**

Plaintiff contends that Defendants The Board, Patton, and Smith-Tucker's Opening Briefs violate D. Del. Local Rule 7.1.3 (c)(1)(E). Del. LR 7.1.3 (c)(1)(E) requires an Opening Brief to include "[a] concise statement of facts, with supporting references to the records, presenting the background of the questions at issue." The only substantive record available to Defendants at the time of drafting their respective motions to dismiss was Plaintiff's Complaint and Exhibit A (Plaintiff's five-year employment contract). (D.I. 1).

However, the Court "is not limited to the four corners of the complaint and may consider 'matters incorporated by reference integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case.'" *See, e.g., Brockstedt v. Sussex Cnty. Council*, 771 F. Supp. 2d 348, 353

(D. Del. 2011). So long as the opposing party is given "notice and a fair opportunity to respond to any evidence the court might consider in its review of a motion to dismiss ... it is proper for the court to consider that evidence. *Id.*

Plaintiff asserts that several of the Statements of Facts in Defendants' Opening Briefs ignore the facts pleaded in the Complaint and are "the functional equivalent of the statements of facts rejected" in inapposite District of Delaware cases. (D.I. 28, at 24-25). Plaintiff cites to *Pharmacy Corp. of Am./Askari Consol. Litig.*, wherein the Court was ruling on a Motion to Amend Judgment and/or for New Trial Pursuant to F.R.C.P 52 and 59, not a Motion to Dismiss, and the plaintiffs filed a brief with *no Statement of Facts*. 2021 U.S. Dist. LEXIS 168153, at *1 (D. Del. Sep. 3, 2021). Furthermore, the plaintiffs included a "Statement of Facts" heading, but simply proceeded to "'rely upon' the Pretrial Order, the trial transcript and exhibits and its two post-trial briefs" which totaled more than 700 pages. *Id.*, at *2. Plaintiff also cites to the equally inapposite *Smart Meter Techs*, in which the Court rejects statements about the nature of an invention and unsupported interpretation of the technical specification of the inventions patent, without citation to the record or any other permitted documents, as attorney argument. 2017 U.S. Dist. LEXIS 106493, at *5 n.1 and *7n.4. Notably, the Court did not strike the briefings in *Smart Meter*.

Here, each Defendant presented a Statement of Facts in their respective Opening Briefs, with references to the record and documents permitted by District

6

of Delaware case law, and provided Plaintiff with "notice and a fair opportunity to respond" to those documents. As to Defendant Smith-Tucker's Statement of Facts, Plaintiff does not cite to any supporting case law for the assertion that it is non-compliant with D. Del. Local Rule 7.1.3(c)(1)(E) or should be stricken; instead, Plaintiff simply asserts that a factual assertion is in dispute.

### C.    Defendant Baqir Substantively Complied With D. Del. ECF Administrative Procedures.

Plaintiff again cites to *Align Tech* to support the assertion that the Court should "disregard[] as 'inexplicably… untimely" Defendant Baqir's motion and brief, because they were filed 41 minutes late. (D.I. 28, at 22-23; D.I. 28-10, at 1). But, as discussed in <u>Section I.A.</u> above, the defendant in *Align Tech* egregiously violated the Court's rules, including, but not limited to, filing its objections to a magistrate judge's order *<u>5 hours and 40 minutes after the deadline</u>* and failing to include a sufficient written certification related to raising new legal/factual arguments. 2020 WL 1873026, 2020 U.S. Dist. LEXIS 66275, *3-6. Despite such egregious violations, they were not the only reasons that the District Court overruled the defendant's filed objections. 2020 WL 1873026, 2020 U.S. Dist. LEXIS 66275, *6-13. Perhaps more importantly, the District Court *<u>did</u>* address the merits of the defendant's objections. *Id*. Instead of accurately citing case law that supported his

arguments, Plaintiff took irrelevant, cheap jabs at Mr. Baqir and accused him of fleeing the country. (D.I. 28, at 23).

Defendant Baqir's counsel experienced unfortunate technical difficulties and filed his submission only 41 minutes after the deadline. While this is a violation of the Court's rules, for which Defendant Baqir's counsel apologizes profusely to Plaintiff and the Court, it is not the same egregious situation as the one addressed in *Align Tech*. Again, "[c]ourts are reluctant to penalize a party represented by counsel with dismissal for mistakes made by his or her attorney." *Dickens*, 2011 U.S. Dist. LEXIS 14228, at *4.

As such, Defendant Baqir respectfully requests that this honorable Court not strike his motion or brief and address both on their merits.

### D.    Defendant Baqir's Alleged D. Del. Local Rule 7.1.3(c)(1)(D) Violation Regarding "Summary of Argument."

Plaintiff contends that Defendant Baqir's "Summary of Argument" violates D. Del. Local Rule 7.1.3 (c)(1)(D), which prescribes that briefs include a "summary of argument, setting forth in separately numbered paragraphs the legal propositions upon which the party relies." It requires no more than a cursory review of Defendant Baqir's brief (D.I. 26, pp. 5-6), to dismiss this contention.

As an initial matter, the paragraphs of Defendant Baqir's summary of argument" are specifically labeled "First", "Second" and "Third." To the extent

Plaintiff complains that the summary includes statements as opposed to just legal conclusions, Plaintiff conflates "legal propositions" with "legal conclusions." Legal propositions include statements and conclusions. Indeed, a "summary of argument" would be meaningless if it just included a legal conclusion such as "the applicable statute of limitations is 2 years." A "summary of argument" requires more.

To the extent Plaintiff contends that the "summary of argument" does not include citations to the record, the Rule includes no such requirement for a "summary of argument."

In sum, Plaintiff's flailing efforts to identify formatting deficiencies in the briefing are not only unsupported factually and legally, but also underscore the weakness of Plaintiff's arguments on the merits.

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss, "[f]irst, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions." *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 851 (D. Del. 2016). "Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff has a plausible claim for relief." *Id*. (internal quotations and citations omitted). A court must accept as true all *well*-pleaded factual allegations and view them in the light most favorable to the Plaintiff. *Id*.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, "the 'factual allegations must be enough to raise a right to relief above the speculative level' . . . [and] 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 684 F. Supp. 2d 541, 543-44 (D. Del. 2010) (quoting *Twombly*, 550 U.S. at 555).

i.    **The "Detailed Insider Account" of the School Board's Former Attorney Cannot Be Used to Support Plausibility of Plaintiff's Claims.**

Plaintiff relies heavily on the existence of a so-called "detailed insider account" for proving plausibility under FRCP 12(b)(6). However, this "insider" is identified as the former counsel for the Christina School Board, James H. McMackin, III, Esquire ("Attorney McMackin"). In deciding the motions to dismiss, the Court should disregard any statements, so-called "admissions," and other information stemming from Attorney McMackin's representation of the Board for the following reasons.

10

First, Plaintiff makes the unsupported legal conclusion that Defendants have already waived attorney-client privilege as to any confidential/protected communications with and from Attorney McMackin. (D.I. 1, at ¶ 64; D.I. 28, at 18-19). The Complaint baldly asserts that "[o]ne of the ways the Board did this was by providing confidential attorney-client e-mails and communications to members of the Delaware media and to the general public." (D.I. 1, at ¶ 65). Defendants dispute these legal conclusions and bald assertions, and the Court is not bound to accept them as true in considering Defendants' motions to dismiss. *See Iqbal*, 129 S. Ct. at 1949-50.

Second, Plaintiff labels Attorney McMackin's statements as "Admissions" attributed to Defendants. (D.I. 28, at 8, 18-20). This is based on Plaintiff's unproven and unsupported legal conclusion that Attorney McMackin was an agent of the Board. This has not been established in the record and cannot be used to bolster Plaintiff's claims on a motion to dismiss. Furthermore, even if Defendants had waived attorney-client privilege, Attorney McMackin's statements are merely bald assertions and legal conclusions that Plaintiff is improperly using as factual support for his claims.

Finally, the only case Plaintiff cites in support of using this so-called "detailed insider account" from Attorney McMackin is *Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016). In fact, only 3 published cases exist that even

use the phrase "detailed insider account"— *Schuchardt*, 839 F.3d 336; *Schuchardt v. Obama*, 2015 U.S. Dist. LEXIS 132962 (W.D. Pa. Sep. 30, 2015) (vacated and remanded by *Schuchardt*, 839 F.3d 336); and *Rousset v. AT&T Inc.*,  2015 U.S. Dist. LEXIS 172113 (W.D. Tex. Dec. 28, 2015). All of these cases are related to claims of illegal government surveillance of domestic telecommunications and have no bearing on the instant lawsuit and whether Plaintiff's breach of contract or Fourteenth Amendment claims are plausible under FRCP 12(b)(6).

## B.    Defendants' Motions To Dismiss Should Not Be Converted to FRCP 56 Motions for Summary Judgment.

While "[c]ourts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss . . . a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment." *Morgan v. Scott*, 83 F. Supp. 3d 616, 621 (D. Del. 2015); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). "

All of the documents attached to Defendants' respective motions and briefs are "undisputedly authentic" and relate to "matters incorporated by reference integral to the claim[s]." (*Id*; *see* D.I. 13-1; 16-1; 18-1; 20-1). Plaintiff does not once

dispute the authenticity of these documents or that they are all integral matters incorporated by reference in the complaint. (*See generally* D.I. 28). Plaintiff only argues that the documents were improperly attached to Defendants' motions and/or briefs and referenced by Defendants in their briefs. (*Id*).

## C.    Plaintiff's Answering Brief Exhibits and Requests for Judicial Notice Are an Attempt To Improperly Amend His Complaint.

It is Defendants' position that Plaintiff is seeking to improperly amend his Complaint through the attachment of Exhibit Tabs A-K to his Answering Brief and seeking judicial notice of a plethora of facts and documents not referenced in the Complaint. *See generally* D.I. 28 and D.I. 28-1-11 (Exhibit Tabs A-K); *see, e.g., Carber*, 2024 U.S. Dist. LEXIS 176107, at *10; *Zimmerman*, 836 F.2d 173, 181.

Additionally, Plaintiff is asking that the Court take judicial notice of Exhibit Tabs A-K. (D.I. 28, at 5n.2 ("'Tab' cites herein refer to items attached to this brief which are subject to the judicial notice provisions of Fed.R.Evid. 201.")). "Federal Rule of Evidence 201 empowers a court to take judicial notice of an adjudicative fact if that fact is 'not subject to reasonable dispute.'" *Werner v. Werner*, 267 F.3d 288, 301 (3d Cir. 2001). "[J]udicial notice is premised on the concept that certain facts exist that a court may accept as true without requiring additional proof from the opposing parties . . . Put another way, judicial notice is an adjudicative device

courts may use to substitute the acceptance of a universal truth for the conventional method of introducing evidence." *Id*. (citations omitted).

Exhibit Tabs A-C appear to be Christina School Board Policies. (D.I. 28-1-3). Exhibit Tab D appears to be the Board's agenda for the General Business Session scheduled for December 12, 2023. (D.I. 28-4). Exhibit Tab E appears to be a communication from Christina School District's Senior Director of Human Resources to the Board of Education regarding "Administrative Contract Renewals-Public Session," dated December 12, 2023. (D.I. 28-5). Exhibit Tab F appears to be the Board's General Business Session Minutes, dated December 12, 2023. (D.I. 28-6). Exhibit Tab G appears to be the Board's agenda for the General Business Session scheduled for January 17, 2024. (D.I. 28-7). Exhibit Tab H appears to be the Board's General Business Session Minutes, dated January 17, 2024. (D.I. 28-8). Exhibit Tab I is Attorney General Opinion No. 24-IB25. (D.I. 28-9). Exhibit Tab J is the Notice of Electronic Filing for Defendant Baqir's Opening Brief. (D.I. 28-10). Exhibit Tab K is the Rule 56(D) Declaration of Stephen J. Neuberger, Under 28 U.S.C. § 1746. (D.I. 28-11).

Tabs A-H may be subject to judicial notice, but solely for their existence and not to the extent that Plaintiff is introducing them for the truth of the matters asserted within them. *See, e.g., Collins & Aikman Corp. v. Stockman*, 2009 U.S. Dist. LEXIS 43472, at *69 (D. Del. May 20, 2009) ("[W]hile such documents may be considered

for purposes of determining what statements were made, such documents may not be considered for the truth of matters asserted within them."). Tab I, Attorney General Opinion No. 24-IB25, contains "[f]acts adjudicated in a prior case" and therefore "fall[s] short of the standard for judicial notice imposed by F.R.E. 201(b), because [those facts] are not usually common knowledge, nor derived from an unimpeachable source; taking judicial notice of such facts has the effect of precluding the opposing party from introducing contrary evidence." *Ricoh Co. v. Oki Data Corp*., 2010 U.S. Dist. LEXIS 104264, at *7 (D. Del. Sep. 30, 2010) (citing *Morrissey v. Luzerne Cnty. Cmty. Col*l., 117 Fed. Appx. 809 (3d Cir. 2004)). Tab J, the Notice of Electronic Filing for Defendant Baqir's Opening Brief, is simply a waste of judicial attention and not in dispute. Furthermore, Defendant Baqir's brief is discussed above in <u>Section I.C</u>. Tab K, Plaintiff Counsel's Rule 56(d) Declaration cannot reasonably be subject to judicial notice, because it flies in the face of the concept of judicial notice. The Declaration contains opinions, disputed facts, and attorney argument; it cannot be a universally accepted truth and is subject to reasonable dispute. *See* F.R.E. 201; " *Werner*, 267 F.3d at 301.

Regardless, federal courts have found that plaintiffs cannot bolster deficiently pleaded complaints with judicially-noticed documents. *See Varian Med. Sys. v. Elekta AB*, 2016 U.S. Dist. LEXIS 91226, at *23-24 (D. Del. July 12, 2016) ("It seems like one thing to take judicial notice of a document . . .  in order to amplify

the factual basis for a claim already set out in some detail in a pleading. But it feels like quite another for an important element of a claim to be deemed satisfied entirely due to a large number of extra-complaint, judicially-noticed facts. At some level, doing so seems at odds with the idea that the factual basis of a plausible claim should actually be set out in a pleading."); *see also, e.g., D & D Greek Rest. v. Great Greek Franchising*, 2021 U.S. Dist. LEXIS 194156, at *8 (C.D. Cal. May 19, 2021) ("A plaintiff cannot utilize judicially noticed documents for the purpose of supplementing the allegations in a complaint."); *Puma SE v. Forever 21, Inc.*, 2017 U.S. Dist. LEXIS 211140, 2017 WL 4771004, at *7 (C.D. Cal. June 29, 2017) ("[E]ven if properly subject to judicial notice, the referenced documents cannot be used to amend the FAC"); *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014) (declining plaintiff's request for judicial notice submitted in opposition to a motion to dismiss on the basis that a plaintiff cannot use a request for judicial notice to amend the complaint).

If the Court is inclined to judicially notice any of Plaintiff's Exhibit Tabs, Defendants respectfully request that Plaintiff not be permitted to use those documents to improperly amend his Complaint and claims in response to Defendants' motions to dismiss. It is Defendants' position that Plaintiff must amend his Complaint in accordance with the Federal Rules of Civil Procedure and the District of Delaware Local Rules.

### D.    Defendants Do Not Concede Discovery Is Necessary and Plaintiff's 56(d) Affidavit is Improper.

Plaintiff argues that Defendants concede that discovery is necessary defense motions should be dismissed due to apparent factual inconsistencies between the Defendants' separate Opening Briefs. (D.I. 28, at 29-30). However, dismissal of the defense motions based on apparent factual inconsistencies alone requires the Court to improperly disregard all of Defendants' legal arguments. Furthermore, the examples identified by Plaintiff— whether Plaintiff was afforded a "post-deprivation hearing" and whether the terms of the alleged one-year extension (the "Alleged Extended Contract") were voted upon and approved— do not necessarily need to be addressed for the Court to rule on Defendants' motions to dismiss. These issues are briefly more fully below.

Perhaps more importantly, Plaintiff's counsel has submitted a Rule 56(d) Affidavit because he "reasonably expect[s] that the motion[s] might be converted into… motion[s] for summary judgment. (D.I. 28-11 (Exhibit Tab K), at ¶ 3). A Rule 56(d) Affidavit is an improper response to a 12(b)(6) motion to dismiss, as Rule 56 is solely directed to motions for summary judgment. *See generally* FRCP 12; FRCP 56. The defense motions to dismiss have not been converted into motions for summary judgment. Even if Plaintiff's counsel "reasonably believes" the motions will be converted, his Rule 56(d) Affidavit is premature and inappropriate. As such,

it is Defendants' position that the Rule 56(d) Affidavit is being used improperly and should be stricken from Plaintiff's Answering Brief.

Defendants do, however, agree with Plaintiff Counsel's position in the Rule 56(d) Affidavit that the motion[s] should be decided solely under Rule 12(b)(6)," but disagree that the attached exhibits must be stricken (as discussed in detail in Sections I and II above). (*See* D.I. 28-11, at ¶ 4).

## III.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED.

### A.    Plaintiff's Breach of Contract Claims Against All Individual Defendants Must Be Dismissed.

Plaintiff has waived any breach of contract claims against the Individual Defendants. Plaintiff's Answering Brief appears to concede that the Individual Defendants cannot be liable for the claimed breach of contract. Indeed, Plaintiff "agrees that both of his [alleged] employment contracts are with the Board Defendant employer, as the Complaint expressly states," seeming to imply that Individual Defendants misunderstood the target of his breach of contract claims. (D.I. 28-84). To the contrary, the Complaint does not "expressly state[]" that his original, five-year, State of Delaware School Superintendent Contract (the "Original Contract") or the Alleged Extended Contract was only with the Board or that Plaintiff's breach of contract claims are only against the Board Defendant employer.

In the Complaint, Plaintiff draws a distinction between "Defendant Board of Education of the Christina School District (the 'Board')" and "certain individual Board members." (D.I., at ¶¶ 1, 21). Plaintiff then brings two claims for breach of contract— Count III (State Law- Breach of Original Contract) and Count IV (State Law- Breach of Extended Contract). (D.I. 1, at pp. 20-21). While both counts state that "*[t]he Board* breached multiple terms of that contract" (D.I. 1, at ¶¶ 149, 157), both counts also state that 1) "[t]here is a direct causal relationship between *Defendants'* actions and the harm Plaintiff suffered"; 2) "*Defendants'* actions were the "but for" cause of the breaches of the contract"; and 3) "[a]s a direct and proximate result of *defendants'* actions, Plaintiff has been injured." (D.I. 1, at ¶¶ 151, 152, 153, 159, 160, 161 (emphasis added)). It is not clear from the Complaint whether Plaintiff is only bringing his breach of contract claims against the Board or both the Board and the Individual Defendants. Furthermore, the relevant heading in Plaintiff's Answering Brief states "Defendants Breached Both The One Year and Five Year Contracts" and the Answering Brief repeatedly states that *Defendants*, plural, breached both contracts. (*See generally* D.I. 28).

Even if Plaintiff was bringing breach of contract claims against the Individual Defendants, as it appears in his Complaint and Answering Brief, nowhere in the Complaint or 81 pages of his Answering Brief does Plaintiff dispute the fact that none of the Individual Defendants were parties or signatories to the five-year

contract. (*See generally* D.I. 1; D.I. 1-1; D.I. 28). Again, the Answering Brief states, "Plaintiff agrees that both of his employment contracts are with the Board Defendant employer…" (D.I. 28-84). Regardless, Plaintiff still fails to come full circle and explicitly state that he is not bringing breach of contract claims against the Individual Defendants.

To the extent Plaintiff is maintaining breach of contract claims against the Individual Defendants, "Delaware does not generally recognize breach of contract claims against non-parties to the contract…" *See, e.g., Traub v. Stardust389, Inc.*, 2024 U.S. Dist. LEXIS 61847, at *10 (D. Del. Apr. 3, 2024). This purely legal argument is cut and dry— the Individuals Defendants are not signatories or party to any relevant contract. Given the ambiguity within the Complaint and Plaintiff's papers, and Plaintiff's waiver of the Individual Defendants' legal arguments, the Individual Defendants seek an order expressly dismissing any breach of contract claims against the Individual Defendants.

## B.    Plaintiff Fails to Plead a Breach of the Original Contract.

Plaintiff's claim for breach of the Original Contract must be dismissed because Plaintiff fails to allege any actual breach. At the time Plaintiff filed his Complaint, his employer was still paying him a full salary and providing him with all contracted benefits pursuant to the Original Contract, which ran through June 30, 2025. (D.I. 20-1 (Affidavit of Robert Vacca), ¶¶ 4–5).

Plaintiff, in all 81 pages of his Answering Brief, never once denies that he continued to receive his full salary and benefits as stated in the Vacca Affidavit. (D.I. 20-1 (Affidavit of Robert Vacca), ¶¶ 4–5). Plaintiff attempts to improperly amend his Complaint by raising additional facts in his Answering Brief. *See, e.g., Carber*, 2024 U.S. Dist. LEXIS 176107, at *10; *Zimmerman*, 836 F.2d at 181.

In his Answering Brief, Plaintiff points to four specific breaches of the Original Contract:

- failing to pay him his agreed upon salary;

- failing to give him his mandatory confidential evaluations;

- terminating his employment; and

- other examples.

(D.I. 28, at 77).  The "other examples" include failing to reimburse Plaintiff for his membership fees in philanthropic community organizations.  *Id.*

Regarding the first bullet point: Defendants have established Plaintiff continued to receive his full salary and benefits through the end of his contract. *See, e.g.*, D.I. 20-1 (Affidavit of Robert Vacca), ¶¶ 4–5. Regarding the third bullet point, Plaintiff was not terminated. He was placed on administrative leave and finished out his Original Contract. Regarding the second and third bullet points— a failure to receive "mandatory confidential evaluations" and not receiving reimbursement for his membership fees in philanthropic community organizations— these are wholly

new allegations never raised in the Complaint.  Presumably, these would be, at worst, *de minimis* or non-material breaches. Plaintiff cannot now use his Answering Brief to improperly amend his Complaint to assert non-material breaches to try to save his claim.

    **C.    The Alleged Extended Contract is Invalid.**

        **i.    The Statute of Frauds Does Bar the So-Called "One Year Contract Extension."**

"To determine if the writings satisfy the Statute of Frauds, the Court must examine whether the writings contain the necessary signatures and whether they are sufficiently complete." *Kirschling v. Lake Forest Sch. Dist.,* 687 F. Supp. 927, 930-31 (D. Del. 1988). *Kirschling* is not as applicable to the instant action as Plaintiff portrays it to be. *Id*., at 930. Not only, as Plaintiff admits, was *Kirschling* decided at the summary judgment stage, but the plaintiff was not applying for a superintendent position. *See generally id*. Plaintiff asserts that "[r]eview of the *Kirschling* decision resolves all challenges raised by the defense. (D.I. 28, at 49). <u>It does not</u>. In support of his bold assertion, Plaintiff provides the following sanitized summary of the Court's decision:

> There, this Court rejected a similar statute of frauds defense despite the lack of a formal signed written contract, because: (1) the minutes of the Board meeting reflected the Board's approval of the job offer; (2) the Superintendent had sent a letter to the applicant "informing him of the offer;" and (3) the employee had orally accepted the offer. [*Kirschling*]. at 930-32.

(D.I. 28, at 49). Much like the other cases Plaintiff cited in his Answering Brief, he has taken some liberties in his presentation and application of the facts. Plaintiff fails to discuss facts in *Kirschling* fatal to his analysis.

First, Plaintiff fails to note that in *Kirschling*, "[t]he appointment was not made conditional upon Mr. Kirschling's signature." *Id*. at 932. Here, if the Alleged Extended Contract was simply an extension of the Original Contract, as Plaintiff argues, the Contract Modification provision in the Original Contract still requires a "written addendum ***signed by both parties and attached to the original executed counterpart***." (*See* D.I. 1-1, at ¶ 13 (emphasis added)).

Second, the Court in *Kirschling* found that the Statute of Frauds was satisfied because the School District Superintendent, acting as an agent of the Board, signed: 1) the letter of employment sent to Mr. *Kirschling* <u>with the employment contract</u> and 2) the Board's relevant meeting minutes. 687 F. Supp. at 931. Here, Plaintiff cannot argue that the Board or any agent of the Board signed any such documents.

### a.    The Contract Document Produced by Defendant Patton Is Not an Extension of the Original Contract.

The unsigned "School Administrators Contract" attached to Dr. Patton's Opening Brief neither maintains the title of "School Superintendent Contract" as it exists in the Original Contract nor does it contain the same terms. (Compare D.I. 1-1 to D.I. 13-1). For example, the Benefits provision details completely different

fringe benefits, less vacation days, and references a different part of the Delaware Code (14 Del.C. § 1319 versus 14 Del.C. §1318 in the Original Contract). (D.I. 13-1, at ¶ 3). Another example is the omission of the following provisions from the Alleged Extended Contract: Changes to Staff, Performance Goals, Speaking/Consulting and Professional Activities. (D.I. 13-1). Additionally, no salary is stated. (*Id*). Plaintiff asserts that the Original Contract was "simply being extended by a single year," yet the documents materially differ in name and terms. (D.I. 28, at 49; compare D.I. 1-1 to D.I. 13-1).

Plaintiff cannot satisfy the Statute of Frauds with regard to the Alleged Contract Extension, and, therefore, the Alleged Contract Extension is invalid.

### ii.    The "Admitted Agreement" Exception Does Not Apply.

Failing to satisfy the Statute of Frauds, Plaintiff turns to the so-called "admitted agreement doctrine," "admitted existence doctrine," or "admitted agreement exception" as "waiver" of the Statute of Frauds.[1]

Plaintiff asserts that an *email* from the Board's formal counsel, <u>drafted after the Alleged Contract Extension was rescinded</u>, and an "admission" by Defendant Lou trigger the so-called "admitted agreement exception" to the Statute of Frauds.

---

[1] Plaintiff uses a number of different phrases and terms to identify this doctrine/exception/type of waiver. (See D.I. 28, at 49, 67, 68, 73). The specific language is unclear, but Defendants nonetheless address the issue.

(D.I. 28,at 49; *see* D.I. 1, at ¶¶ 41, 50). This, again, is premised on Plaintiff's own legal conclusion that the Board's former counsel was acting as an agent of the Board. Additionally, Defendant Lou's alleged admission, which is not pleaded in any meaningful detail, occurred on the same day the Board rescinded any purported extension. (D.I. 1, at ¶¶ 39, 43, 50).

This so-called doctrine, exception, and/or waiver does not apply. The case law cited by Plaintiff is, again, inapposite. In *Wolf v. Crosby*, both parties admitted that they orally agreed to an extension of time and therefore the Statute of Frauds was not a bar to the agreement. 377 A.2d 22 (Del. Ch. 1977). The other cases Plaintiff cites are equally inapposite because all of them are premised on the same exception to the Statute of Frauds:

> [A]n exception to the statute of frauds exists where the party to be charged acknowledges the [oral] contract. When a defendant admits to having made a deal without actually signing a contract, the statute of frauds does not bar a claim. In other words, the statute of frauds defense only prevents evidence of the existence of a contract in the event that the existence is at question.

*See, e.g., Johnson v. Kacimi*, 2024 Del. C.P. LEXIS 13, *5 (May 22, 2024). However, the agreements in the cases Plaintiff cites were oral agreements, were never rescinded, were not conditioned on a signed agreement, and the disputes did not involve a Contract Modification provision like the Original Contract. Furthermore, none of the cases (*Wolf*, *Kacimi*, *Rowe*, *Hendry*, *Hursey Porter*,

*Ueltzhoffer*, *Mitchel*l) are employment contract cases. The majority are contractual disputes involving the sale or partitioning of real estate and ownership of stocks. Neither the admitted agreement doctrine nor the cited case law apply here.

### iii.    Plaintiff's "Course of Conduct" Argument Is Inapplicable.

Plaintiff's lengthy Answering Brief also cannot save his claim for breach of the Alleged Extended Contract, which, as of the filing of his Complaint, had not even commenced. The Contract Modification provision in Plaintiff's Original Contract states: "This Agreement… may not be amended, modified or altered except… [t]his Agreement may be modified annually or as required by Paragraphs 2 and 3 by written addendum signed by both parties and attached to the original executed counterpart." (D.I. 1-1, at ¶ 13).

Despite this clear and unequivocal provision, Plaintiff argues that the "course of conduct of the parties" can act to modify the contract. (D.I. 28, at 74). While this proposition may be generally true, it does not apply here. There is no plausible reading of the Complaint where both parties operated as if the Original Contract had been renewed or that the Alleged Extended Contract had been ratified. Indeed, the Alleged Extended Contract is pleaded as a wholly separate contract that had not yet begun.  There was *no* course of performance under the Alleged Extended Contract.

The Complaint makes clear that, prior to the expiration of the Original Contract, Defendants had suspended Plaintiff and "unilaterally canceled his next

year's contract." D.I. 1, pp 86). Plaintiff was never allowed to continue working beyond the terms of the Original Contract to support the inference that both parties, by their conduct, had agreed to extend the Original Contract or create the Extended Contract.

The case law plaintiff cites in support of his position is inapposite. In *Pepsi-Cola Bottling Co. of Asbury Park v. Pepsico, Inc*., the case to which Plaintiff primarily cites, the Delaware Supreme held that a "no modification clause" could not serve to undermine the series of price increases under which the parties had operated *the course of more than 15 years*. 297 A.2d 28, 33 (Del. 1972) ("The effect of the course of conduct engaged in for a period in excess of 15 years by Pepsi and the plaintiffs indicates clearly that to all intents and purposes the provisions of Paragraphs 10 of the appointments of the plaintiffs were emasculated and the price-fixing policy now followed by Pepsi was agreed to by the plaintiffs.").

Plaintiff's other citations for which he supplies no analysis, are similarly inapposite. In *Goddess Approved Prods., LLC v. Wolox* the parties were already operating under a Master Services Agreement and Statement of Work, which, by their terms, "contemplated 'changes in scope' that would be accepted via email and reflected in 'an amendment to th[e] Statement of Work.'" 2022 U.S. Dist. LEXIS 175807, *5, (D. Del. Sept. 28, 2022). The Court held that the scope of the Statement of Work was amended by the course of conduct between the parties because

Defendant agreed, in email correspondence, to modify the scope of the Statement of Work, and the parties subsequently amended the Statement of Work to reflect that modification. *Id*.

The Court in *J.C. Trading Ltd. v. Wal-Mart Stores, Inc*. ruled on a motion for summary judgment, not a motion to dismiss. 947 F.Supp.2d 449, 454 (D. Del. 2013). In any event, the Court held there was *no* modification to the written contract based on the conduct of the parties. *Id*. (granting summary judgement to defendant Walmart because "Walmart did not engage in any course of conduct inconsistent with the Supply Agreements.").

*J.A. Moore Constr. Co. v. Sussex Associates Ltd. Partnership*, which also was decided on summary judgment, dealt with the issue of "whether subsequent to the written agreements the parties entered into oral agreements for 'extras' or modifications" to an already existing agreement, not the creation of an entirely new contract. 688 F.Supp. 982, 988 (D. Del. 1988). The allegation was also supported by an affidavit from the plaintiff's Assistant Secretary, who was the primary point person during contract negotiations. *Id*.

Plaintiff's citations to cases from our state courts are similarly inapposite. *PJT Holdings, LLC v. Costanzo* deals primarily with course of performance to interpret an allegedly ambiguous contract provision. 2025 Del. Ch. LEXIS 116 (Del. Ch. 2025). Most relevant, the court there noted that the party was allowed to continue

making payments violative of the then existing agreement despite the existence of a no-waiver provision. *Id*., at *58; *see also Intermec IP Corp. v. Transcore, LP*, 2023 Del. Super. LEXIS 758, *14 (Del. Super. 2023) (stating that "[]ltimately though, Intermec, during the course of this contractual relationship, acquiesced to TransCore's adjusted price methodology."); In *Foraker v. Voshell,* the court held that, although both parties did not comply with the language of the contract at issue, they continued to work cooperatively under that contract and "their subsequent actions and discussions modified those original terms." 2022 Del. Super. LEXIS 282, *20-21 (Del. Super. July 1, 2022). These cases involve *both* parties to a contract performing as if a provision within the contract was, in fact, modified. In this case, Plaintiff is trying to *unilaterally* enforce the Alleged Extended Contract, which was *not* an extension of the Original Contract. Rather, Defendants clearly and unequivocally did not intend any subsequent contract to be an extension of the Original Contract and they rescinded the Alleged Extended Contract before it was ever executed by the parties or commenced.

The Complaint as pleaded simply does not support the inference that the Original Contract was extended, or otherwise modified, through the "conduct of the parties." Moreover, there was *no* course of conduct under the Alleged Extended Contract. The Alleged Extended Contract is pleaded as a wholly separate contract that had not yet begun. Again, Plaintiff pleads in the Complaint that, prior to the

expiration of the Original Contract, Defendants suspended Plaintiff and "unilaterally cancel[ed] his next year's contract." (D.I. 1, at ¶ 86). Plaintiff cannot now argue that both parties, by their mutual conduct alone, intended to extend the Original Contract.

### D.    Damages

Defendants need not address Plaintiff's damages because there has been no material breach of the Original Contract and the Alleged Extended Contract is invalid. Regardless, in the Complaint, Plaintiff asserts that he "has suffered and will suffer economic damages based on a wage and benefit package of about $292,000 annually *through the year 2026*…" which includes the Alleged Extended Contract. (D.I. 1, at ¶ 82). Again, the Alleged Extended Contract was rescinded before it commenced and before Plaintiff filed his Complaint. Plaintiff then alleges that he is entitled to wage and benefit losses for the next 10 years. (D.I. 1, at ¶ 83). However, Plaintiff has not, and cannot, plead on any factual basis that he was entitled to employment with the Christina Shool Board for the next 10 years or that he would have received that same salary and benefits in another position.

## IV.    PLAINTIFF'S FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIMS SHOULD BE DISMISSED.

### A.    Plaintiff Did Not Properly Plead Deprivation of a Liberty Interest and Such Arguments in His Answering Brief Must Be Disregarded.

Plaintiff again attempts to improperly amend his Complaint by arguing that Defendants deprived him of *liberty* interests. *See, e.g., Carber*, 2024 U.S. Dist.

LEXIS 176107, at *10; *Zimmerman*, 836 F.2d at 181. Nowhere in the Complaint does Plaintiff explicity allege that he was deprived of a constitutionally protected *liberty* interest. (*See generally* D.I. 1). In fact, the word "liberty" does not appear anywhere in the Complaint. (*See generally* D.I. 1). In the Complaint, Plaintiff only alleges that "The Two Employment Contracts Creat[ed] Protected Property Interests" and he was deprived of those *property* interests. (D.I. 1, at p. 7-10 and ¶¶ 34-61, 116, 132). Now, only after Defendants argued that Plaintiff had no property interests and identified the deficiencies in his murky due process claims, Plaintiff alleges a deprivation of *liberty* interests and asserts that "it is clear that the Complaint pluasibly alleges the deprivation of both liberty and property interests under both contracts at issue and there is no question that Defendats are on notice of the legal claims against them." D.I. 28, at 51. If Plaintiff's legal arguments as to the alleged deprivation of his liberty interests were so clear, Defendants would not have had to identify Plaintiff' "potential" liberty arguments for him. *See* D.I. 18, at 18 ("While there is no property-interest in one's reputation, there may be a liberty-interest."); D.I. 20, at 10 ("Plaintiff seemingly brings a due process claim for violation of a liberty interest in his reputation."); D.I. 16 (formerly D.I. 21), at 16 ("Therefore, the only potential claim of injury that remains with respect to due process is Plaintiff's claim that he has suffered injury to his reputation—an alleged deprivation of liberty."); *see also* D.I. 14, at 9 ("Plaintiff further seeks damages for emotional

distress, humiliation, embarrassment, and injury to reputation (Complaint, ¶ 97 and 'Wherefore' clause), all allegedly caused by the deprivation of Plaintiff's property rights under that Contract."); D.I. 26, at 9 ("Plaintiff claims that he had a protected property interest in his employment as superintendent and in his contract extension for the 2025-2026 school year.")

Notably, Plaintff spends more time in his Answering Brief arguing about the alleged deprivation of his *liberty* interests than he does the alleged deprivation of his *property* interests, which is what he pleaded in the Complaint. Plaintiff continues to move the goalposts and expand his claims. Plaintiff's claims should be dismissed on that basis alone.

### i.   Even if Plaintiff had properly plead deprivation of a liberty interest, he still fails to satisfy the Stigma-Plus Test.

"It is well settled that reputation alone is not a protected interest under the Fourteenth Amendment." *Golovan v. Univ. of Del*., 73 F. Supp. 3d 442, 451 (D. Del. 2014). Plaintiff admits that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show some *stigma to his reputation* plus *deprivation of some additional right or interest*." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis added); D.I. 28 at 33.

### a.    Plaintiff fails to plead stigma.

To satisfy the stigma prong of the Stigma-Plus Test, Plaintiff must "allege[]
that the purportedly stigmatizing statement(s) (1) were made publicly . . . and (2)
were false." *Id.*

Plaintiff makes a conclusory statement regarding alleged "public attacks by
Defendants on Plaintiff's good name, integrity, morality and very competence as an
educator…. (D.I. 28, at 33). He references his Facts section at C.3, c.3.a., and C.2.b,
by which Plaintiff equates "stigma" with the "no confidence" vote (D.I. 28, at Facts,
C.2 .b); "public attacks" on Plaintiff, while only alleging a singular example from
one Defendant (D.I. 28, at Facts, C.3); and alleged "adverse employment actions"
(D.I. 28, at Facts, C.3.a).

*Hill*, to which Plaintiff cites, specifically requires that a Defendant have made
false "statement(s)" to satisfy the stigma prong of the stigma-plus test. The only
public statement alleged in the Complaint was from Defendant Patton, who disputes
Plaintiff's mischaracterization and misquoting of statements he made in the
YouTube video cited in paragraph 90 of the Complaint. (D.I. 1, at ¶ 90). Plaintiff
does not identify any additional statements allegedly made by the other Defendants,
let alone publicly. Plaintiff tries to circumvent the "statement(s)" requirement by
attributing one Defendant's alleged public statements to all Defendants. He claims

this is just an "example," but given the opportunity to support his deficient pleadings and maintain his claim he failed to do so.

The only other allegations directed to Defendants are actions, including, but not limited to votes and alleged adverse employment actions. These actions are not statements and cannot be considered "false" as required by the stigma prong of the Stigma-Plus Test.

### b. Plaintiff fails to prove deprivation of some additional right or interest.

Even if Plaintiff satisfied the "stigma" prong, he does not satisfy the "plus" prong of the stigma-plus test because he was never deprived of any additional right or interest. Plaintiff was not terminated under the Original Contract. *See Metzgar v. State Dep't of Nat. Ress. & Envtl. Control*, Civil Action No. 18-1310-CFC, 2019 U.S. Dist. LEXIS 113399, at *8 (D. Del. July 9, 2019) (holding that Plaintiff satisfied the "plus" prong because he was terminated). Plaintiff has not disputed that he continued to receive a full salary and benefits pursuant to the Original Contract after being placed on administrative leave (*see generally* D.I. 28), and the financial documents attached to Defendant Smith-Tucker's Opening Brief show this to be true (*see* D.I. 18-1).

Plaintiff argues that the Defendants' actions of suspending Plaintiff and not giving him a one-year contract extension are sufficient to satisfy the "plus" prong.

(D.I. 28, at 38-40).   The case law cited by Plaintiff in his brief either support Defendants' position or is wholly inapposite.   Plaintiff primarily cites *Suniaga v. Downingtown Area Sch. Dist.*, 765 F. Supp. 3d 413, 425-427 (E.D. Pa. Feb. 5, 2025), which actually supports Defendants' position.   In the discussion cited by Plaintiff, the court was weighing whether the single fact that the plaintiff teacher there continued to be paid was wholly fatal to the plaintiff's due process claim.   The court there ultimately held, on summary judgement, that the decision to place that teacher on administrative leave with pay and with no pre-deprivation hearing did *not* violate the requirements of the Due Process Clause.   *Id., at* 425-427.   The court there specifically noted that, although not by itself completely fatal to the plaintiff's claim, "the School District's decision to suspend Plaintiff with pay may weigh strongly against Plaintiff's claim."   *Id.*  Here, Plaintiff continued to be paid with benefits *and* was allowed to finish out his contract.   He was never terminated.

The *Muldrow* case is not a due process case at all, instead involving a Title VII sexual discrimination claim.   *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 353-354 (2024). The *Dee* case cited by Plaintiff is wholly distinguishable from this matter as it involves a state statute limiting the ability of local officials to suspend, terminate, or demote certain firefighters. *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008).  Plaintiff has not pleaded or cited any statutes in this matter or of this nature.   Finally*, Russo v. Bryn Mawr Trust Co.*, is a Title VII, racial

discrimination, and hostile work environment case that is not relevant to the legal discussion here. 2024 U.S. App. LEXIS 20055, at *7 (3d Cir. Aug. 9, 2024).

Plaintiff was not deprived of any additional right. He was not terminated from his position and he continued to receive full pay and benefits through the end of his contract. As such, Plaintiff cannot meet the "plus" prong of the stigma plus test, and his Fourteenth Amendment due process claims must fail on this basis as well.

**B.    Defendants Did Not Deprive Plaintiff of Any Property Interests.**

Contrary to Plaintiff's assertion, Defendants did address the "just cause" provision in Plaintiff's Original Contract. Defendants simply disagree that it is relevant because Plaintiff was not terminated from his position and continued to receive full salary and benefits. Because it seems that Plaintiff has ignored this defense argument as presented in the Opening Briefs, Defendants incorporate by reference those relevant arguments in their Opening Briefs rather than unnecessarily repeating them here.

Defendants note that Plaintiff continues to use alleged statements from the Board's former counsel as support for his claims, despite not presenting fully those accusations or purported direct statements from each Defendant in his Complaint. The Defendants cannot sufficiently "contest their own attorney's conclusions that their biased 'statements and actions' during their 'witch hunt' against Plaintiff were

so extreme that they violated Plaintiff' due process rights," when Plaintiff fails to

provide more than a singular example of one Defendant's purported statements and

all Defendants dispute that their actions were biased. (*See* D.I. 28, at 55-56; D.I. 1,

at ¶ 90).[2] Defendants assert that Plaintiff has not pleaded his claims in sufficient

enough detail for Defendants to even understand all of the allegations levied against

them.

### C.    Damages

As to damages, Plaintiff Answering Brief states:

> Defendants' additional scattershot claims demonstrate a fundamental
> misunderstanding of how § 1983 works. For example, citing the
> seminal decision in *Carey v. Piphus*, 435 U.S. 247 (1978), which
> addressed the ins and outs of damages under the Civil Rights Act of
> 1871, the defense claims only economic damages are recoverable. (D.I.
> 20 at 8-9; *see* D.I. 14 at 9-10). Respectfully, this claim demonstrates
> only failure of these Defendants to actually read Carey, which itself was
> a procedural due process decision.

(D.I. 28, at 64).

As shown above, Plaintiff cites to two of the defense Opening Briefs, which

Plaintiff has deceitfully misconstrued in an attempt to make the Court hear his

premature arguments on § 1983 damages. The Board, at D.I. 20, at 8-9, stated only:

> The award of damages under §1983 is guided by the concept that such
> damages should compensate individuals for injuries caused by a
> deprivation of constitutionally protected rights. *Carey v. Piphus,* 435

---

[2] Defendant Patton disputes Plaintiff's characterization of his statements in the
YouTube video cited in paragraph 90 of the Complaint. (D.I. 1, at ¶ 90).

U.S. 247, *256 (1978). Here, Plaintiff has not alleged any compensable injury associated with the deprivation of any property right. Plaintiff has continued to receive full salary and benefits associated with the applicable contract which is set to expire on June 30, 2025. Accordingly, Plaintiff has not been deprived of a protected property right and has therefore failed to state a claim upon which relief may be granted.

(D.I. 20, at 8-9).

Defendant Patton's Opening Brief (D.I. 14) does not even cite to *Carey*.

Defendant Patton, at D.I. 14, at 9-10, only states, in relevant part:

Plaintiff further seeks damages for emotional distress, humiliation, embarrassment, and injury to reputation (Complaint, ¶ 97 and "Wherefore" clause), all allegedly caused by the deprivation of Plaintiff's property rights under that Contract.

Plaintiff, however, has not been terminated by the Board, and continues to receive his full pay and full benefits pursuant to his Contract with the Board, and as such there has been no breach of that Contract by Mr. Patton or any of the other defendants. As there has been no termination and hence no deprivation of any of Plaintiff's property rights under that Contract, there has been no "humiliation" or any of the other alleged damages allegedly caused by the termination, and hence no due process violations.

In any event, and setting aside whether or not there has been any breach of contract, Plaintiff's claim for damages for emotional distress, humiliation, embarrassment, and injury to reputation due to alleged due process violations should also be dismissed.

Contrary to Plaintiff's verifiably false assertions, Defendants take no positions which have not been explicitly stated in the Opening Briefs or this consolidated Reply Brief.

## **<u>CONCLUSION</u>**

For the reasons above, Defendants, the Board of Education of the Christina School District, Donald Patton, Naveed Baqir, Yun Fei Lou, and Alethea Smith-Tucker respectfully request that the Court grant their respective Motions to Dismiss.

**FRANKLIN & PROKOPIK, P.C.**

*/s/ William A. Crawford, Esq.*
**WILLIAM A. CRAWFORD, ESQ. (#5600)**
800 Creek View Road, Suite 300
Newark, DE 19711
302-594-9780
WCrawford@fandpnet.com

*Attorneys for Defendant Donald Patton*

**MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.**

*/s/ Marc Sposato, Esq.*
**MARC SPOSATO, ESQ.  (#5663)**
300 Delaware Avenue, Suite 900
Wilmington, DE 19801
302-658-6538
MSposato@moodklaw.com

*Attorneys for Defendant Yun Fei Lou*

**MARSHALL DENNEHEY, P.C.**

*/s/ Sarah B. Cole, Esq.*
**SARAH B. COLE, ESQ. (#4685)**
1 Righter Parkway, Suite 301
Wilmington, DE 19803
302-552-4364
SBCole@mdwcg.com

*Attorneys for Defendant Board of Education of the Christina School District*

**WHITEFORD, TAYLOR & PRESTON LLC**

*/s/ Daniel A. Griffith, Esq.*
**DANIEL A. GRIFFITH, ESQ. (#4209)**
600 North King Street, Suite 300
Wilmington, DE 19801
302-357-3254
DGriffith@whitefordlaw.com

*Attorneys for Defendant Naveed Baqir*

**WHITE AND WILLIAMS LLP**

*/s/ Daryll Hawthorne-Bernardo, Esq.*
**CHRISTIAN J. SINGEWALD, ESQ. (#3542)**
**DARYLL M. HAWTHORNE-BERNARDO (#6520)**
600 North King Street, Suite 800
Wilmington, DE 19801
302-467-4510
SingewaldC@whiteandwilliams.com
HawthorneD@whiteandwilliams.com
*Attorneys for Defendant Alethea Smith-Tucker*

Dated**:** September 8, 2025