IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. DANIEL C. SHELTON,

                    Plaintiff,

       v.

DONALD PATTON, NAVEED
BAQIR, YUN FEI LOU, and
ALETHEA SMITH-TUCKER,
all individually and in their official
capacities; and BOARD OF
EDUCATION OF THE
CHRISTINA SCHOOL DISTRICT,

                    Defendants.

Civil Action No. 24-1338-CFC

---

Thomas S. Neuberger and Stephen J. Neuberger, THE NEUBERGER FIRM, P.A.,
Wilmington, Delaware

      *Counsel for Plaintiff*

William A. Crawford, FRANKLIN & PROKOPIC, P.C., Wilmington, Delaware;
Marc Sposato, MARKS, O'NEIL, O'BRIEN, DOHERTY & KELLY, P.C.,
Wilmington, Delaware; Sarah B. Cole, MARSHALL DENNEHEY, P.C.,
Wilmington, Delaware; Daniel A. Griffith, WHITEFORD, TAYLOR &
PRESTON LLC., Wilmington, Delaware; Christian J. Singewad and Daryll M.
Hawthorne, WHITE & WILLIAMS LLP, Wilmington, Delaware

      *Counsel for Defendants*

**MEMORANDUM OPINION**

March 9, 2026
Wilmington, Delaware

_____

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Daniel Shelton filed this action against Defendants Donald Patton, Naveed Baqir, Yun Fei Lou, Alethea Smith-Tucker, and the Christina School District Board of Education (the Board). Pending before me are Defendants' motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all five counts of the Complaint for failure to state a claim upon which relief can be granted. D.I. 13; D.I. 15; D.I. 17; D.I. 19; D.I. 25.

I.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiffs. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008). The court may consider only the allegations in the complaint and the documents incorporated into the complaint by reference and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.

According to the Complaint, the Board hired Shelton in 2020 as the Superintendent of the Christina School District pursuant to a five-year contract running from July 1, 2020 to June 30, 2025 (the 2020 contract). D.I. 1-1 ¶ 1. The Complaint alleges that "[p]aragraph 9 of the [2020] contract provides that [the contract] cannot be terminated during its term 'except for good and just cause,' following a previous 'fair hearing,' and prior to such a hearing 'a written statement of the reasons for termination' must have been provided." D.I. 1 ¶ 38. The Complaint does not mention or discuss any other provision of the 2020 contract.

The Complaint alleges that in December 2023 the Board approved a one-year extension of Shelton's contract through June 30, 2026, and that Shelton agreed to that contract extension. D.I. 1 ¶¶ 39–43. The Complaint alleges that

"[f]or the 2025-2026 school year the contractual wage total here [sic] is $219,898."
D.I. 1 ¶ 39. The Complaint does not mention or discuss any other provision of the
contract extension.

The Complaint alleges that after the Board approved the contract extension,
it took a series of adverse employment actions against Shelton by 4–3 votes
without notice, hearing, or good cause. D.I. 1 ¶ 45. Specifically, the Complaint
alleges that: (1) on March 12, 2024, the Board rescinded the contract extension and
suspended Shelton without pay for three days, D.I. 1 ¶ 47; (2) on May 24, 2024,
the Board passed a vote of "no confidence" in Shelton, D.I. 1 ¶ 52; (3) on July 9,
2024, the Board "suspended" "reprimanded," and "placed [Shelton] on
administrative leave," and that "[t]hereafter he was denied access to his offices and
all systems of the District" and "was denied supervision of any of [the District's]
activities or personnel and not allowed to perform any of his prior job duties and
responsibilities," D.I. 1 ¶ 57; and (4) in August 2024, the Board hired a
replacement superintendent for a one-year term, D.I. 1 ¶ 59. The Complaint
alleges that the four individual Defendants voted in each instance as the Board
majority. *See* D.I. 1 ¶¶ 48, 140.

The Complaint alleges that "as a result" of these Board actions, Shelton
"was out of a job." D.I. 1 ¶ 60. It similarly makes in paragraph 2 the conclusory
allegation that Shelton "was terminated." The Complaint does not, however,

3

allege facts about Shelton's alleged termination. It does not, for example, allege when, how, or at whose direction Shelton was terminated. It also does not allege that Shelton's alleged forced administrative leave has ended. Moreover, the Complaint alleges that Shelton's salary "*is currently* $210,043." D.I. 1 ¶ 37 (emphasis added). Thus, notwithstanding the Complaint's conclusory allegation that Shelton "was terminated," the Complaint's factual allegations do not plausibly imply that he was terminated. Rather, the Complaint's factual allegations plausibly imply that Shelton is currently on paid administrative leave. (Consistent with this reading of the Complaint, in an affidavit submitted by the Board in support of its motion, the District's Chief Financial Officer averred that as of April 15, 2025, Shelton "has remained on paid administrative leave and continues to receive full pay and benefits without any changes or restrictions pursuant to his employment contract of June 4, 2020." D.I. 20-1 ¶ 5. Although I make note of this declaration, I did not rely on it but instead relied on the plausible inferences I have made based on the Complaint's factual allegations.)

The Complaint has five counts. Counts I and II allege the same "Fourteenth Amendment—Procedural Due Process" claim under 42 U.S.C. § 1983. D.I. 1 at 17, 19. Although they are structured as separate counts, the two counts merely allege different theories for the same claim. Count I alleges that Shelton "possessed protected property interests in his employment based on his written

contracts," and that he was deprived of these interests with "[n]o [p]rocess [w]hatsoever." D.I. 1 at 17.  Count II alleges that Shelton was deprived of these property interests by a "[b]iased [d]ecisionmaker" without due process.  D.I. 1 at 19.  Count III alleges that "the Board breached multiple terms of th[e] [2020] contract." D.I. 1 ¶ 149.  Count IV alleges that "[t]he Board breached multiple terms of th[e] [extension] contract." D.I. 1 ¶ 157.

## III.

Defendants argue that Counts III and IV fail as a matter of law because the Complaint "merely makes conclusory allegations that the Board 'breached multiple terms of [each] contract' without citing to any particular term [of either contract] and linking it to any act of the Board." D.I. 20 at 7; *see also* D.I. 20 at 3.[1]  I agree. Nowhere in the 162 paragraphs of the hyperbolic, painfully redundant, and irrelevancy-filled Complaint does Shelton ever identify an obligation in the 2020 contract or the contract extension that Defendants allegedly breached.

As noted above, other than the contract's duration, the only provision of the 2020 contract mentioned in the Complaint is paragraph 9, which, according to the Complaint, "provides that [the 2020 contract] cannot be terminated during its term 'except for good and just cause,' following a previous 'fair hearing,' and prior to

---

[1] Each Defendant incorporated and adopted the arguments of the other Defendants. D.I. 14 at 11; D.I. 15 at 2; D.I. 17 at 1; D.I. 20 at 2 n.1; D.I. 26 at 13.

such a hearing 'a written statement of the reasons for termination' must have been provided." D.I. 1 ¶ 38. As noted above, the Complaint does not plausibly imply that Shelton was terminated. But putting that failure aside, the Complaint does not allege even in a conclusory fashion that any Defendant breached paragraph 9 of the 2020 contract.

With respect to the contract extension, other than its duration, the only provision of that alleged contract mentioned in the Complaint is the amount of Shelton's salary for the 2025–2026 school year. And the Complaint does not allege that the Board failed to pay Shelton that salary.

In sum, the Complaint alleges that Defendants breached "multiple terms" of the two contracts, but it does not identify a single term that was breached and does not allege any facts that plausibly imply that any Defendant breached any provision of either contract. D.I. 1 ¶ 149. "Stating that a contract was breached is stating a legal conclusion." *Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, 170 F. App'x 805, 808 (3d Cir. 2006). And "[t]o adequately state a claim for breach of contract under Rule 12(b)(6), [Shelton] ha[s] to do more than simply assert that [the Board] 'breached' . . . a contract." *See id.* Accordingly, I will dismiss Counts III and IV.

Since Shelton may try to amend Counts III and IV, I note for the benefit of his counsel that even his briefing fails to identify a specific contractual provision

that Shelton claims the Board breached. In his Answering Brief filed in opposition

to the motion, for example, counsel argues that the Board's unilateral termination

of the contract extension violated the contract extension because "[n]o written

notice of the reasons was given to [Shelton]; no 'fair hearing' was held before

doing so; and no 'good and just cause' existed to justify this material breach of

contract." D.I. 28 at 12 (citing paragraphs 51 and 157 of the Complaint). But like

the Complaint, the Answering Brief does not point to a provision in the contract

extension that prevents the Board from terminating the contract extension without

good and just cause. Nor does the Answering Brief identify a provision in the

contract extension that has a notice or hearing requirement. And again, the only

terms of the contract extension that are plausibly implied in the Complaint are its

duration and the amount of Shelton's salary.

   With respect to the 2020 contract, counsel argues in the Answering Brief

that the Board wrongfully suspended Shelton without pay and that "no provision of

[the 2020] contract or District Policy provides for this type of suspension." D.I. 28

at 13. Counsel seems to think that to allege a cognizable contract claim, all you

have to do is allege the existence of a contract and accuse the defendant of a

wrongful act and then the burden switches to the defendant to find a provision in

the contract that allows the defendant to perform that act. That's not how it works,

and counsel is warned that before he tries to amend the Complaint or file another

brief in this action, he needs first to study the basic tenets of contract law and the

pleading requirements for cases in federal court.

IV.

Citing *Chenvert v. DeJohn*, 2000 WL 1728257, at \*4 (D. Del. Apr. 11,

2000), *aff'd*, 276 F.3d 576 (3d Cir. 2001) and *Unger v. Nat'l Residents Matching*

*Program*, 928 F.2d 1392, 1399 (3d Cir. 1991), Defendants argue that the dismissal

of Shelton's contract claims necessitates dismissal of his procedural due process

claim because his alleged protected property interests are based on those contracts.

D.I. 18 at 16. Shelton does not dispute this argument. *See generally* D.I. 28.[2] And

---

[2] The parties presented to me, and I regrettably signed, a stipulated order that allowed Shelton to file a consolidated Answering Brief of up to 18,469 words. D.I. 27. Most of the 18,176 words used by Shelton in his Answering Brief, *see* D.I. 28 at 83, were devoted to irrelevant, over-the-top argument. As just one example, Shelton dedicated pages 32 through 45 of his Answering Brief to a section called "Liberty Interests" that included sub-sections titled "How Liberty Interests are Created," "Part 1 - The Stigma," "Part 2 - The Plus," and "Devastating Impact on Future Employment Prospects is Established." All this, notwithstanding the fact that the Complaint does not allege a liberty interest-based Due Process claim. Notably, Shelton did not use a single word of his Answering Brief to cite or discuss *Chenvert* or *Unger*. Nor did he spill a single drop of ink to dispute that his Due Process claim fails if his contract claims fail.

The opening sentence of Shelton's Answering Brief is telling: "The 22-page, 162-paragraph, 5,555-word Complaint was filed on December 9, 2024 (D.I. 1), and timely service was achieved on December 16, 2024." D.I. 28 at 1. Shelton's counsel seems to think that more pages, paragraphs, and words are—to use his word—a "Plus." To be clear, the Complaint in this case reads more like a press release than a legal filing. It recounts, for example, how Shelton earned "several degrees" including "a Bachelors of Science in Health and Physical Education," and

8

I agree, as the majority in *Unger* suggested, *see* 928 F.2d at 1399–40, and as Judge

Stapleton expressly stated in his concurrence in *Unger*, that "[w]here a contract is

relied upon to provide the necessary property interests supporting a due process

claim, no *deprivation* is alleged unless the plaintiff can point to a *breach* of the

contract," *id.* at 1402 (concurrence) (emphasis in the original).  The Complaint

alleges in paragraph 116 that Shelton "possessed protected property interests in his

employment based on his written contracts, and from local government laws,

policies, customs and practices, both written and unwritten, and from mutually

explicit understandings between his government employer and its employee."

D.I. 1 ¶ 16 (citing *Stana v. Sch. Dist of City of Pittsburgh*, 775 F.2d 122, 126 (3d

Cir. 1985)).  The Complaint, however, does not identify any law, policy, custom,

---

it lets us know that Shelton belongs to a Rotary Club and is an Honorary
Commander of Dover Air Force Base.  D.I. 1 at 2–3.  None of these facts bears on
the legal claims Shelton attempted to allege in the Complaint.  I could go on, but
suffice it to say that the Complaint fails to comply with Rule 8's requirements that
a complaint contain a "short and plain statement of the claim" and that "[e]ach
allegation [in the complaint] . . . be simple, concise, and direct."  Fed. R. Civ. P. 8.
Should counsel attempt to file an amended complaint that does not comport with
Rule 8, he should expect that I will sua sponte dismiss it.  *See Tillio v. Northland
Grp. Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012) ("A district court may sua sponte
dismiss a complaint for failure to comply with Rule 8 . . . ."); *see also In re
Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996) (affirming district
court's dismissal under Rule 8 of "unnecessarily complicated and verbose"
complaint).  Counsel should also expect that I will no longer agree to requests to
extend word limits for his briefs.

practice, or understanding that could give rise to a property interest. The Complaint expressly states in a sub-heading in its "Facts" section that "the two employment contracts create[ed] protected property interests." D.I. 1 at 7 (some capitalization removed). And the only factual bases for a property interest of Shelton's alleged in the Complaint are the two alleged contracts. Accordingly, I will dismiss Counts I and II because Shelton has failed to plausibly allege a breach of either of the two contracts he relies on to provide the necessary deprivation of property interests supporting his Due Process claims.

V.

For the foregoing reasons, I will grant Defendants' motions to dismiss. D.I. 13; D.I. 15; D.I. 17; D.I. 19; D.I. 25.

The Court will issue an Order consistent with this Memorandum Opinion.